No. 23-7173

# In the United States Court of Appeals for the District of Columbia Circuit

---

DAVID O'CONNELL,
*Plaintiff - Appellee*

v.

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,
*Defendant - Appellant*

---

*On Appeal from the United States District Court
for the District of Columbia (No. 20-cv-1365) (Cobb, J.)*

---

## DEFENDANT-APPELLANT'S JURISDICTIONAL STATEMENT

---

KEVIN T. BAINE
EMMET T. FLOOD
*Counsel of Record*
MARK S. STORSLEE
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
(202) 434-5000
eflood@wc.com

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Counsel of record makes the following certification:

(A) **Parties.** The following are parties in this Court:

    a. Plaintiff-Appellee: David O'Connell.

    b. Defendant-Appellant: United States Conference of Catholic Bishops.

 (B) **Rulings Under Review.** The ruling under review is the 11/17/2023 Minute Order issued by Judge Cobb, at A7. No formal citation exists. The district court's reasoning can be found in the attached Addendum, at pages A9 through A27.

(C) **Related Cases.** Appellant is unaware of any related cases pending in this Court or in any other court.

(D) **Rule 26.1 Disclosure.** Counsel of record for Defendant United States Conference of Catholic Bishops (USCCB) certifies that USCCB is a 501(c)(3) non-profit corporation. USCCB has no parent, subsidiary, affiliate, or company which owns at least 10% of its stock.

*/s/ Emmet T. Flood*
EMMET T. FLOOD

JANUARY 22, 2024

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1
JURISDICTIONAL STATEMENT.....................................................4
ISSUE PRESENTED.............................................................................4
CONSTITUTION, STATUTE, AND RULE.......................................5
STATEMENT OF THE CASE .............................................................5
    A.   Peter's Pence and USCCB's Activities...........................5
    B.   Plaintiff's Lawsuit ...........................................................8
STANDARD OF REVIEW...................................................................10
SUMMARY OF ARGUMENT............................................................11
ARGUMENT ........................................................................................11
I.    Jurisdiction is Proper Under the Collateral-Order Doctrine. ..............13
    A.   The District Court's Order Will be Effectively
        Unreviewable Without an Immediate Appeal. ..............................13
        1.   Discovery Inflicts a First Amendment Harm That
            Cannot Later be Rectified. .....................................13
        2.   Plaintiff Urges Invasive Discovery of USCCB and
            the Judicial Resolution of Religious Questions. ..................15
    B.   The District Court's Order Conclusively Denied USCCB's
        First-Amendment Right Not To Undergo Intrusive
        Discovery and Is Collateral to the Merits.....................................21
II.    Because Jurisdiction Is Proper, this Court Should Exercise
    Pendent Jurisdiction Over Other Aspects of the Case. ..........................25
CONCLUSION.....................................................................................26

# TABLE OF AUTHORITIES

Page

## CASES

*Abney v. United States*, 431 U.S. 651 (1977) ........................................15

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
    387 F. Supp. 3d 71 (D.D.C. 2019) ..............................................16, 18

*Ameziane v. Obama*, 620 F.3d 1 (D.C. Cir. 2010) .............................10

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) .................4, 11, 12

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day
    Saints v. Amos*, 483 U.S. 327 (1987) ........................................17, 18

*Dayner v. Archdiocese of Hartford*, 23 A.3d 1192 (Conn. 2011) .....................22

*EEOC v. Catholic Univ. of Am.*,
    83 F.3d 455 (D.C. Cir. 1996)........................................1, 3, 11, 12, 14, 19, 21, 22

*Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551 (D.C. Cir. 2023)...............10

*Harris v. Matthews*, 643 S.E.2d 566 (N.C. 2007) ...............................22

*Helstoski v. Meanor*, 442 U.S. 500 (1979) ............................................15

*In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023)........................................14, 15

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
    115 F.3d 1020 (D.C. Cir. 1997)........................................................26

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N.
    Am.*, 344 U.S. 94 (1952) .......................................................................1

*Kirby v. Lexington Theological Seminary*, 426 S.W.3d 597 (Ky. 2014) .........22

*McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013)...............................12, 13, 22

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ....................................11, 12, 15, 21, 23

*NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490 (1979)..............................3, 13

Page

Cases—continued:

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049
(2020) ................................................................................14

*Rollins v. Wackenhut Servs.*, 703 F.3d 122 (D.C. Cir. 2012) ...........................26

*Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976)....14, 16, 17, 24

*Trinity Christian Sch. v. Comm'n on Hum. Rts. & Opportunities*,
189 A.3d 79 (Conn. 2018) ................................................22

*Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021 (10th Cir. 2022) ...............24

*United Methodist Church v. White*, 571 A.2d 790 (D.C. 1990).........................13

*United States v. Trump*, 88 F.4th 990 (D.C. Cir. 2023)..................2-3, 12, 14, 23

*Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018)...........13, 22, 23

## CONSTITUTION, STATUTE, AND RULE

U.S. Const. amend. I...................................... 1, 2, 3, 4, 9, 12, 14, 15, 18, 19, 20, 23

28 U.S.C.
§ 1291 ..............................................................................4, 10, 11
§ 1332 ..............................................................................4
§ 1367 ..............................................................................4

Fed. R. Civ. P. 12 ........................................................................9, 26

## OTHER AUTHORITIES

*About USCCB*, U.S. Conference of Catholic Bishops ........................................6

Other Authorities—continued:

*Code of Canon Law*
    Can. 381 .......................................................................7
    Cann. 447-450 ...........................................................7
    Can. 455 .......................................................................7
    Can. 1261 .....................................................................7
    Can. 1262 .....................................................................7
    Can. 1271 .....................................................................7

The Gospel of Matthew ...............................................21

*Office of National Collections: Frequently Asked Questions*, U.S. Conference of Catholic Bishops .........................................................7

*Peter's Pence: An Ancient Custom Still Alive Today*, The Vatican .............5, 6

*Peter's Pence: How to Send Your Contribution to the Holy Father*, The Vatican ...........................................................................5

*Peter's Pence Collection Resources*, U.S. Conference of Catholic Bishops ..................................................................7

*USCCB Committees: National Collections*, U.S. Conference of Catholic Bishops .................................................................6

**INTRODUCTION**

In this lawsuit, Plaintiff David O'Connell asks a federal court to second-guess decisions made by the Pope of the Roman Catholic Church regarding the use of moneys in a fund known as Peter's Pence. But under the First Amendment, religious organizations like Defendant United States Conference of Catholic Bishops ("USCCB") may "decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952). Under the ecclesiastical abstention doctrine, courts may not "encroach[] on the ability of a church to manage its internal affairs," or place themselves in the "impermissible position of having to evaluate competing opinions on religious subjects." *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 460, 465 (D.C. Cir. 1996) (cleaned up). The district court's resolution of this threshold constitutional question furnishes appellate jurisdiction under the collateral-order doctrine.

Plaintiff alleges that he was led to believe, by a speaker from a pulpit at a Rhode Island Catholic parish acting at the "direct[ion]" of USCCB, that his contribution to Peter's Pence would be used "immediately" and "exclusively" to help those suffering from the effects of war, oppression, natural disaster, or

1

disease—but that the Holy See in Rome (the Pope and his subordinates) "diverted" most of the money into various investments.

Given those allegations, were this case allowed to proceed, it would thrust a civil court into myriad issues of internal church governance and Canon Law—the very subjects deemed off-limits by the Constitution's Religion Clauses. U.S. Const. amend. I. The Complaint asks the district court to delve into church finances; determine which uses of Peter's Pence donations are "proper" and "improper"; parse and compare statements from different church bodies and actors; assess the extent of canonical control (if any) of USCCB over bishops, pastors, and other church members who may speak from the pulpit; and assign weight to the representations of different church leaders (and, to the extent of any discrepancy, determine which representations control). Ultimately, Plaintiff seeks a judicial pronouncement on the degree of precision with which church members must speak to the faithful concerning donations for religious purposes, and the extent of latitude church leaders possess to spend or invest those donations for religious purposes. The First Amendment forecloses this invasion of church autonomy.

Because all three preconditions of the collateral-order doctrine are satisfied, jurisdiction is proper. *See United States v. Trump*, 88 F.4th 990,

1000 (D.C. Cir. 2023). First, the district court's order inflicts a constitutional injury that cannot be corrected after trial, as the "very process of inquiry" would impinge USCCB's rights under the Religion Clauses. *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 502 (1979). As this Court has observed, the First Amendment's guarantee of church autonomy protects religious institutions not only from ultimate liability, but also from being "deposed, interrogated, and haled into court" where doing so would improperly intrude on a church's internal affairs or entangle civil courts in religious questions. *Catholic Univ.*, 83 F.3d at 467. The district court's error can only be corrected now, not after discovery and trial have already resulted in unlawful intrusion into the church's internal organization and judicial scrutiny of its religious decisions. Second, the appeal concerns a district-court order that conclusively denied USCCB's claimed First Amendment rights. And third, USCCB's appeal involves pure questions of law antecedent to the merits.

## JURISDICTIONAL STATEMENT

The Complaint asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. On November 17, 2023, the district court denied Appellant's motion to dismiss for lack of subject matter jurisdiction and motion for judgment on the pleadings and denied without prejudice Appellant's motion for summary judgment. 11/17/2023 Min. Order. On December 18, 2023, Appellant timely noticed this appeal of the order denying the motion to dismiss for lack of subject matter jurisdiction and motion for judgment on the pleadings. ECF 40. This Court has appellate jurisdiction under 28 U.S.C. § 1291, because the district court's pre-judgment, collateral order implicates rights that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

## ISSUE PRESENTED

1. Whether this Court has appellate jurisdiction under the collateral-order doctrine over the district court's order denying Defendant-Appellant's motion to dismiss for lack of subject-matter jurisdiction and motion for judgment on the pleadings based on the First Amendment ecclesiastical abstention doctrine, when the Complaint alleges that Plaintiff was led to

believe that his donation to the Peter's Pence Collection would be used "immediately" and "exclusively" by the Holy See to help those suffering the effects of war, oppression, natural disaster, or disease, rather than invested for a later use.

## CONSTITUTION, STATUTE, AND RULE

Pertinent Constitutional, statutory, and rule provisions are reproduced in the addendum along with the district-court docket sheet and a transcript of the hearing accompanying the district court's minute order.

## STATEMENT OF THE CASE

### A.    Peter's Pence and USCCB's Activities

The fund now known as Peter's Pence dates to the seventh and eighth centuries, when Anglo-Saxon members of the Church began the practice of sending annual contributions to the Bishop of Rome.[1]  Today, consistent with historic tradition, Peter's Pence is a gift "offered by the faithful to the Holy Father," to be used both for "the many different needs of the Universal Church" and "the relief of those most in need."[2]   Many Roman Catholic

---

[1] *Peter's Pence: An Ancient Custom Still Alive Today*, The Vatican (June 1, 2018), http://tinyurl.com/bdffbzej.

[2] *Peter's Pence: How to Send Your Contribution to the Holy Father*, The Vatican (June 2, 2018), http://tinyurl.com/2cycjv36.

churches throughout the world take up collections for Peter's Pence annually as part of a feast commemorating the martyrdom of St. Peter.[3]

The United States Conference of Catholic Bishops ("USCCB") is an organization of Roman Catholic Bishops serving the United States and the Virgin Islands.[4] As an assembly of ordained Catholic clergy, USCCB's mission is to "jointly exercise certain pastoral functions on behalf of the Christian faithful," including by "[f]oster[ing] communion … under the leadership of [the Church's] supreme pastor, the Roman Pontiff."[5]

In part to fulfill those responsibilities, USCCB maintains an Office of National Collections, which serves as a coordination point for numerous annual collections of various Catholic ministries.[6] To assist local churches, the Office makes available on its website a wide range of materials that individual dioceses may draw on in facilitating those collections—including Peter's

---

[3] *Peter's Pence: An Ancient Custom, supra* n.1.

[4] *See About USCCB*, U.S. Conference of Catholic Bishops, http://tinyurl.com/2x5p5nuj.

[5] *Id.*

[6] *USCCB Committees: National Collections*, U.S. Conference of Catholic Bishops, http://tinyurl.com/23ptseup.

Pence.[7]  However, under the Church's *Code of Canon Law*, governance of each diocese rests with the individual diocesan bishop, not with USCCB.  *Code of Canon Law*, Cann. 381; 447-450; 455.  While Canon Law instructs the lay faithful to support the Church "according to the norms issued by the conference of bishops," the Law also establishes that each bishop bears singular responsibility for admonishing the faithful to that duty "in an appropriate manner."  *Id.* at Cann. 1261-1262.

The Church's hierarchical ecclesiastical structure also guides decisions concerning ownership and control of donated funds.  Under Canon Law, bishops are instructed to "assist in procuring those means which the Apostolic See [*e.g.*, the Pope] needs."  *Code of Canon Law*, Can. 1271.  Accordingly, funds collected for Peter's Pence are sent directly to the Apostolic Nunciature in Washington, D.C.—essentially, the Holy See's embassy in the United States— and then transferred to the Holy See for the Pope's use.[8]

---

[7] *See, e.g., 2024 Peter's Pence Collection Resources*, U.S. Conference of Catholic Bishops, http://tinyurl.com/3e7xhx4a.

[8] *Office of National Collections: Frequently Asked Questions*, U.S. Conference of Catholic Bishops, http://tinyurl.com/2evbnp9k.

## B. Plaintiff's Lawsuit

On January 22, 2020, David O'Connell, a parishioner of a Catholic Parish in Rhode Island, filed a putative class-action complaint against USCCB in federal district court. Plaintiff alleges that USCCB committed fraud, unjust enrichment, and breach of fiduciary duty in connection with the Peter's Pence collection from 2018. ECF 1, Complaint ¶¶ 34, 47-64 ("Compl."). According to the Complaint, Plaintiff gave an unspecified amount to Peter's Pence on an unspecified date in summer 2018 after hearing a "solicitat[ion] from the pulpit" at his parish church. *Id.* ¶ 34. The Complaint does not identify the speaker or specify the content of the message from the pulpit, other than to say that "[n]othing [Plaintiff] saw or heard, on that day or beforehand, told him or made him understand that his donations to Peter's Pence would be used for anything other than emergency assistance to the neediest people around the world." *Id.*

Plaintiff alleges that USCCB intentionally misled him and similarly situated parishioners by somehow conveying the message (again, the Complaint never quotes the words spoken from the pulpit) that Peter's Pence collections would be used "immediately" and "exclusively" for "emergency" humanitarian purposes, rather than for other religious purposes or investments intended to serve those purposes in the future. *See, e.g.*, Compl.

¶¶ 34, 48, 49. The Complaint does not allege that the Pope, any official within USCCB, or any other individual used the funds for personal gain or non-church uses. Nor does it allege that Plaintiff heard or relied on any specific statement made by USCCB. *Id.* ¶ 34. Nonetheless, Plaintiff seeks to certify a class comprised of all persons in the United States who donated money to Peter's Pence, and requests monetary damages and injunctive relief. *Id.* ¶¶ 37, 65.

Invoking the standard in Rule 12(b)(1), USCCB subsequently filed a motion to dismiss the Complaint and for judgment on the pleadings, arguing in part that the court lacked subject-matter jurisdiction because resolving O'Connell's claims would intrude on the Catholic Church's internal governance in a manner barred by the First Amendment. ECF 22.[9] The district court denied USCCB's motion. 11/17/2023 Min. Order. The court first stated that Plaintiff's claims against USCCB (and indirectly, against the Pope) amounted to a "purely secular" dispute involving "alleged fraud or collusion," not an intra-church disagreement over prudential religious matters. *See* Addendum,

---

[9] USCCB moved in the alternative for a grant of summary judgment. ECF 22. The district court denied that motion without prejudice, and that denial is not subject to this appeal.

A13:11-19. Likewise, the district court rejected USCCB's argument that resolving the case would tread on the Church's organizational autonomy or require adjudication of religious questions. According to the court, adjudicating Plaintiff's claims would not require "any decisions about ... whose voice speaks for the church" or "any judgments whatsoever about the way the church chooses to use its funds." A13:2-4, A14:13-17.

USCCB timely filed a notice of appeal seeking review of the district court's order. ECF 40. This Court subsequently issued an order requesting USCCB to explain the jurisdictional basis for this appeal. Order, *O'Connell v. USCCB*, No. 23-7173 (Dec. 22, 2023).

## STANDARD OF REVIEW

This Court reviews a district court's "exercise of jurisdiction" *de novo*. *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 557 (D.C. Cir. 2023). Under the collateral-order doctrine, a district court order qualifies as "final" under 28 U.S.C. § 1291 if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Ameziane v. Obama*, 620 F.3d 1, 5 (D.C. Cir. 2010) (citation omitted).

## SUMMARY OF ARGUMENT

I.     Because all three preconditions of the collateral-order doctrine are satisfied, jurisdiction is proper.  *See Trump*, 88 F.4th at 1000.  First, the district court's order "is effectively unreviewable on appeal from a final judgment."  *Id.*   This case seeks invasive discovery and a judicial pronouncement on questions of church administration and Canon Law.  Accordingly, the judicial process would inflict a constitutional injury that cannot be repaired after trial.  *See Catholic Univ.*, 83 F.3d at 467.  Second, the order "conclusively determines the disputed question," *Trump*, 88 F.4th at 1000, namely, whether USCCB possesses the "right not to … face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985).  Third, the appeal "resolves an important issue completely separate from the merits of the action," *i.e.*, whether under the facts as pled, further proceedings are barred by the ecclesiastical abstention doctrine.   *Trump*, 88 F.4th at 1000.

## ARGUMENT

This Court has jurisdiction to hear this appeal under the collateral-order doctrine.  Under 28 U.S.C. § 1291, federal appellate courts may hear appeals of "all final decisions of the district courts of the United States."  Such decisions include pre-judgment, collateral orders concerning rights that are

"too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred." *Cohen*, 337 U.S. at 546.

Under this doctrine, an interlocutory district-court order is immediately appealable if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Trump*, 88 F.4th at 1000 (citation omitted). The "major" element in an appealable collateral order is this: if the order is not "reviewed before the proceedings terminate, it can never be reviewed at all." *Mitchell*, 472 U.S. at 525 (cleaned up).

This case satisfies each precondition. First, the order will be effectively unreviewable if not considered now. USCCB's constitutional claim involves a right under the Religion Clauses to avoid being "deposed, interrogated, and haled into court" that will be lost if not immediately reviewed. *Catholic Univ.*, 83 F.3d at 467; *see McCarthy v. Fuller*, 714 F.3d 971, 974-75 (7th Cir. 2013) (exercising appellate jurisdiction under collateral-order doctrine over order addressing question of church autonomy). Second, the district court's order conclusively rejected the First Amendment claim at issue in this appeal. Third, the question presented involves pure questions of law collateral to the merits.

I. **Jurisdiction is Proper Under the Collateral-Order Doctrine.**

　　A. **The District Court's Order Will be Effectively Unreviewable Without an Immediate Appeal.**

　　　　1. **Discovery Inflicts a First Amendment Harm That Cannot Later be Rectified.**

Here, the district court's order inflicts an injury that cannot be rectified later and justifies an immediate appeal. Courts have recognized that allowing discovery and trial where church autonomy is implicated visits harm on religious institutions that cannot be undone. *See McCarthy*, 714 F.3d at 974-75; *Whole Woman's Health v. Smith*, 896 F.3d 362, 373 (5th Cir. 2018). Allowing a court to "parse the internal communications and discern which are 'facts' and which are 'religious'" would constitute an "ongoing intrusion[] against religious bodies' self-government," and would also amount to "creating an ecclesiastical test in violation of the Establishment Clause." *Smith*, 896 F.3d at 373. Likewise, the D.C. Court of Appeals has observed that "subjecting religious institutions to defending their religious beliefs and practices" during "discovery and trial" harms the rights of religious bodies "irreparably," making immediate appeal appropriate. *United Methodist Church v. White*, 571 A.2d 790, 792-93 (D.C. 1990) (citing *Catholic Bishop*, 440 U.S. at 503).

Although this Court has not confronted the question whether the denial of a dispositive motion based on ecclesiastical abstention is immediately appealable, these holdings are wholly consistent with the law of this Circuit.[10] First, this Court has recognized that religious organizations possess a right to "manage [their] own affairs free from governmental interference," including "how [a church] will govern itself, what it will teach, and to whom it will entrust its ministerial responsibilities." *Catholic Univ.*, 83 F.3d at 460, 461, 463. Thus, when such a defendant is "deposed, interrogated, and haled into court" on religious subjects, that inflicts a constitutional injury that cannot be remedied on appeal. *See id.* at 467.

Second, this Court has exercised jurisdiction over collateral orders relating to other First Amendment rights, on the ground that later review "would not redress or undo any constitutional prohibitions of speech that occurred prior to or during trial." *Trump*, 88 F.4th at 1001; *see also In re*

---

[10] Like the "ministerial exception," *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020), the ecclesiastical abstention doctrine reflects the doctrine of church autonomy, forbidding civil courts from intruding into matters of "theological controversy, church discipline, ecclesiastical government, or the conformity of [members] to the standard of morals required to them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713-14 (1976).

*Sealed Case*, 77 F.4th 815, 825-26 (D.C. Cir. 2023) (First Amendment challenge to nondisclosure order). Other constitutional rights and common-law immunities are also subject to immediate collateral-order appeal. *See Abney v. United States*, 431 U.S. 651, 659 (1977) (Double Jeopardy Clause); *Helstoski v. Meanor*, 442 U.S. 500, 507 (1979) (Speech or Debate Clause); *Mitchell*, 472 U.S. at 526 (qualified immunity).

### 2. Plaintiff Urges Invasive Discovery of USCCB and the Judicial Resolution of Religious Questions.

Here, the resolution of Plaintiff's allegations would inflict harm on USCCB that could not later be remedied. The Complaint showcases the extent to which this action will, if allowed to continue, intrude on matters of church faith and Canon Law.

First, the Complaint alleges that "most of the Peter's Pence funds are diverted … to Credit Suisse, a Swiss-based investment company." Compl. ¶ 28. Consistent with this allegation, Plaintiff has asserted that "discovery is needed to determine how the Peter's Pence funds travel from the pockets of parishioners into Swiss hedge funds and other improper places." ECF 24 at 22 (memorandum in opposition to motion to dismiss). This demand, on its face, contemplates sweeping discovery into every level of the Catholic Church— from local parishes to the Holy See. And the purpose of this inquiry—to

facilitate a judicial determination as to whether, according to a secular standard, a particular investment use was "proper" or "improper"—is repugnant to the First Amendment. Consistent with the allegations of the Complaint, Plaintiff subsequently served discovery requests seeking all documents relating to the ultimate disposition of Peter's Pence funds, and all documents exchanged between USCCB, the Holy See, Vatican City and the Nunciature relating to Peter's Pence. Plaintiff reiterated his intent to pursue this discovery at a recent hearing in the district court. A21:10-24.

There is no question that principles of church autonomy apply to decisions about how to spend donations of the faithful. "How a church spends worshippers' contributions is, like the question of who may worship there, central to the exercise of religion." *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 80 (D.D.C. 2019). And further, "evaluating [claims on how a Church spends donations] would require the Court to decide who is rightfully empowered to make financial decisions for the Church." *Id.* It follows *a fortiori* that if a court may not determine who makes financial decisions for the church, *id.*, it certainly may not decide the correctness of such intra-church decisions.

In its ruling below, the district court determined that this case falls within an exception to the church-autonomy doctrine for "purely secular" disputes involving "alleged fraud or collusion." A13:11-23. To be sure, the Supreme Court has hypothesized, without holding, that civil courts may entertain lawsuits against religious institutions in a "narrow" set of circumstances involving fraud—namely, "when church tribunals act in bad faith for secular purposes." *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976). But here, the Complaint alleges nothing of the sort. Plaintiff does not contend that USCCB, the Pope, or any other ecclesiastical official used Peter's Pence for illicit personal gain or other secular purposes. Instead, Plaintiff alleges that the Pope inappropriately *invested* funds *on an interim basis*, rather than employing them "immediately" and "exclusively" for a particular religious use, as Plaintiff expected the Pope to do. Compl. ¶¶ 48-49. Allowing federal courts to adjudicate that kind of discretionary intra-religious decision-making would inflict a constitutional harm that this Court can and should prevent.

Second, Plaintiff asks the court to interpret representations made (or not made) by various religious actors to the faithful. This inquiry places a "significant burden" on "the way an organization carrie[s] out … its religious

mission." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 336 (1987). This effectively "chill[s]" the organization's activities in a manner that defies later correction. *Id.* at 344 (Brennan, J., concurring). The Complaint asks the Court to parse not only statements made by USCCB, *see, e.g.*, Compl. ¶¶ 20-23, but also statements made on the Vatican website, *see id.* ¶ 22; *id.* ¶ 25; and the unspecified "solicitat[ion]" made by the unnamed speaker to the faithful in the pews, *id.* ¶ 34.

If the First Amendment protects decisions concerning the use of church donations, *Ambellu*, 387 F. Supp. 3d at 80, surely it protects decisions as to how to articulate and advance the mission behind church donations. Interpreting each statement requires an evaluation of religious context, including the expectations of the lay faithful, the scope and nature of their charitable obligations, and the weight assigned to the statements of different speakers based on their position in the Church. For example, the Complaint quotes a publication that describes Peter's Pence as a way to "join Pope Francis and be a witness of charity." Compl. ¶ 22. Does Catholic theology or the Pope's role suggest that those statements are best read as recognizing the Pope's authority to realize charitable purposes through intervening

investments—or do they not?  That is a question that may only be answered by reference to religious—not secular—faith, doctrine, and administration.

Third, the Complaint asks the court to compare statements made by USCCB, the Holy See, individual church leaders, and an unidentified speaker-from-the-pulpit concerning Peter's Pence.  The Complaint asserts that, if Plaintiff had consulted USCCB and Vatican websites, "he would still reasonably be unaware" of the alleged investment uses of Peter's Pence donations.  Compl. ¶ 35.  Elsewhere, the Complaint quotes the response of Pope Francis and Cardinal Wilfrid Napier of South Africa (and a member of the Council for the Economy) to inquiries from the press concerning the collection—seemingly for the purpose of alleging falsity.  *Id*. ¶¶ 31, 33.  But comparing the statements of some church leaders with those of others entails an "evaluat[ion] of competing opinions on religious subjects"—something the First Amendment forbids.  *Catholic Univ.*, 83 F.3d at 465.

Fourth, the Complaint alleges that USCCB "directed" the unnamed speaker in the Sacred Heart Church in Providence to make a "solicitat[ion] from the pulpit."  Compl. ¶ 34; *see id*. ¶ 5 (alleging that Plaintiff gave to Peter's Pence "[a]t the urging of USCCB"); *cf*. ECF 24 at 4 ("all dioceses were instructed [by USCCB] to specially collect for Peter's Pence in all churches on

June 30"). But the question whether USCCB can "direct" a speaker at a Sunday Mass—or use that speaker as a vessel to "urge" donations—comes down to this: does USCCB exercise canonical control over bishops, pastors, deacons, or other speakers at the parish level? No civil court is empowered to answer this.

The same question arises in connection with Plaintiff's assertion that USCCB "appears to require all dioceses to report to USCCB all amounts collected, broken down by parish collections and individual gifts." ECF 24 at 22. Determining whether USCCB imposes this "requirement" on nearly 200 dioceses, again, asks a civil court to ascertain, as a matter of church administration and church law, what authority USCCB exercises over local bishops. That is a forbidden intrusion into church governance.

With a pedigree stretching back centuries, Peter's Pence is a gift to the Holy Father, employed both for "the relief of those most in need" and for the "needs of the Universal Church."[11] But whether those purposes are best served by an immediate outlay or by an investment to further those purposes later is an ecclesiastical judgment reserved to the Pope alone. The theological

---

[11] *Peter's Pence: How to Send Your Contribution to the Holy Father*, *supra* n.3.

aspect to financial stewardship, recognized in Sacred Scripture, *see* Matthew 25:14-30, is at its apex here, considering the Pope's role as "Supreme Pastor of the Church." *Lumen Gentium*, Appx. 4.[12] Allowing a court to second-guess the Pope's prudential religious judgments concerning funds he administers on the Church's behalf unquestionably "encroach[es] on the ability of a church to manage its internal affairs," and "entangle[s] the civil authorities in religious decision-making" in a way that demands immediate review. *Catholic Univ.*, 83 F.3d at 460, 465 (citation omitted).

## B. The District Court's Order Conclusively Denied USCCB's First-Amendment Right Not To Undergo Intrusive Discovery and Is Collateral to the Merits.

The district court's order refusing to dismiss this case also satisfies the other two requirements under the collateral-order doctrine.

First, the district court's order "finally and conclusively determine[d] the defendant's claim of right not to … face the other burdens of litigation." *Mitchell*, 472 U.S. at 526-27. As noted above, this Court has recognized that the church-autonomy principle involves not just a defense from liability, but also a right on the part of religious institutions and their leaders not to be

---

[12] *Available at* http://tinyurl.com/2s4hr68z.

"deposed, interrogated, and haled into court" where the Constitution's protections apply. *See Catholic Univ.*, 83 F.3d at 467.

Here, the district court's order was conclusive, and, absent intervention from this Court, the case will proceed to discovery and toward trial. The Seventh Circuit has held that a denial of a church-autonomy defense is "closely akin to a denial of official immunity" and therefore immediately appealable, because it confers "immunity from the travails of a trial and not just from an adverse judgment." *McCarthy*, 714 F.3d at 975; *see also Smith*, 896 F.3d at 373 (granting immediate appeal and recognizing "structural protection afforded religious organizations and practice under the Constitution"). Numerous state courts have reached the same conclusion. *See Kirby v. Lexington Theological Seminary*, 426 S.W.3d 597, 609 n.45 (Ky. 2014); *Dayner v. Archdiocese of Hartford*, 23 A.3d 1192, 1199-1200 (Conn. 2011) (same) (*abrogated in part on other grounds by Trinity Christian Sch. v. Comm'n on Hum. Rts. & Opportunities*, 189 A.3d 79 (Conn. 2018)); *Harris v. Matthews*, 643 S.E.2d 566, 569-70 (N.C. 2007).

Finally, whether the ecclesiastical-abstention doctrine precludes the district court from conducting discovery and trial in this case is "completely separate" from the merits of plaintiff's tort claims, making this a collateral

issue. *Trump*, 88 F.4th at 1000. Here, this Court "need not consider the correctness of the plaintiff's version of the facts"; instead, "[a]ll it need determine is a question of law." *Mitchell*, 472 U.S. at 528.

The question whether the First Amendment bars this case does not depend on an evaluation of whether Plaintiff, in fact, was somehow misled from the pulpit in summer 2018, and whether that impression could somehow be attributed to USCCB. From the face of the Complaint, Plaintiff's claims require a civil court to scrutinize religious pronouncements and Catholic doctrine, divide responsibility among ecclesiastical officials, and determine whether the statements of others within the Church effectively bind the Pope in the exercise of his religious judgments.

Moreover, unlike other fraud claims, this case does not merely require establishing a factual divergence between defendant's representations and an illicit private use, which may be accomplished through relatively targeted discovery. Instead, resolving Plaintiff's claims as pled requires wide-ranging discovery into the Church's "internal communications," requiring a court to "discern which [assertions] are 'facts' and which are 'religious.'" *Smith*, 896 F.3d at 373; *see also supra* pp. 13-14. The ecclesiastical abstention doctrine precludes these inquiries, even accepting Plaintiff's factual allegations as true.

All of this distinguishes this case from others where courts have turned away immediate church-autonomy appeals. In one case, for instance, the Tenth Circuit held that a religious school's appeal of an order denying summary judgment on the school's ministerial-exception defense was not immediately appealable, in significant part because determining whether the plaintiff actually qualified as a minister was a "fact-intensive inquiry." *Tucker v. Faith Bible Chapel Int'l.*, 36 F.4th 1021, 1026 (10th Cir. 2022). Here, by contrast, USCCB's claimed church-autonomy protection does not depend on fact-intensive questions about employment status, but rather on the reality that—even accepting Plaintiff's factual allegations—resolving his claims would violate the Constitution by requiring a civil court to adjudicate matters of "theological controversy, church discipline, [or] ecclesiastical government." *Milivojevich*, 426 U.S. at 713-14 (citation omitted).

Likewise, in *Belya v. Kapral*, the Second Circuit turned aside an interlocutory appeal involving a church-autonomy defense to a defamation lawsuit because the case presented "outstanding secular fact questions" which "would not require a fact-finder to delve into matters of faith and doctrine"— namely, whether the plaintiff himself had forged the letters that served as the basis for his claims. 45 F.4th 621, 634 (2d Cir. 2022).

No such distinction is presented by this case. Plaintiff's avowed intent is to take discovery on the Holy See's decisions to invest Peter's Pence funds rather than distribute them in the first instance. Furthermore, Plaintiff is asking the district court to decide how religious documents should be interpreted, which ecclesiastical officials bear ultimate responsibility for statements from the pulpit and spending decisions, and whether a Catholic parishioner may indirectly control the Pope's religious decisions through a tort lawsuit aimed at third parties.

Because the issues appealed here are collateral and are pure questions of law, jurisdiction is appropriate.[13]

## II. Because Jurisdiction Is Proper, this Court Should Exercise Pendent Jurisdiction Over Other Aspects of the Case.

Appellate jurisdiction in this case is proper under the collateral-order doctrine. As a result, this Court should note jurisdiction and set this case for full briefing and argument. In doing so, however, this Court may also properly assert jurisdiction over other legal issues in this case.

---

[13] Even if, contrary to the facts pled, it were thought true that this case could be resolved on the basis of "secular fact questions," the most appropriate disposition would be to remand with instructions to limit discovery to those secular fact questions in the first instance.

Where jurisdiction over one claim is proper pursuant to the collateral-order doctrine, this Court may also assert pendent appellate jurisdiction over other issues, where doing so is "likely [to] terminate the entire case, sparing both this court and the district court from further proceedings and giving the parties a speedy resolution." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997) (citation omitted). Because immediate review of the church-autonomy issue is proper, this Court may also exercise its discretion to resolve this case on other grounds—namely, that Plaintiff's Complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6), (c); *Rollins v. Wackenhut Servs.*, 703 F.3d 122, 130 (D.C. Cir. 2012).

## CONCLUSION

The district court's decision qualifies as a collateral order over which appellate jurisdiction is proper.

Respectfully submitted,

/s/ *Emmet T. Flood*
KEVIN T. BAINE
EMMET T. FLOOD
  *Counsel of Record*
MARK S. STORSLEE

JANUARY 22, 2024

WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue, S.W.*
  *Washington, D.C. 20024*
  *(202) 434-5000*
  *eflood@wc.com*

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and this Court's December 22, 2023 Order because it contains 5,123 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5), (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

*/s/ Emmet T. Flood*
EMMET T. FLOOD

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2024, a copy of the foregoing was filed with the Clerk of the Court's electronic filing system, which is designed to serve all counsel of record.

*/s/ Emmet T. Flood*
EMMET T. FLOOD

# ADDENDUM

# INDEX TO ADDENDUM

Page

*O'Connell v. USCCB*, 1:20-cv-01365, Civil Docket ............................................. A1

Transcript of Status Hearing (D.D.C. November 17, 2023) ........................... A9

U.S. Const. amend. I ...................................................................... A29

28 U.S.C. § 1291 .......................................................................... A29

Fed. R. Civ. P. 12 ........................................................................ A29

**Query    Reports    Utilities    Help    Log Out**

APPEAL,JURY,TYPE-E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:20-cv-01365-JMC

O'CONNELL v. UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS
Assigned to: Judge Jia M. Cobb
Demand: $5,000,000
Case in other court:  Rhode Island, 1:20-cv-00031
                               USCA, 23-07173
Cause: 28:1332 Diversity-Fraud

Date Filed: 05/21/2020
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**DAVID O'CONNELL**                    represented by   **Jonas Bram Jacobson**
                                                        DOVEL & LUNER LLP
                                                        201 Santa Monica Boulevard
                                                        Suite 600
                                                        Santa Monica, CA 90401
                                                        310-656-7066
                                                        Email: jonas@dovel.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Marc R Stanley**
                                                        STANLEY LAW GROUP
                                                        6116 North Central Expressway
                                                        Ste 1500
                                                        Dallas, TX 75206
                                                        214-443-4300
                                                        Fax: 214-443-0358
                                                        Email: marcstanley@mac.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Simon Carlo Franzini**
                                                        DOVEL & LUNER LLP
                                                        201 Santa Monica Boulevard
                                                        Suite 600
                                                        Santa Monica, CA 90401
                                                        310-656-7066
                                                        Email: simon@dovel.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Martin Woodward**

A1

KITNER WOODWARD PLLC
13101 Preston Road
Suite 110
Dallas, TX 75240
214-443-4300
Fax: 214-443-4304
Email: martin@kitnerwoodward.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yvette Golan**
THE GOLAN FIRM PLLC
529 14th Street NW
Suite 914
Washington, DC 20045
713-206-8250
Email: ygolan@tgfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES CONFERENCE OF**               represented by   **Kevin Taylor Baine**
**CATHOLIC BISHOPS**                                            WILLIAMS & CONNOLLY LLP
                                                                680 Maine Avenue, S.W.
                                                                Washington, DC 20024
                                                                202-434-5010
                                                                Email: kbaine@wc.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Emmet T. Flood**
                                                                WILLIAMS & CONNOLLY
                                                                680 Maine Avenue SW
                                                                Washington, DC 20005
                                                                202-434-5300
                                                                Email: eflood@wc.com
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Richard Simon Cleary , Jr**
                                                                WILLIAMS & CONNOLLY
                                                                680 Maine Avenue, S.W.
                                                                Washington, DC 20024
                                                                202-434-5240
                                                                Email: rcleary@wc.com
                                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 01/22/2020 | 1 | COMPLAINT ( filing fee paid $ 400.00, receipt number 0103-1466938 ), filed by David O'Connell. (Attachments: # 1 Criminal Cover Sheet, # 2 Summons)(Wasylyk, Peter) [Transferred from Rhode Island on 5/21/2020.] (Entered: 01/22/2020) |

| 01/22/2020 | | Case assigned to District Judge William E. Smith and Magistrate Judge Patricia A. Sullivan. (Hicks, Alyson) [Transferred from Rhode Island on 5/21/2020.] (Entered: 01/22/2020) |
|---|---|---|
| 01/22/2020 | 2 | CASE OPENING NOTICE ISSUED (Hicks, Alyson) [Transferred from Rhode Island on 5/21/2020.] (Entered: 01/22/2020) |
| 01/22/2020 | 3 | Summons Issued as to United States Conference of Catholic Bishops. (Hicks, Alyson) [Transferred from Rhode Island on 5/21/2020.] (Entered: 01/22/2020) |
| 01/29/2020 | 4 | SUMMONS Returned Executed by David O'Connell. United States Conference of Catholic Bishops served on 1/24/2020, answer due 2/14/2020. (Wasylyk, Peter) [Transferred from Rhode Island on 5/21/2020.] (Entered: 01/29/2020) |
| 02/13/2020 | 5 | NOTICE of Appearance by Robert K. Taylor on behalf of United States Conference of Catholic Bishops (Taylor, Robert) [Transferred from Rhode Island on 5/21/2020.] (Entered: 02/13/2020) |
| 02/13/2020 | 6 | NOTICE of Appearance by Eugene G. Bernardo, II on behalf of United States Conference of Catholic Bishops (Bernardo, Eugene) [Transferred from Rhode Island on 5/21/2020.] (Entered: 02/13/2020) |
| 02/13/2020 | 7 | MOTION to Dismiss for Lack of Jurisdiction *and Improper Venue* filed by United States Conference of Catholic Bishops. **Responses due by 2/27/2020.** (Attachments: # 1 Supporting Memorandum, # 2 Exhibit A (Ridderhoff Affidavit))(Taylor, Robert) [Transferred from Rhode Island on 5/21/2020.] (Entered: 02/13/2020) |
| 02/26/2020 | 8 | Cross MOTION to Transfer Case *and response to Motion to Dismiss* filed by All Plaintiffs. **Responses due by 3/11/2020.** (Attachments: # 1 Supporting Memorandum)(Wasylyk, Peter) [Transferred from Rhode Island on 5/21/2020.] (Entered: 02/26/2020) |
| 03/09/2020 | 9 | RESPONSE In Opposition to 8 Cross MOTION to Transfer Case *and response to Motion to Dismiss ; and REPLY in Support of* 7 *Motion to Dismiss* filed by United States Conference of Catholic Bishops. **Replies due by 3/16/2020.** (Taylor, Robert) [Transferred from Rhode Island on 5/21/2020.] (Entered: 03/09/2020) |
| 03/16/2020 | 10 | REPLY to Response re 9 Response to Motion, *transfer venue* filed by David O'Connell. (Wasylyk, Peter) [Transferred from Rhode Island on 5/21/2020.] (Entered: 03/16/2020) |
| 05/21/2020 | | TEXT ORDER denying as moot 7 Motion to Dismiss for Lack of Jurisdiction; granting 8 Motion to Transfer Case: The Court GRANTS 8 Plaintiff's Cross-Motion to Transfer Venue, transferring the case to the United States District Court for the District of Columbia. Defendant's 7 Motion to Dismiss is hereby DENIED AS MOOT. So Ordered by District Judge William E. Smith on 5/21/2020. (Jackson, Ryan) [Transferred from Rhode Island on 5/21/2020.] (Entered: 05/21/2020) |
| 05/21/2020 | 11 | Case transferred in from District of Rhode Island; Case Number 1:20-cv-00031. Original file certified copy of transfer order and docket sheet received. (Entered: 05/21/2020) |
| 06/02/2020 | 12 | NOTICE of Appearance by Kevin Taylor Baine on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Baine, Kevin) (Entered: 06/02/2020) |
| 06/02/2020 | 13 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Baine, Kevin) (Entered: 06/02/2020) |
| 06/02/2020 | 14 | Consent MOTION for Extension of Time to File Answer by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Attachments: # 1 Proposed Order)(Baine, |

A3

| | | |
|---|---|---|
| | | Kevin) Modified docket text at the request of counsel on 6/3/2020 (eg). (Entered: 06/02/2020) |
| 06/10/2020 | | MINUTE ORDER granting 14 Motion for Extension of Time to Answer. It is hereby ORDERED that Defendant shall answer or otherwise respond to the complaint on or before 7/6/2020. Signed by Judge Ketanji Brown Jackson on 6/10/2020. (jag) (Entered: 06/10/2020) |
| 06/15/2020 | 15 | NOTICE of Appearance by Marc R Stanley on behalf of All Plaintiffs (Stanley, Marc) (Entered: 06/15/2020) |
| 06/15/2020 | 16 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Martin Woodward, Filing fee $ 100, receipt number ADCDC-7229825. Fee Status: Fee Paid. by DAVID O'CONNELL (Attachments: # 1 Declaration Declaration of Martin Woodward in support of motion for admission pro hac vice, # 2 Text of Proposed Order proposed Order granting motion for admission of attorney pro hac vice)(Stanley, Marc) (Entered: 06/15/2020) |
| 06/29/2020 | | MINUTE ORDER granting 16 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that Martin Woodward is admitted pro hac vice in the matter as counsel for Plaintiff. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Ketanji Brown Jackson on 6/29/2020. (jag) Modified event title on 7/1/2020 (znmw). (Entered: 06/29/2020) |
| 06/30/2020 | 17 | NOTICE of Appearance by Martin Woodward on behalf of DAVID O'CONNELL (Woodward, Martin) (Entered: 06/30/2020) |
| 07/02/2020 | 18 | Consent MOTION for Extension of Time to *to File Motion for Class Certification* by DAVID O'CONNELL (Attachments: # 1 Text of Proposed Order)(Stanley, Marc) (Entered: 07/02/2020) |
| 07/06/2020 | 19 | GENERAL ORDER AND GUIDELINES FOR CIVIL CASES BEFORE JUDGE KETANJI BROWN JACKSON. The Court will hold the parties and counsel responsible for following these directives, and parties and counsel should pay particular attention to the Court's instructions for briefing motions and filing exhibits. Failure to adhere to this Order may, when appropriate, result the imposition of sanctions and/or sua sponte denial of non-conforming motions. Signed by Judge Ketanji Brown Jackson on 7/6/2020. (jag) (Entered: 07/06/2020) |
| 07/06/2020 | 20 | ANSWER to 1 Complaint by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS.(Baine, Kevin) (Entered: 07/06/2020) |
| 07/09/2020 | 21 | ORDER setting Initial Scheduling Conference for 9/17/2020 at 10:00 AM in Courtroom 17 before Judge Ketanji Brown Jackson. Signed by Judge Ketanji Brown Jackson on 7/9/2020. (jag) (Entered: 07/09/2020) |
| 07/09/2020 | | MINUTE ORDER granting 18 Motion for Extension of Time to File Motion for Class Certification. It is hereby ORDERED that Plaintiff's deadline to file a motion for class certification is STAYED until further Order of this Court. The Court will address the issue of briefing class certification at the upcoming Initial Scheduling Conference. Signed by Judge Ketanji Brown Jackson on 7/9/2020. (jag) (Entered: 07/09/2020) |
| 07/10/2020 | 22 | MOTION to Dismiss for Lack of Jurisdiction , MOTION for Judgment on the Pleadings *or, in the alternative*, MOTION for Summary Judgment by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Attachments: # 1 Memorandum in Support of Defendant's Motion, # 2 Statement of Facts, # 3 Declaration of Mary Mencarini Campbell, # 4 Text of Proposed Order)(Baine, Kevin) (Entered: 07/10/2020) |

| 07/10/2020 | | MINUTE ORDER. In light of the filing of Defendant's 22 Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, it is hereby ORDERED that the Initial Scheduling Conference currently set for 9/17/2020 is VACATED. It is FURTHER ORDERED that Plaintiff shall file his response to the 22 Motion on or before 7/24/2020, and Defendant shall file any reply on or before 7/31/2020. Signed by Judge Ketanji Brown Jackson on 7/10/2020. (jag) (Entered: 07/10/2020) |
| 07/21/2020 | 23 | Consent MOTION for Extension of Time to File Response/Reply as to 22 MOTION to Dismiss for Lack of Jurisdiction MOTION for Judgment on the Pleadings *or, in the alternative* MOTION for Summary Judgment by DAVID O'CONNELL (Attachments: # 1 Text of Proposed Order)(Woodward, Martin) (Entered: 07/21/2020) |
| 07/23/2020 | | MINUTE ORDER granting, for good cause shown, 23 Consent Motion for Extension of Time to File Response and Reply re 22 Motion to Dismiss for Lack of Jurisdiction, Motion for Judgment on the Pleadings or, in the Motion for Summary Judgment. It is hereby ORDERED that Plaintiff's response re 22 is due on or before 8/7/2020, and Defendant's reply is due on or before 8/21/2020. Signed by Judge Ketanji Brown Jackson on 7/23/2020. (jag) (Entered: 07/23/2020) |
| 08/07/2020 | 24 | Memorandum in opposition to re 22 MOTION to Dismiss for Lack of Jurisdiction MOTION for Judgment on the Pleadings *or, in the alternative* MOTION for Summary Judgment filed by DAVID O'CONNELL. (Attachments: # 1 Statement of Facts, # 2 Text of Proposed Order)(Woodward, Martin) (Entered: 08/07/2020) |
| 08/21/2020 | 25 | REPLY to opposition to motion re 22 MOTION to Dismiss for Lack of Jurisdiction MOTION for Judgment on the Pleadings *or, in the alternative* MOTION for Summary Judgment filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Baine, Kevin) (Entered: 08/21/2020) |
| 10/09/2020 | | MINUTE ORDER. It is hereby ORDERED that a motion hearing on Defendant's 22 Motion to Dismiss for Lack of Jurisdiction, for Judgment on the Pleadings or, in the alternative, for Summary Judgment is set for 1/28/2021 at 02:30 PM before Judge Ketanji Brown Jackson. Signed by Judge Ketanji Brown Jackson on 10/09/2020. (lckbj2) (Entered: 10/09/2020) |
| 12/30/2020 | 26 | NOTICE of Appearance by Emmet T. Flood on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Flood, Emmet) (Entered: 12/30/2020) |
| 01/25/2021 | 27 | NOTICE of Appearance by Richard Simon Cleary, Jr on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Cleary, Richard) (Entered: 01/25/2021) |
| 01/27/2021 | | MINUTE ORDER. It is hereby ORDERED that the VTC Motion Hearing currently set for 1/28/2021 at 2:30 PM is VACATED and RESET for 1/28/2021 at 01:30 PM before Judge Ketanji Brown Jackson. Signed by Judge Ketanji Brown Jackson on 1/27/2021. (jag) (Entered: 01/27/2021) |
| 01/28/2021 | | Minute Entry for video proceedings held before Judge Ketanji Brown Jackson: Motion Hearing held on 1/28/2021 re 22 MOTION to Dismiss for Lack of Jurisdiction MOTION for Judgment on the Pleadings *or, in the alternative* MOTION for Summary Judgment. Oral argument heard and motion taken under advisement. (Court Reporter Nancy Meyer) (zgdf) (Entered: 02/01/2021) |
| 02/03/2021 | 28 | TRANSCRIPT OF PROCEEDINGS before Judge Ketanji Brown Jackson held on 01/28/2021. Page Numbers: 1-82. Date of Issuance: 02/01/2021. Court Reporter: Nancy J. Meyer. Telephone Number: 202-354-3118. Tape Number: N/A. Transcripts may be ordered by submitting the Transcript Order Form |

|            |    | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/24/2021. Redacted Transcript Deadline set for 3/6/2021. Release of Transcript Restriction set for 5/4/2021.(Meyer, Nancy) (Entered: 02/03/2021) |
|------------|----|----|
| 06/22/2021 |    | Judge Ketanji Brown Jackson has been elevated to serve on the U.S. Court of Appeals for the D.C. Circuit. She is therefore no longer assigned to this case, and this matter has been reassigned to the Calendar Committee, which will oversee it until it is assigned to another district judge. Any questions should be directed to Judge Jackson's former deputy clerk, Gwendolyn Franklin, at 202-354-3145 or gwen_franklin@dcd.uscourts.gov. (rj) (Entered: 06/22/2021) |
| 11/15/2021 |    | Case directly reassigned to Judge Jia M. Cobb. Judge Ketanji Brown Jackson has been appointed to the D.C. Circuit and is no longer assigned to the case. (rj) (Entered: 11/15/2021) |
| 05/06/2022 | 29 | NOTICE of Change of Address by Richard Simon Cleary, Jr (Cleary, Richard) (Entered: 05/06/2022) |
| 07/14/2022 | 30 | NOTICE of Appearance by Yvette Golan on behalf of All Plaintiffs (Golan, Yvette) (Main Document 30 replaced on 7/14/2022) (zjf). (Main Document 30 replaced on 7/14/2022) (zjf). (Entered: 07/14/2022) |
| 07/14/2022 | 31 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Jonas Jacobson, Filing fee $ 100, receipt number ADCDC-9369484. Fee Status: Fee Paid. by DAVID O'CONNELL. (Attachments: # 1 Declaration Jacobson, # 2 Exhibit Certificate Good Standing, # 3 Text of Proposed Order)(Golan, Yvette) (Entered: 07/14/2022) |
| 07/14/2022 | 32 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Simon Franzini, Filing fee $ 100, receipt number ADCDC-9369520. Fee Status: Fee Paid. by DAVID O'CONNELL. (Attachments: # 1 Declaration Franzini, # 2 Exhibit Certificate, # 3 Text of Proposed Order)(Golan, Yvette) (Entered: 07/14/2022) |
| 07/14/2022 | 33 | NOTICE of Change of Address by Martin Woodward (Woodward, Martin) (Entered: 07/14/2022) |
| 07/18/2022 |    | MINUTE ORDER granting 31 Motion for Admission Pro Hac Vice of Jonas Jacobson: Attorney Jonas Jacobson is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Jia M. Cobb on July 18, 2022. (lcjmc1) (Entered: 07/18/2022) |
| 07/18/2022 |    | MINUTE ORDER granting 32 Motion for Admission Pro Hac Vice of Simon Franzini: Attorney Simon Franzini is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Jia M. Cobb on July 18, 2022. (lcjmc1) (Entered: 07/18/2022) |

| 07/18/2022 | 34 | NOTICE of Appearance by Simon Carlo Franzini on behalf of DAVID O'CONNELL (Franzini, Simon) (Entered: 07/18/2022) |
|---|---|---|
| 07/18/2022 | 35 | NOTICE of Appearance by Jonas Bram Jacobson on behalf of DAVID O'CONNELL (Jacobson, Jonas) (Entered: 07/18/2022) |
| 07/28/2022 | 36 | Unopposed MOTION for Telephone Conference *Status Conference* by DAVID O'CONNELL. (Attachments: # 1 Text of Proposed Order)(Franzini, Simon) (Entered: 07/28/2022) |
| 07/28/2022 | | MINUTE ORDER granting 36 Plaintiff's Unopposed Motion for Status Conference: This unopposed motion for a status conference is granted. The Court directs the Parties to appear for a status conference on August 9, 2022, at 1130AM. The status conference will be on the record and conducted via telephone. The Court's Deputy Clerk will provide the information necessary to access the call. Signed by Judge Jia M. Cobb on July 28, 2022. (lcjmc1) (Entered: 07/28/2022) |
| 08/09/2022 | | Minute Entry for telephonic proceeding held before Judge Jia M. Cobb: Status Conference held on 8/9/2022, to update the parties on the status of the case. (Court Reporter Lisa Bankins) (zgdf) (Entered: 08/17/2022) |
| 03/21/2023 | 37 | Unopposed MOTION for Telephone Conference *Status Conference* by DAVID O'CONNELL. (Attachments: # 1 Text of Proposed Order)(Franzini, Simon) (Entered: 03/21/2023) |
| 06/09/2023 | | MINUTE ORDER granting 37 Plaintiff's Unopposed Motion for Telephone Conference: Upon consideration of the Motion, it is hereby ORDERED that the Motion is GRANTED. The Court directs the Parties to appear for a status conference on July 18, 2023, at 11:00 AM. The status conference will be on the record and conducted via telephone. The Court's Deputy Clerk will provide the information necessary to access the conference. Signed by Judge Jia M. Cobb on June 9, 2023. (lcjmc2) (Entered: 06/09/2023) |
| 07/18/2023 | | Minute Entry for Status Conference proceeding held on 7/18/2023 before Judge Jia M. Cobb. Parties were informed a ruling on the pending motion is forthcoming via Chambers. (Court Reporter Stacy Johns) (zed) (Entered: 07/18/2023) |
| 10/16/2023 | 38 | NOTICE *(Letter from counsel)* by DAVID O'CONNELL (Woodward, Martin) (Entered: 10/16/2023) |
| 11/06/2023 | | MINUTE ORDER: The Court hereby ORDERS the Parties to appear for a video status conference, during which the Court shall issue its ruling on the pending 22 motion to dismiss, on November 17, 2023 at 2:30 PM. This hearing shall be on the record before Judge Jia M. Cobb and conducted via Zoom. The Court's Deputy Clerk will provide the information necessary to access the call. Signed by Judge Jia M. Cobb on November 6, 2023. (lcjmc2) (Entered: 11/06/2023) |
| 11/17/2023 | | Minute Entry for proceedings held before Judge Jia M. Cobb: Motion Hearing held on 11/17/2023. For the reasons stated on record, Oral ruling denying 22 MOTION to Dismiss for Lack of Jurisdiction and MOTION for Judgment on the Pleadings, and denying without prejudice the MOTION for Summary Judgment. Parties are to confer and file a joint scheduling report. Order forthcoming via Chambers. (Court Reporter Bryan Wayne) (zgf) (Entered: 11/17/2023) |
| 11/17/2023 | | MINUTE ORDER denying 22 Motion to Dismiss: For the reasons stated on the record in the hearing held today, the Court DENIES Defendants' 22 Motion to Dismiss for Lack of Jurisdiction and Motion for Judgment on the Pleadings, and DENIES without prejudice Defendants' Motion for Summary Judgment. Signed by Judge Jia M. Cobb on November 17, 2023. (lcjmc2) (Entered: 11/17/2023) |

A7

| | | |
|---|---|---|
| 11/19/2023 | [39](#) | TRANSCRIPT OF 11/17/23 STATUS HEARING before Judge Jia M. Cobb held on November 17, 2023; Page Numbers: 1-20. Date of Issuance: 11/19/2023. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br> Redaction Request due 12/10/2023. Redacted Transcript Deadline set for 12/20/2023. Release of Transcript Restriction set for 2/17/2024.(Wayne, Bryan) (Entered: 11/19/2023) |
| 11/28/2023 | | MINUTE ORDER setting Initial Scheduling Conference: The Court hereby ORDERS the Parties to appear for a scheduling conference on January 10, 2024 at 10:00 AM. This conference will be on the record before Judge Jia M. Cobb and conducted via video. The Court's Deputy Clerk will provide the information necessary to access the conference. It is further ORDERED that the Parties shall file a joint report pursuant to Local Civil Rule 16.3(d) and Federal Rule of Civil Procedure 26(f) by January 3, 2024. Signed by Judge Jia M. Cobb on November 28, 2023. (lcjmc2) (Entered: 11/28/2023) |
| 12/18/2023 | [40](#) | NOTICE OF APPEAL TO DC CIRCUIT COURT as to Order on Motion to Dismiss/Lack of Jurisdiction,, Order on Motion for Judgment on the Pleadings,, Order on Motion for Summary Judgment, by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. Filing fee $ 605, receipt number ADCDC-10567032. Fee Status: Fee Paid. Parties have been notified. (Flood, Emmet) (Entered: 12/18/2023) |
| 12/19/2023 | [41](#) | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re [40](#) Notice of Appeal to DC Circuit Court,. (zdp) (Entered: 12/19/2023) |
| 12/22/2023 | | USCA Case Number 23-7173 for [40](#) Notice of Appeal to DC Circuit Court, filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (zjm) (Entered: 12/27/2023) |
| 01/03/2024 | [42](#) | MEET AND CONFER STATEMENT. (Franzini, Simon) (Entered: 01/03/2024) |
| 01/10/2024 | | Minute Entry for proceedings held before Judge Jia M. Cobb: Scheduling Conference held on 1/10/2024. Status Report due by 2/8/2024. (Court Reporter Stacy Johns) (zgf) (Entered: 01/11/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/19/2024 15:30:17 | | |
| **PACER Login:** | | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-01365-JMC |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


DAVID O'CONNELL,                    .
                                   .
         Plaintiff,                .   CA No. 20-1365 (JMC)
                                   .
    v.                             .
                                   .
UNITED STATES CONFERENCE           .   Washington, D.C.
OF CATHOLIC BISHOPS,               .   Friday, November 17, 2023
                                   .   2:30 p.m.
         Defendant.                .
. . . . . . . . . . . . . . . . .


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE JIA M. COBB
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff:              MARTIN WOODWARD, ESQ.
                           Kitner Woodward PLLC
                           13101 Preston Road
                           Suite 110
                           Dallas, TX 75240

                           SIMON C. FRANZINI, ESQ.
                           Dovel & Luner LLP
                           201 Santa Monica Boulevard
                           Suite 600
                           Santa Monica, CA 90401

For Defendant:             KEVIN T. BAINE, ESQ.
                           EMMET T. FLOOD, ESQ.
                           RICHARD S. CLEARY JR, ESQ.
                           Williams & Connelly LLP
                           680 Maine Avenue SW
                           Washington, DC 20005

Court Reporter:            BRYAN A. WAYNE, RPR, CRR
                           U.S. Courthouse, Room 4704-A
                           333 Constitution Avenue NW
                           Washington, DC 20001

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

(Via Videoconference)

1  THE DEPUTY CLERK:  Good afternoon, Your Honor.  We're
2  on the record in civil action 20-1365, David O'Connell versus
3  United States Conference of Catholic Bishops.
4
5  Starting with Plaintiff, please state your appearance for
6  the record.
7  MR. WOODWARD:  Martin Woodward, Kitner Woodward PLLC,
8  for the plaintiff.
9  MR. FRANZINI:  Good afternoon, Your Honor.
10  Simon Franzini, from Dovel & Luner, for the plaintiff.
11  MR. BAINE:  Good afternoon, Your Honor.  Kevin Baine
12  from Williams & Connelly for the defendant.
13  MR. FLOOD:  Good afternoon, Your Honor.  Emmet Flood
14  from Williams & Connelly, also for the defendant, and with me
15  in my office is a colleague from Williams & Connelly, Richard
16  Cleary.
17  THE DEPUTY CLERK:  Your Honor, before you get started,
18  counsel, there is someone in the waiting room, a William
19  Quinn.  Is Mr. Quinn with someone.
20  MR. FLOOD:  Ms. Franklin, Mr. Quinn is our client.
21  THE DEPUTY CLERK:  Okay.  I'm admitting Mr. Quinn.
22  THE COURT:  Okay.  Good afternoon, everyone.  So we
23  are here to allow me to resolve the pending motions.  And this
24  case has been stuck for quite some time, and that is certainly

1       P R O C E E D I N G S

2      (Via Videoconference)

3 THE DEPUTY CLERK:  Good afternoon, Your Honor.  We're
4 on the record in civil action 20-1365, David O'Connell versus
5 United States Conference of Catholic Bishops.
6 Starting with Plaintiff, please state your appearance for
7 the record.
8 MR. WOODWARD:  Martin Woodward, Kitner Woodward PLLC,
9 for the plaintiff.
10 MR. FRANZINI:  Good afternoon, Your Honor.
11 Simon Franzini, from Dovel & Luner, for the plaintiff.
12 MR. BAINE:  Good afternoon, Your Honor.  Kevin Baine
13 from Williams & Connelly for the defendant.
14 MR. FLOOD:  Good afternoon, Your Honor.  Emmet Flood
15 from Williams & Connelly, also for the defendant, and with me
16 in my office is a colleague from Williams & Connelly, Richard
17 Cleary.
18 THE DEPUTY CLERK:  Your Honor, before you get started,
19 counsel, there is someone in the waiting room, a William
20 Quinn.  Is Mr. Quinn with someone.
21 MR. FLOOD:  Ms. Franklin, Mr. Quinn is our client.
22 THE DEPUTY CLERK:  Okay.  I'm admitting Mr. Quinn.
23 THE COURT:  Okay.  Good afternoon, everyone.  So we
24 are here to allow me to resolve the pending motions.  And this
25 case has been stuck for quite some time, and that is certainly

1   on the court.  So I'm happy to move things along and again

2   hope you can appreciate that I'm still relatively new here in

3   dealing with kind of onboarding backlog that we're working

4   through.  But, certainly, I recognize that you've been very

5   patient and appreciate that patience.

6       So I set this hearing so that I could issue my ruling

7   orally as to the pending motions.  Defendant has brought a

8   motion to dismiss for lack of subject matter jurisdiction,

9   for judgment on the pleadings, and in the alternative for

10  summary judgment.  I'm going to deny those motions at this

11  time and explain my reasoning briefly on the record.

12      After putting my reasoning on the record, however, I do

13  want to discuss not only next steps in terms of discovery,

14  but also this was filed as a putative class action and I want

15  to discuss a way in which, as you have your conferences for

16  discovery, can determine whether or not that motion for class

17  certification can be briefed as early as possible.  Because

18  I imagine that if this is not a class action that that changes

19  a lot about this case.  We can deal with that after I put my

20  reasoning on the record.

21      I'll jump right to my reasoning.  The factual background

22  the parties are well aware about.  The motion to dismiss for

23  lack of subject matter jurisdiction is a threshold issue, so

24  I'll start there.

25      As the parties recognize, federal courts lack jurisdiction

over disputes that cannot be resolved without extensive
inquiry into religious law and polity. This is the
ecclesiastical abstention doctrine, and I reserve the
parties to *Serbian E. Orthodox Diocese for U.S.A. and Canada
v. Milivojevich*, 426 U.S. 696 (1976).

There are, however, narrow exceptions top this. The Court
can decide church-related disputes if they can do so without
being unduly entangled in matters of ecclesiastical
cognizance, or if they can apply neutral principles of law.
And these questions are treated as jurisdictional.

Accordingly, when a defendant moves to dismiss for lack of
subject matter jurisdiction under Rule 12(b)(1), the plaintiff
bears the burden of establishing that a court has subject
matter jurisdiction.

Although I can consider matters outside the pleadings and
the motion bears closer scrutiny than a motion under, say,
Rule 12(b)(6), I am still required to accept the complaint's
factual allegations as true, and the plaintiff is afforded the
benefit of all reasonable inferences.

In its motion, defendant argues that the Court lacks
subject matter jurisdiction over this case because, on its
face, the dispute raises two basic questions about how the
highest authorities of the church may choose to allocate
funds.

And defendant is correct that the doctrine would prevent me

1   from reviewing decisions involving matters of church

2   government as well as those of faith and doctrine, and this

3   would include any decisions about the organization's

4   determination of whose voice speaks for the church, whether

5   someone may worship at church, matters that are purely

6   ecclesiastical even if they affect civil rights.  But the

7   doctrine does not prevent the Court from reviewing decisions

8   when it's possible to do so using completely neutral

9   principles of law.  And that's a proposition from *Jones v.*

10   *Wolf*  at 443 U.S. 595 (1979).

11      Importantly for this case, alleged fraud or collusion may

12   fall into the neutral principles category where civil court

13   review is appropriate.  And the reasoning for that exception

14   is that when a dispute is purely secular, even if it involves

15   a religious-affiliated organization, the perceived danger

16   that, in resolving interchurch disputes, the state will become

17   entangled in essentially religious controversies or intervene

18   on behalf of groups espousing particular doctrinal belief is

19   diminished.

20      And that's from *General Council of the United Methodist*

21   *Church v. California Superior Court*, also a Supreme Court

22   case, 439 U.S. 1355 (1978).  I do find, as pled, the complaint

23   falls within the neutral principles category.

24      The plaintiff alleges, in short, that defendant made

25   affirmative misrepresentations and fraudulent omissions, was

1   unjustly enriched and breached a fiduciary duty.  The elements

2   of these claims include falsity of statements, knowledge and

3   intent on the part of the statement makers, reliance, whether

4   a benefit was conferred and retained, and whether a fiduciary

5   duty was created and breached.  Those questions can be

6   resolved using neutral principles of law.

7       In other words, there's no need that I inquire into church

8   operations, religious doctrine, religious hierarchy, or

9   religious decisionmaking to evaluate the merits of this claim.

10  Instead, this is a case about what defendant represented, what

11  it knew, and the relationship between defendant and plaintiff

12  as a putative class representative.

13      I also understand that the case will not require me to

14  consider church governance, the makeup of church congregations

15  or anything related to membership and, importantly, to make

16  any judgments whatsoever about the way the church chooses to

17  use its funds.

18      To be sure, it would be improper for me to delve into those

19  purely religious determinations in order to rule.  For

20  example, I could not rule that the church could only exercise

21  its financial discretion in one way or another.  But I don't

22  believe that's required for the Court to determine, under

23  straightforward common-law principles, whether or not fraud

24  took place in this case or for a fact-finder to make that

25  determination.

1    As such, at this stage, it's not apparent to me that the

2    resolution of the claims will involve impermissible religious

3    entanglement, and so I conclude that I do have subject matter

4    jurisdiction in this case.

5        I'll turn next briefly to stating my reason for denying my

6    motion for judgment on the pleadings and in the alternative

7    for summary judgment.  As the parties are well aware, entering

8    judgment on the pleadings is appropriate if the movant shows

9    that there is no disputed material fact and they are entitled

10   to judgment as a matter of law.

11       The D.C. Circuit has recognized that such motions -- I'm

12   sorry -- that was the summary judgment standard.  But for Rule

13   12(c), the D.C. Circuit has recognized that such motions are

14   rare and that the party seeking judgment shoulders a heavy

15   burden of justification.

16       I am required to accept the nonmoving party's allegations

17   as true, and consider false the controverted assertions of the

18   moving party.  Judgment on the pleadings are not appropriate

19   if there are any issues of fact that, if proved, would defeat

20   recovery even if I am convinced that the opposing party is

21   unlikely to prevail at trial.

22       In sum, if there are any material questions presented by

23   the pleadings, I cannot grant a Rule 12(c) motion, and I find

24   that to be the case.

25       I'm going to start with the fraud claims.  As the parties

are well aware, under D.C. law, a claim for fraudulent
misrepresentation or omission requires a showing that a
defendant made a false representation of, or willfully omitted,
a material fact, had knowledge of the misrepresentation or
willful omission, intended to induce another to rely on the
misrepresentation or willful omission, that the other person
acted in reliance on the misrepresentation or willful
omission, and that damages were suffered as a result.

I understand plaintiff to be making two fraud-related
claims: fraudulent misrepresentation and fraudulent
concealment. The complaint alleges fraudulent
misrepresentation. O'Connell contends that defendant
communicated to him that money he donated would be used
exclusively for victims of war, oppression, natural disaster
or disease, and that defendant knew or should have known that
the proceeds were in fact used for noncharitable purposes; and
the plaintiff contends that these representations constitute
fraudulent misrepresentation. The plaintiff also contends
that he donated to defendant based on these representations
and that the defendant intended for him to rely on its
statements in his decision to donate.

The requirement to plead fraudulent concealment are
substantially the same. However, while fraudulent
misrepresentation turns on a false representation, fraudulent
concealment turns on an omission. And under D.C. law, mere

1    silence does not constitute fraud unless there is a duty to

2    speak.  And a duty to speak attaches in an instance where a

3    material fact is unobservable or undiscoverable by an

4    ordinarily prudent person upon reasonable inspection -- and

5    that's from *Sununu v. Philippine Airlines, Inc.*, 792 F.Supp.2d

6    39, (DDC 2011) -- or as a result of partial disclosure.

7    So, in this complaint, plaintiff alleges that defendant

8    knew or should have known that the charitable fund was not

9    used to fund charitable purposes exclusively as represented.

10   And because of this knowledge, plaintiff alleges that

11   defendant's failure to inform prospective donors of the true

12   use of funds constitutes unlawful concealment.

13   Further, plaintiff alleges that the defendant had a duty to

14   disclose because it had exclusive knowledge of the suppressed

15   facts and made representations about what the funds would be

16   used for.  Again, at this very early stage of the litigation,

17   I'm required to draw all of those inferences in plaintiff's

18   favor, and I do find that material disputes of fact remain

19   based on the defendant's answer and the briefing, including

20   whether any statements were in fact false, whether defendant

21   was actually involved in the alleged statements, whether the

22   defendant knew the statements were false, the defendant's

23   intentions regarding the statements, and plaintiff's reliance

24   on the representations.

25   For these reasons, taking the allegations as true, I deny

the motion with respect to Count 1. And I'll briefly just say, with respect to the 9(b) requirements, I know there was some discussion in the pleadings about whether or not such a motion is appropriate after an answer. I do note that defendants did answer the complaint, but don't think it's necessary for me to resolve the question, because I find that the complaint contains enough detail to satisfy the heightened pleading requirements.

I do think the fact that there was an answer is relevant to the overall purpose of the rule, which is to provide enough information to the defendant to be able to respond to the complaint, which isn't done, but I think that Plaintiff has alleged a narrow time frame, persons involved, what was said; and all of this is, in my view, sufficiently detailed to satisfy a Rule 9(b).

My findings with respect to unjust enrichment are similar to my ruling on the first count. It's just simply at this stage, prediscovery in the case, where I'm required to take plaintiff's allegations as true, I believe that plaintiff's complaint checks the relevant boxes.

Under D.C. law, a claim for unjust enrichment requires that a plaintiff confer a benefit on a defendant who in turn retained the benefit. Further, it must be the case that, under the circumstances, the defendant's retention of the benefit is unjust; and in the complaint, plaintiff alleges

1     that defendant retained the benefit of his donations to the

2     fund, Peter's Pence fund, and he alleges that the donations

3     were induced by false representations and omissions and that

4     the retention of these donations was unjust.

5        And I know that there are disputes about whether in fact

6     the defendant did retain the donations or whether the

7     defendant is actually the proper defendant at all.  These

8     factual disputes do not allow me to grant the motion.

9        Finally, for breach of fiduciary duty, under District of

10     Columbia law, the plaintiff must allege facts sufficient to

11     establish that the defendant owed such a duty to a plaintiff

12     and breached that duty.  And they must also plead probable

13     cause and injury, and plaintiff makes these allegations in his

14     complaint, that a fiduciary duty was generated by certain

15     promotions, advertisements, the overseeing and collection of

16     funds, and that the defendant breached the duty by not

17     ensuring that the charitable contributions were spent in

18     accordances with promises made.

19        As plaintiff recognizes, this question about a fiduciary

20     relationship is often a fact-intensive inquiry that's often

21     based on a fuller record, and given my rulings on the other

22     matters and at this earlier stage, I do think it would be

23     premature and not appropriate for me to grant the motion given

24     plaintiff's allegation.

25        And finally, there was a motion to treat the motion in the

1    alternative as one for summary judgment.  Plaintiff has

2    responded to defendant's statements by representing that he

3    isn't in a position to respond because he needs further

4    discovery.

5        Although I did not see that the motion included a

6    declaration to support that contention, I do agree that

7    plaintiff would be entitled to some information to have a

8    reasonable opportunity to present all the material that is

9    pertinent to the motion.  So I will decline to convert the

10   motion to one for summary judgment at the time, and deny it

11   certainly without prejudice.

12       So, again, thank you for your patience as I get this case

13   unstuck, but that's my ruling.  I think what we need to do

14   next is set a date for a scheduling conference and a deadline

15   for a Rule 26(f) report.

16       But I wanted to just take a step back and ask plaintiff's

17   counsel, because this case has been filed as a putative class

18   action, and I know that the defense has not moved, at least

19   yet, to strike any class allegations, and I certainly haven't

20   delved into that issue; but it seems to me that there's some

21   question particularly concerning, I would say -- to the extent

22   that the fraud counts require some showing about individual

23   people who donated their individual understanding and

24   reliance, that there may be some questions about commonality.

25       I mean, I don't know -- I don't want to put you on the

1    spot, but I guess my question is do you think that we can set

2    a schedule that would allow briefing on the class

3    certification question early, because I imagine if this case

4    is not certified as a class, then that changes a lot about the

5    case.  I don't know how much is at stake if this were just an

6    individual plaintiff case and not a class.  So maybe you can

7    speak to that, Mr. Woodard.

8         MR. WOODWARD:  Sure.  Thanks, Your Honor.  I agree that

9    it makes sense to proceed with class certification, or at

10   least as soon as is reasonable.  In connection what that,

11   though, we will need some discovery, and we are ready to move

12   forward just as soon as we can with the 26(f) conference and a

13   26(f) report.

14        We actually had already served a request for production of

15   documents on the day that the defendant filed its answer.

16   That was then followed, of course, with the motions that Your

17   Honor just ruled on, and the request for production hasn't

18   been responded to.  But it will be useful, we think, in sort

19   of outlining the types of discovery we're going to be seeking

20   in connection with our class certification motion, and it's

21   certainly the groundwork and foundation for what we think to

22   be a productive discussion about how long it might take

23   defendants to gather up and produce the materials that we're

24   asking for that will help resolve the issues.

25        Then briefly, just to respond to Your Honor's point about

1    the relationship of the fraud claims that we've alleged to

2    class certification issues, there's plenty of case law that

3    speaks to an inference of reliance if reliance is even to be a

4    required element where you have, as we've alleged, a

5    fraudulent scheme that's more or less uniform, we think that

6    that is -- the discovery is going to bear that out.  And if

7    that in fact proves to be the case, that is likely to be one

8    of the arguments that you'll hear when we move to certify that

9    claim, if we choose to do so.

10        THE COURT:  Okay.  And that's fair.  And again, I'm not

11   suggesting that I'm ruling, but I just gathered that it seems

12   like a case where, to the extent discovery can be bifurcated,

13   to deal with class certification first.  And it may be

14   possible that there's no way to disentangle from the merits

15   and that that's not possible.

16        So maybe instead of saying bifurcating discovery, if

17   there's some way that discovery can be phased such that some

18   of these issues can be addressed early, that would be

19   beneficial.  Again, it may be completely impossible to

20   disentangle, and I'll let you all discuss that.  I certainly

21   don't want to have overlapping and confusing phases of

22   discovery where parties don't know what box that they're in.

23        And then similarly, Mr. Woodward, just because I noted this

24   in the briefing that there was some question about whether or

25   not this is the proper defendant, obviously, that's a question

1   as well that we would want to resolve early.  And so I don't

2   know if you've had any conversations with defense counsel

3   about that issue, but I guess you can conduct discovery and

4   then we can set a deadline for amending pleadings at the

5   appropriate time.

6       Okay.  So -- and then who's speaking for the defense?

7           MR. FLOOD:  I am, Your Honor.  Mr. Flood.

8           THE COURT:  Okay.  Mr. Flood, so that's my ruling,

9   again, without prejudice, for any further motions that you may

10  file, I just think it's premature at this stage given the

11  allegations in the complaint.  Do you have a sense of how much

12  time it will take for the 26(f) report to be filed in the

13  conference?  How much time do you need?  And I'll ask

14  Mr. Flood the same thing.

15          MR. FLOOD:  I don't have a clear sense, Your Honor.

16  Next week is challenging --

17          THE COURT:  Yes.

18          MR. FLOOD:  -- to confer.  And then December, of course,

19  is holiday month, but I should think sometime in December even

20  if it's closer to the holidays at the end, and I would propose

21  talking to Mr. Woodward and Mr. Franzini and then figuring out

22  what we can do.  But I would think, with allowance for the

23  holidays, several weeks ought to be enough time.

24          MR. WOODWARD:  We agree.  I think that's right.

25          THE COURT:  Mr. Flood, do you have a proposed date,

1    or do you want to confer and submit a proposal to me?

2          MR. WOODWARD:  I think it makes sense, Your Honor,

3    for us to confer and submit a proposal.  I'm not sure what

4    Mr. Flood feels about that.  If it's easier to propose dates,

5    just looking at my calendar, I could pick -- just the broad

6    parameters what you laid out, I think maybe it would be most

7    productive for us to confer and then come back to you with

8    what works for both sides.

9          THE COURT:  Okay.  Why don't we do this:  Why don't you

10    all confer, and if you send a joint email to chambers letting

11    us know the time frame that you want to have the scheduling

12    conference in and the time frame or date that you've agreed to

13    submit the discovery planning report, the Rule 26(f) report,

14    then we'll just issue a minute order memorializing those

15    dates.

16          MR. WOODWARD:  That sounds good, Your Honor.  Thank you.

17          THE COURT:  All right.  Is there anything else we

18    should address today before concluding the hearing, and then

19    I'll receive your information and set the minute order for the

20    scheduling conference?

21          MR. FLOOD:  Your Honor, I would like to mention just

22    one thing by way of what might informally be thought of as a

23    possible heads-up.

24          THE COURT:  Okay.

25          MR. FLOOD:  We'll want to confer, our legal team, with

1    our client about Your Honor's ruling.

2              THE COURT:  Okay.

3              MR. FLOOD:  But as Your Honor pointed out at the

4    beginning, the ecclesiastical abstention doctrine partakes

5    of something jurisdictional, and so I think we have a live

6    continuing question now of whether there is subject matter

7    jurisdiction.

8              THE COURT:  Okay.

9              MR. FLOOD:  We are at least going to give consideration

10   of whether that calls for an immediate appeal of one kind or

11   another.

12             THE COURT:  Sure.

13             MR. FLOOD:  And related to that is the consideration

14   of conducting discovery, you know, when that question is

15   pending is also something covered or not by the same doctrine.

16             THE COURT:  Sure.

17             MR. FLOOD:  It doesn't mean of course we won't be

18   meeting with Mr. Woodward per your directions we of course

19   will but I just thought I'd signal that for you Your Honor and

20   let's see how our conversations go and we may be back with you

21   with something in the manner of a motion there.

22             THE COURT:  Sure.  I appreciate that.  Thank you for

23   letting me know.

24             MR. FLOOD:  Thank you, Your Honor.

25             THE COURT:  Okay.  If that's it, I will look forward to

1   hearing from you, and I will issue a minute order.  If you

2   do file such a motion, I'll be on the lookout for it, and I

3   promise I will resolve it promptly.

4       MR. FLOOD:  Thank you.  Actually, Your Honor, I do have

5   one other question just obviously without purporting to do

6   what I cannot do, namely, fix for you or have you tell us with

7   any determination you may not have made, but does Your Honor

8   intend to reduce your oral ruling today for an order for the

9   docket?  And the reason I ask of course is if we did think an

10  appeal was necessary, I think the law is we've gotta have

11  something on the docket to start the timeline.  So that's just

12  an open question, not necessarily looking for an answer today,

13  just an expectation question.

14      THE COURT:  Sure.  I was just going to put an order

15  that says for the reasons stated orally on the record that the

16  motions are denied.  My understanding was that was sufficient

17  in terms of...

18      MR. FLOOD:  And I'm not quarreling with Your Honor at

19  all, so much as I think there are some technical features of

20  the D.C. Circuit regime not shared with others that can affect

21  the running of the time.  I don't think it affects our ability

22  actually to file something.

23      THE COURT:  Right.

24      MR. FLOOD:  That was the nature of my inquiry.  And I

25  suppose if we have a transcript from the court reporter, that

1   will go a long way toward.

2        THE COURT:  But to your question, yes.  I'm going to

3   put an order on the docket that formally denies the motion,

4   but it will just simply say for the reasons stated orally on

5   the record.

6        MR. FLOOD:  I think that answers my question.

7   Thank you, Your Honor.

8        THE COURT:  Okay.  Thank you so much.  Have a good one.

9        (Proceedings adjourned at 2:56 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne

**U.S. Const. amend. I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

\*    \*    \*

**28 U.S.C. § 1291**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

(June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, § 48, 65 Stat. 726; Pub. L. 85–508, § 12(e), July 7, 1958, 72 Stat. 348; Pub. L. 97–164, title I, § 124, Apr. 2, 1982, 96 Stat. 36.)

\*    \*    \*

**Fed. R. Civ. P. 12**

Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing
1.    (a) TIME TO SERVE A RESPONSIVE PLEADING.

  (1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

    (A) A defendant must serve an answer:

      (i) within 21 days after being served with the summons and complaint; or

      (ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

(C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

(2) *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

(3) *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

(4) *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

(A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

(B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) MOTION FOR JUDGMENT ON THE PLEADINGS. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

(d) RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(e) MOTION FOR A MORE DEFINITE STATEMENT. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f) MOTION TO STRIKE. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g) JOINING MOTIONS.

(1) *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

(2) *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h) WAIVING AND PRESERVING CERTAIN DEFENSES.

(1) *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)–(5) by:

(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or

(B) failing to either:

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

(A) in any pleading allowed or ordered under Rule 7(a);

(B) by a motion under Rule 12(c); or

(C) at trial.

(3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

(i) HEARING BEFORE TRIAL. If a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

## I.  NOTES

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)