# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-7173

DAVID O'CONNELL,

*Plaintiff - Appellee,*

*v.*

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,

*Defendant - Appellant.*

*On Appeal from the United States District Court for the District of Columbia*
*1:20-cv-01365-JMC · Honorable Jia M. Cobb*

## BRIEF *AMICUS CURIAE* OF FEDERAL COURTS PROFESSOR
## DEREK T. MULLER IN SUPPORT OF DEFENDANT-APPELLANT

Daniel F. Mummolo
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
danielmummolo@quinnemanuel.com

Christopher G. Michel
Rachel G. Frank
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
christophermichel@quinnemanuel.com
rachelfrank@quinnemanuel.com

*Counsel for Amicus Curiae*

SEPTEMBER 13, 2024



# CERTIFICATE OF COUNSEL

### A.      Parties and *Amici Curiae*

To counsel's knowledge, except for the *amicus curiae* identified below, all parties and intervenors appearing before this Court are listed in the Certificate as to Parties, Rulings, and Related Cases filed by the United States Conference of Catholic Bishops as Appellant on September 6, 2024.  The *amicus curiae* represented in this brief is Professor Derek T. Muller.

### B.      Ruling Under Review

References to the rulings at issue appear in the Certificate as to Parties, Rulings, and Related Cases filed by the United States Conference of Catholic Bishops as Appellant on September 6, 2024.

### C.      Related Cases

Related cases appear in the Certificate as to Parties, Rulings, and Related Cases filed by the United States Conference of Catholic Bishops as Appellant on September 6, 2024.

### D.      Consent from all Parties

In accordance with Federal Rule of Appellate Procedure 29(a)(2) and D.C. Circuit Rule 29(b), undersigned counsel for the *amicus curiae* certifies to this Court that counsel for all parties have consented to the filing of this brief.

**E.      Statement Regarding Separate Briefing**

Under D.C. Circuit Rule 29(d), *amicus* Professor Derek T. Muller certifies that a separate brief is necessary.  As a scholar of federal courts and civil procedure, *amicus* presents a distinctive theory of the jurisdictional question in this case that he respectfully submits will aid the Court's consideration.

**F.      Rule 29(a)(4)(E) Statement**

Under Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus* states that no counsel for a party authored this brief in whole or in part.  No party, counsel for a party, or any person other than *amicus* and his counsel made a monetary contribution to fund the brief's preparation or submission.


Dated: September 13, 2024                            /s/ *Christopher G. Michel*
                                                                 Christopher G. Michel
                                                                 *Counsel for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICUS CURIAE ....................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2

ARGUMENT ....................................................................................................4

    I.      SECTION 1291 ALLOWS IMMEDIATE APPEAL OF A PRETRIAL ORDER REJECTING A CHURCH-AUTONOMY DEFENSE ........................................................................................4

          A.    Section 1291 Allows Immediate Appeal Of A Limited Category Of "Final Decisions" That Precede Final Judgment ...............................................................................5

          B.    A Pretrial Decision Rejecting A Constitutionally Rooted Defense Against The Burdens Of Litigation Is Immediately Appealable Under Section 1291 ...........................9

          C.    The Church-Autonomy Doctrine Is A Constitutionally Rooted Defense Against The Burdens Of Litigation ...............18

    II.    SECTION 1291 ALLOWS IMMEDIATE APPEAL OF THE DISTRICT COURT'S ORDER IN THIS CASE ..............................21

CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abney v. United States*,
431 U.S. 651 (1977)..................................................................4, 13, 16

*American Great Lakes Ports Ass'n v. Schultz*,
962 F.3d 510 (D.C. Cir. 2020) ...............................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................10

*Axon Enterprises, Inc. v. FTC*,
598 U.S. 175 (2023).............................................................................17

*Belya v. Kapral*,
45 F.4th 621 (2d Cir. 2022)............................................................23, 24

*Belya v. Kapral*,
59 F.4th 570 (2d Cir. 2023).................................................................24

*Billard v. Charlotte Cath. High Sch.*,
101 F.4th 316 (4th Cir. 2024)..............................................................20

*Blassingame v. Trump*,
87 F.4th 1 (D.C. Cir. 2023) ..............................................................4, 14

*Bronson v. La Crosse & M.R. Co.*,
67 U.S. (2 Black) 524 (1862) .................................................................7

*Brush Elec. Co. v. Elec. Imp. Co. of San Jose*,
51 F. 557 (9th Cir. 1892)........................................................................8

*Cassatt v. Mitchell Coal & Coke Co.*,
150 F. 32 (3d Cir. 1907).........................................................................8

*Cobbledick v. United States*,
309 U.S. 323 (1940)........................................................................5, 6, 7

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)............................................................................8, 9

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) .................................................................3

*De Csepel v. Republic of Hungary*,
  859 F.3d 1094 (D.C. Cir. 2017) ...........................................14

*Digit. Equip. Corp. v. Desktop Direct, Inc.*,
  511 U.S. 863 (1994)........................... 6, 14, 15, 16, 20, 22

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ..............................................................25

*Dooley v. Korean Air Lines Co.*,
  524 U.S. 116 (1998) ..............................................................25

*Duquesne Univ. of the Holy Spirit v. NLRB*,
  947 F.3d 824 (D.C. Cir. 2020) .......................................3, 19, 20

*EEOC v. Cath. Univ. of America*,
  83 F.3d 455 (D.C. Cir. 1996) ...............................................19

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981)..................................................................9

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990) ........................................14, 17

*Forgay v. Conrad*,
  47 U.S. (6. How.) 201 (1848).................................................7

*Garrick v. Moody Bible Inst.*,
  95 F.4th 1104 (7th Cir. 2024)........................................1, 2, 23

*Helstoski v. Meanor*,
  442 U.S. 500 (1979)..........................................................14, 16

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
  565 U.S. 171 (2012)..........................................................18, 19

*Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in
  N. America*,
  344 U.S. 94 (1952)............................................................18, 20

v

*In re Korean Airlines Disaster*,
117 F.3d 1477 (D.C. Cir. 1997) ...............................................................25

*Lauro Lines v. Chasser*,
490 U.S. 495 (1989)..................................................................... 12, 16

*Limnia, Inc. v. Dep't of Energy*,
857 F.3d 379 (D.C. Cir. 2017) .....................................................................9

*McCarthy v. Fuller*,
714 F.3d 971 (7th Cir. 2013).....................................................................20

*McLish v. Roff*,
141 U.S. 661 (1891).....................................................................................6

*McSurely v. McClellan*,
697 F.2d 309 (D.C. Cir. 1982) .................................................................14

*Mitchell v. Forsyth*,
472 U.S. 511 (1985)....................................4, 12, 13, 14, 16, 18, 22

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009)................................................ 2, 10, 15, 16, 20

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982).......................................................................4, 14, 16

*NLRB v. Cath. Bishop of Chi.*,
440 U.S. 490 (1979)...............................................................................19, 22

*Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*,
896 F.3d 520 (D.C. Cir. 2018) ...........................................................2, 10

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
591 U.S. 732 (2020).......................................................................3, 18, 20

*Parker v. District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007) ................................................................25

*Perlman v. United States*,
247 U.S. 7 (1918)........................................................................................8

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*,
    962 F.3d 576 (D.C. Cir. 2020) ...............................................................22

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)................................................... 4, 13, 16, 21

*In re Reporters Comm. for Freedom of the Press*,
    773 F.2d 1325 (D.C. Cir. 1985) ...........................................................17

*Sell v. United States*,
    539 U.S. 166 (2003)...............................................................................11

*Serbian E. Orthodox Diocese for U.S. & Can. v. Milivojevich*,
    426 U.S. 696 (1976)........................................................................18, 22

*Shoop v. Twyford*,
    596 U.S. 811 (2022)...............................................................................11

*In re Stone*,
    940 F.3d 1332 (D.C. Cir. 2019) ...........................................................22

*Synod of Bishops v. Belya*,
    143 S. Ct. 2609 (2023) .............................................................................1

*Trump v. United States*,
    144 S. Ct. 2312 (2024)....................................................................14, 16

*Tucker v. Faith Bible Chapel Int'l*,
    53 F.4th 620 (10th Cir. 2022)................................................................24

*United States v. Durenberger*,
    48 F.3d 1239 (D.C. Cir. 1995) .............................................................14

*United States v. Hollywood Motor Car Co.*,
    458 U.S. 263 (1982)........................................................................11, 12

*United States v. MacDonald*,
    435 U.S. 850 (1978)...............................................................................13

*United States v. River Rouge Improvement Co.*,
    269 U.S. 411 (1926).................................................................................8

*United States v. Rose*,
　28 F.3d 181 (D.C. Cir. 1994) ........................................................14, 17

*United States v. Trump*,
　88 F.4th 990 (D.C. Cir. 2023) ......................................................17, 22

*United States v. Trump*,
　91 F.4th 1173 (D.C. Cir. 2024) ...............................................14, 17, 24

*Univ. of Great Falls v. NLRB*,
　278 F.3d 1335 (D.C. Cir. 2002) .........................................................19

*Van Cauwenberghe v. Biard*,
　486 U.S. 517 (1988)...........................................................................12

*Vann v. Kempthorne*,
　534 F.3d 741 (D.C. Cir. 2008) ...........................................................17

*Watson v. Jones*,
　80 U.S. (13 Wall.) 679 (1872)............................................................20

*Whiting v. Bank of the United States*,
　38 U.S. (13 Pet.) 6 (1839) ....................................................................7

*Will v. Hallock*,
　546 U.S. 345 (2006)..............................................................10, 15, 20

*Williams v. Morgan*,
　111 U.S. 684 (1884).............................................................................7

## Statutes and Rules

28 U.S.C. § 1291............................2, 4-6, 9-13, 15-16, 18, 20-22, 24-25

Evarts Act of 1891,
　§ 6, 26 Stat. 826 ..................................................................................5

Judiciary Act of 1789,
　§ 22, 1 Stat. 73 ....................................................................................5

Fed. R. App. P. 29.................................................................................26

Fed. R. App. P. 32.................................................................................26

# Other Authorities

William C. Anderson, *A Dictionary of Law* (Chicago, T.H. Flood & Co. 1893)......................................................................................7

Mark E. Chopko & Marissa Parker, *Still a Threshold Question: Refining the Ministerial Exception Post*-Hosanna-Tabor, 10 First Amend. L. Rev. 233 (2012). ...................................................21

Carleton M. Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539 (1932)....................................................................6

Timothy P. Glynn, *Discontent and Indiscretion: Discretionary Review of Interlocutory Orders*, 77 Notre Dame L. Rev. 175 (2001) ...........................11

Adam Reed Moore, *A Textualist Defense of a New Collateral Order Doctrine*, 99 Notre Dame L. Rev. Reflection 1 (2023)................................7, 21

Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English Law* (Jersey City, Frederick D. Linn & Co. 1883)................................7

Adam N. Steinman, *Reinventing Appellate Jurisdiction*, 48 B.C. L. Rev. 1237 (2007) ......................................................10

Lael Weinberger, *Is Church Autonomy Jurisdictional?*, 54 Loy. U. Chi. L.J. 471 (2022) ...............................................21

**INTEREST OF AMICUS CURIAE**

Derek T. Muller is a Professor of Law at Notre Dame Law School. He has taught courses on federal courts and civil procedure, among other subjects. He is a co-author of a federal courts casebook, *Federal Courts: Cases and Materials on Judicial Federalism and the Lawyering Process* (5th ed. 2022), as well as an open-access resource on federal courts and civil procedure, *Rules and Laws for Civil Actions* (2025). He has submitted amicus briefs to the Supreme Court and federal courts of appeals on a range of subjects within his expertise. Of particular relevance here, he submitted amicus briefs in *Synod of Bishops v. Belya*, 143 S. Ct. 2609 (2023), and *Garrick v. Moody Bible Institute*, 95 F.4th 1104 (7th Cir. 2024), on whether the collateral-order doctrine permits an immediate appeal of a district court order denying the assertion of a religious-autonomy defense. Because this appeal involves that same important question, Professor Muller has an interest in this case's proper resolution. He submits this brief under Federal Rule of Appellate Procedure 29(a)(2). All parties have consented to the filing of this brief.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The threshold question in this appeal is whether the Court has jurisdiction to hear it. The answer turns on the proper construction of 28 U.S.C. § 1291, which grants this Court jurisdiction over "appeals from all final decisions of the district courts." In keeping with the provision's text and history, both the Supreme Court and this Court have long understood Section 1291 to confer appellate jurisdiction over more than just case-ending final judgments. *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009); *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 527-28 (D.C. Cir. 2018). But determining precisely which pre-judgment orders can be immediately appealed under Section 1291—often termed "collateral orders"—has at times proven difficult for appellate courts.

The Court need not explore the outer limits of the collateral-order doctrine to resolve this case. Under the Supreme Court's longstanding and widely accepted construction of Section 1291, an order denying a defendant's request to dispose of a case is immediately appealable under Section 1291 when (1) the defendant asserts a *protection against the burdens of further litigation*, as opposed to a protection against liability alone; and (2) the asserted protection is *rooted in constitutional principles*, displacing the default federal preference for "deferring appeal until litigation concludes." *Mohawk*, 558 U.S. at 107; *see Moody*, 95 F.4th at 1123-24 n.6 (7th Cir. 2024) (Brennan J., dissenting) (citing this test).

That rule resolves the jurisdictional question in this case. In response to a suit challenging the Church's solicitation and use of charitable funds, appellant United States Conference of Catholic Bishops ("Catholic Bishops") moved to dismiss based on the religious-autonomy doctrine. That doctrine provides more than just protection from liability; it compels courts "to stay out" of disputes over the governance and function of religious institutions. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020); *see Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 827-28 (D.C. Cir. 2020) ("[T]he Religion Clauses establish a 'scrupulous policy ... against political interference with religious affairs." (citation omitted)). And the doctrine is rooted in the structural limitations on government imposed by the Religion Clauses of the First Amendment, *see Our Lady of Guadalupe*, 591 U.S. at 746; *Duquesne*, 947 F.3d at 827-28, which provide a sufficient justification for departing from the default federal policy against piecemeal appeals.[1]

Under that straightforward analysis, the denial of the Catholic Bishops' church-autonomy defense was a "final decision" immediately appealable under

---

[1] The First Amendment's Religion Clauses consist of the Establishment Clause, which prevents certain forms of government involvement with religious affairs, and the Free Exercise Clause, which "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).

Section 1291, much like orders denying double-jeopardy, official-immunity, qualified-immunity, or sovereign-immunity defenses—all of which appellate courts have long reviewed under the collateral-order doctrine. *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146-47 (1993); *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985); *Nixon v. Fitzgerald*, 457 U.S. 731, 742-43 (1982); *Abney v. United States*, 431 U.S. 651, 659-60 (1977). This Court accordingly has jurisdiction to resolve the Catholic Bishops' appeal. *See, e.g.*, *Blassingame v. Trump*, 87 F.4th 1, 12 (D.C. Cir. 2023).[2]

**ARGUMENT**

**I.** **SECTION 1291 ALLOWS IMMEDIATE APPEAL OF A PRETRIAL ORDER REJECTING A CHURCH-AUTONOMY DEFENSE**

The "final decisions of the district courts" that are subject to immediate appeal under 28 U.S.C. § 1291 include a limited number of orders preceding final judgment. Courts and scholars alike have long struggled to define that category with precision. But the statutory text, purpose, and history—along with precedent from the Supreme Court and this Court—yield an administrable rule that resolves the question presented here. When a district court's order denies a pretrial motion (1) asserting a defense against the burdens of litigation itself (2) that is rooted in constitutional principles, Section 1291 allows immediate appeal. Because the church-autonomy

---

[2] Amicus addresses only the jurisdictional question and takes no position on the merits.

4

defense meets both those criteria, this Court should exercise jurisdiction over the Catholic Bishops' appeal.

### A. Section 1291 Allows Immediate Appeal Of A Limited Category Of "Final Decisions" That Precede Final Judgment

From its earliest days, Congress has provided for appeals as of right from "final" decisions of federal district courts. *See Cobbledick v. United States*, 309 U.S. 323, 326 (1940). The Judiciary Act of 1789 conferred on federal circuit courts mandatory appellate jurisdiction over certain "final judgments and decrees" of district courts. § 22, 1 Stat. 73, 84. When Congress created the federal courts of appeals in the Evarts Act of 1891, it carried forward that provision with a modest revision, providing mandatory appellate jurisdiction over the "final decision" of a district court (or a former circuit court), except where an appeal could be taken directly to the Supreme Court. § 6, 26 Stat. 826, 828. The current statute, 28 U.S.C. § 1291, provides, in substantially identical language, that courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts … except where a direct review may be had in the Supreme Court."

None of those statutes has outlined the precise contours of a "final" judgment, decree, or decision. But for as long as the statutes have been on the books, the Supreme Court has understood their references to finality to encompass not only district court rulings that formally "terminate the litigation" but also certain narrow "categories of prejudgment decisions" that must "be treated as 'final'" to vindicate

the "object of efficient administration of justice in the federal courts." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867-68, 884 (1994). As the Court put it in one leading decision, "finality—the idea underlying 'final judgments and decrees' in the Judiciary Act of 1789 and now expressed by 'final decisions' in [Section 1291]—is not a technical concept of temporal or physical termination," but rather a requirement prescribed by Congress to ensure "a healthy legal system." *Cobbledick*, 309 U.S. at 326.

The historical origins of the final-judgment rule reinforce that construction. The reference to "final judgments" in the Judiciary Act of 1789 was "declaratory of a well settled and ancient rule of English" common-law practice, under which "no writ of error could be brought except on a final judgment." *McLish v. Roff*, 141 U.S. 661, 665 (1891). The basis for that English rule was practical rather than doctrinal. At English common law, an appeal could proceed only when the record of a case was sent up from the trial court. Carleton M. Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539, 543-44 (1932). But because there was only one "formal record" of the case ("the roll"), "it could be in only one court at a time." *Id.*

The Supreme Court's early decisions accordingly treated "final" as a term of art that typically—but not always—required a formal end of the district-court litigation to establish appellate jurisdiction. The Court emphasized that it was "obviously the object of the [appellate-jurisdiction statute] to save the unnecessary

expense and delay of repeated appeals in the same suit." *Forgay v. Conrad*, 47 U.S. (6. How.) 201, 205 (1848). Still, the Court repeatedly permitted appellate review of orders that were "not final, in the strict, technical sense of that term" when doing so would be more "consonant" with "the meaning of the acts of Congress"—for example, when the decision was practically final and delaying review would inflict "irreparable injury" on the losing party. *Id.* at 203-04; *see, e.g.*, *Williams v. Morgan*, 111 U.S. 684, 699 (1884); *Bronson v. La Crosse & M.R. Co.*, 67 U.S. (2 Black) 524, 531 (1862); *Whiting v. Bank of the United States*, 38 U.S. (13 Pet.) 6, 15 (1839); *see also* Adam Reed Moore, *A Textualist Defense of a New Collateral Order Doctrine*, 99 Notre Dame L. Rev. Reflection 1, 33-37 (2023) (citing additional examples).

When Congress amended the appellate-jurisdiction statute in 1891, it replaced the phrase "final judgments and decrees" with "final decisions"—the language that remains in force today. Although the 1891 amendment did not broaden the substantive scope of appellate rights, *see, e.g., Cobbledick*, 309 U.S. at 324-25, Congress's use of the term "final decisions" aptly captured the Supreme Court's longstanding view that an appeal did not invariably require a formal final judgment or decree. *See, e.g.*, William C. Anderson, *A Dictionary of Law* 318 (Chicago, T.H. Flood & Co. 1893) (defining a "decision" as "[s]omewhat more abstract or more extensive than 'judgment' or 'decree'"); 1 Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English Law* 356 (Jersey City, Frederick D. Linn &

Co. 1883) (distinguishing a "decision" from "the paper commonly called the 'judgment' docketed with the clerk").

Courts of appeals promptly recognized that "the term 'final decision'" in the new statute "does not mean necessarily such decisions or decrees only which finally determine all the issues presented by the pleadings," but "also appl[ies] to a final determination of a collateral matter" meeting certain requirements. *Brush Elec. Co. v. Elec. Imp. Co. of San Jose*, 51 F. 557, 561 (9th Cir. 1892); *see Cassatt v. Mitchell Coal & Coke Co.*, 150 F. 32, 34 (3d Cir. 1907) (similar). And although "the general rule requires that a judgment of a federal court shall be final and complete before it may be reviewed on a writ of error or appeal," the Supreme Court continued to recognize the "well settled" principle that certain prejudgment orders "may be reviewed without awaiting the determination of the general litigation." *United States v. River Rouge Improvement Co.*, 269 U.S. 411, 414 (1926); *see, e.g.*, *Perlman v. United States*, 247 U.S. 7, 12-13 (1918).

Against that backdrop, Justice Robert Jackson delivered the canonical construction of "final decisions" in his opinion for the Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). The "effect of the" statutory appellate-jurisdiction language, the Court explained, "is to disallow appeal from any decision which is tentative, informal or incomplete," and also from "fully consummated decisions … [that] are but steps towards final judgment in which they will merge."

8

*Id.* at 546. But when a decision falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," it is a "final decision" within the meaning of Section 1291. *Id.*

Although the formulation in *Cohen*—which came to be known as the collateral-order doctrine—was new, the underlying substance was not. *See id.* (citing cases dating back to 1828). As the Supreme Court later explained, "*Cohen* did not establish new law; rather, it continued a tradition of giving § 1291 a 'practical rather than a technical construction.'" *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981) (citation omitted); *accord, e.g.*, *American Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 515 (D.C. Cir. 2020) ("The requirement of finality is to be given a practical rather than a technical construction." (quoting *Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 385 (D.C. Cir. 2017)).

**B.    A Pretrial Decision Rejecting A Constitutionally Rooted Defense Against The Burdens Of Litigation Is Immediately Appealable Under Section 1291**

In the decades since *Cohen*, the Supreme Court has "distilled" the "requirements for collateral order appeal … to three conditions: that an order '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively

unreviewable on appeal from a final judgment.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted); *see Oglala Sioux Tribe*, 896 F.3d at 528. The Court has emphasized that those "conditions are 'stringent,'" and should be "kept so" to prevent the collateral-order doctrine from "overpower[ing] the substantial finality interests § 1291 is meant to further." *Hallock*, 546 U.S. at 349-50 (citation omitted); *see Mohawk*, 558 U.S. at 106 (emphasizing that the doctrine must "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered" (citation omitted)).

Reasonable disagreement exists about how well certain post-*Cohen* decisions cohere with that principle. Critics have described the current state of the doctrine as "hopelessly complicated," "dazzling in its complexity," and "an unacceptable morass." Adam N. Steinman, *Reinventing Appellate Jurisdiction*, 48 B.C. L. Rev. 1237, 1238 (2007) (footnotes and citations omitted); *see id.* at 1238-39 (collecting additional commentary). And the Supreme Court itself has acknowledged "[a]s a general matter, the collateral-order doctrine may have expanded beyond the limits dictated by its internal logic and the strict application of the criteria set out in *Cohen*." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).

For all the debate about Section 1291's outer limits, however, the Supreme Court has generally agreed on its heartland, which is all that matters to resolve this case. This brief accordingly does not attempt to provide a comprehensive definition

of the range of "final" prejudgment decisions under Section 1291. Instead, it suffices that Supreme Court precedent has unmistakably authorized the immediate appeal of a prejudgment decision under Section 1291 when the decision rejects a defense that (1) protects the losing party *against the burdens of litigation*, not just against liability, and (2) is *rooted in the Constitution* or another important source of public policy strong enough to overcome the general federal preference for post-judgment appeals. *See* Timothy P. Glynn, *Discontent and Indiscretion: Discretionary Review of Interlocutory Orders*, 77 Notre Dame L. Rev. 175, 212 (2001) (explaining that prejudgment orders that satisfy these criteria will qualify as immediately appealable even under a "stringent" interpretation of Section 1291, but "few others will").[3]

1.      The Supreme Court has long explained that Section 1291 may permit an immediate appeal from a prejudgment decision denying a "right *not to be tried*" (or to face other burdens of litigation), but that Section 1291 does not permit an immediate appeal from a decision that rejects a right merely *to be free from liability*. *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269 (1982) (emphasis

---

[3] This approach does not address the branch of the collateral-order doctrine pertaining to decisions (like the order rejecting a requirement to post security in *Cohen*) that would not terminate the litigation. *See, e.g.*, *Shoop v. Twyford*, 596 U.S. 811, 817 n.1 (2022) (order to transport prisoner for medical testing was immediately appealable); *Sell v. United States*, 539 U.S. 166, 176-77 (2003) (forced-medication order in a criminal case was immediately appealable).

added). That is true even when the "remedy" for a violation of the liability protection is "the dismissal of charges." *Id.*; *see Mitchell*, 472 U.S. at 526 (similar).

That "crucial distinction" follows directly from *Cohen*'s reasoning. *Hollywood Motor Car*, 458 U.S. at 269. When a defendant invokes a protection against trial proceedings, a court's rejection of that protection is necessarily "conclusive" of the defense, because the defendant must stand trial. *Mitchell*, 472 U.S. at 527. For similar reasons, such a rejection is "separate from the merits" and "effectively unreviewable" on appeal, because the defendant will have irretrievably lost the protection against further litigation regardless of the ultimate result on the merits or in a subsequent appeal. *Id.* at 527-28. By contrast, when a defendant invokes only a protection against liability, a prejudgment order rejecting the defense does not fully satisfy any *Cohen* factor, because the defendant may still adequately vindicate the protection from liability later in the trial litigation or on appeal. *See, e.g.*, *Lauro Lines v. Chasser*, 490 U.S. 495, 496 (1989); *Van Cauwenberghe v. Biard*, 486 U.S. 517, 530 (1988).

Two criminal-procedure cases decided by the Supreme Court in back-to-back Terms illustrate the distinction between a right not to be tried and a mere protection against liability. In *Abney v. United States*, the Court held that the denial of a motion to dismiss a criminal prosecution on double-jeopardy grounds is appealable under Section 1291, because "the Double Jeopardy Clause protects an individual against

12

more than being subjected to double punishments"; it provides "a guarantee against being twice *put to trial* for the same offense." 431 U.S. at 660-61 (emphasis added). Because that "protection[] would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken," only immediate appeal ensures that a criminal defendant will "enjoy the full protection of the" constitutional right "not to face trial at all." *Id.* at 662 & n.7.

"In sharp distinction," the Court held a year later in *United States v. MacDonald*, 435 U.S. 850, 858 (1978), that the denial of a motion to dismiss on speedy-trial grounds is *not* appealable under Section 1291, because "[t]he essence of a defendant's" speedy-trial claim is typically "that the passage of time has frustrated his ability to *establish his innocence* of the crime charged," not that there is a right to be entirely free from trial. *Id*. at 860 (emphasis added); *see id*. at 861 ("It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.").

Given the centrality of that distinction, the paradigmatic example of a prejudgment order immediately appealable under Section 1291 is the denial of an asserted "*immunity from suit*." *Mitchell*, 472 U.S. at 526. Because such immunities by their nature protect a defendant from any further litigation proceedings, the Court has many times held that a district court's denial of those immunities qualifies for immediate appeal under Section 1291. *See Puerto Rico Aqueduct*, 506 U.S. at 144-

45 (state-sovereign immunity); *Mitchell*, 472 U.S. at 526-27 (qualified immunity); *Nixon*, 457 U.S. at 742-43 (absolute immunity); *Trump v. United States*, 144 S. Ct. 2312, 2354 (2024) (Barrett, J., concurring in part) (same); *cf. Helstoski v. Meanor*, 442 U.S. 500, 508 (1979) (protection under the Speech or Debate Clause, which shields members of Congress "not only from the consequences of litigation's results but also from the burden of defending themselves" (citation omitted)). By contrast, the Court has held that many other asserted defenses fail to qualify as a "right not to stand trial." *Digit. Equip.*, 511 U.S. at 871; *see id.* at 872-74 (collecting decisions).

The law of this Circuit closely and properly follows those principles. In two high-profile examples, the Court recently found jurisdiction to resolve interlocutory appeals in both civil and criminal cases involving assertions of presidential immunity. *See United States v. Trump*, 91 F.4th 1173, 1183-84 (D.C. Cir. 2024), *vacated on other grounds*, 144 S. Ct. at 2312; *Blassingame*, 87 F.4th at 12. The Court has long done the same in cases involving assertions of other forms of official, qualified, or foreign sovereign immunity. *See, e.g.*, *De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1109 (D.C. Cir. 2017); *United States v. Durenberger*, 48 F.3d 1239, 1242 (D.C. Cir. 1995); *United States v. Rose*, 28 F.3d 181, 185-86 (D.C. Cir. 1994); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990); *McSurely v. McClellan*, 697 F.2d 309, 315-16 (D.C. Cir. 1982).

**2.** At the same time, the Supreme Court has explained that Section 1291 demands something more than an "order[] denying an asserted right to avoid the burdens of trial" for an immediate appeal. *Hallock*, 546 U.S. at 351. In part because the notion of a "right to avoid trial" plays into "the lawyer's temptation to generalize," *id*. at 350; *see Digit. Equip.*, 511 U.S. at 873 (acknowledging that "there is no single, 'obviously correct way to characterize' an asserted right" (citation omitted)), "some further characteristic" is needed for a prejudgment order to satisfy Section 1291, *Hallock*, 546 U.S. at 351.

That further characteristic is a "justification for immediate appeal … sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk*, 558 U.S. at 107. And one sure way to demonstrate the requisite strength is to show that the asserted protection against the burdens of litigation "is embodied in a constitutional or statutory provision." *Digit. Equip.*, 511 U.S. at 879; *see id.* ("Where statutory and constitutional rights are concerned, 'irretrievable loss' can hardly be trivial, and the collateral order doctrine might therefore be understood as reflecting the familiar principle of statutory construction that, when possible, courts should construe statutes (here § 1291) to foster harmony with other statutory and constitutional law." (brackets and citation omitted)).

*Cohen* confirms that Section 1291 requires an asserted protection against the burdens of litigation to reflect "some particular value of a high order." *Hallock*, 546

U.S. at 352. "The second [*Cohen*] condition insists upon '*important* questions separate from the merits.'" *Mohawk*, 558 U.S. at 107 (citation omitted). And "the third *Cohen* question, whether a right is 'adequately vindicable' or 'effectively reviewable,' simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Digit. Equip.*, 511 U.S. at 878-79; *see Lauro Lines*, 490 U.S. at 502 (Scalia, J., concurring) ("The importance of the right asserted has always been a significant part of our collateral order doctrine.").

In keeping with that understanding, the Supreme Court's cases finding prejudgment orders appealable under Section 1291 have consistently involved the denial of defenses rooted in the Constitution, statutes, or similarly higher-order public policies. *See, e.g.*, *Trump*, 144 S. Ct. at 2354 (Barrett, J., concurring in part) ("[W]here trial itself threatens certain constitutional interests, we have treated the trial court's resolution of the issue as a 'final decision' for purposes of appellate jurisdiction." (citation omitted)); *Puerto Rico Aqueduct*, 506 U.S. at 145 (reasoning that the denial of an assertion of state-sovereign immunity is immediately appealable in part because it "involves a claim to a fundamental constitutional protection"); *Nixon*, 457 U.S. at 749 (invoking an immunity "rooted in the constitutional tradition of the separation of powers"); *Helstoski*, 442 U.S. at 508 (Speech or Debate Clause); *Abney*, 431 U.S. at 660-61 (Double Jeopardy Clause); *see also Mitchell*, 472 U.S. at

16

525-26 (relying on the importance of the qualified-immunity defense to the effective operation of government).

This Circuit's precedents similarly reflect crucial constitutional and other values under the collateral-order doctrine. *See, e.g.*, *Trump*, 91 F.4th at 1187-88 (requiring only a "colorable" immunity argument that "can be analogized to explicit constitutional immunities" to confer collateral-order jurisdiction); *Foremost-McKesson*, 905 F.2d at 443 (foreign sovereign immunity); *Vann v. Kempthorne*, 534 F.3d 741, 745 (D.C. Cir. 2008) (tribal sovereign immunity); *Rose*, 28 F.3d at 185-86 (Speech-or-Debate-Clause immunity); *United States v. Trump*, 88 F.4th 990, 1000-01 (D.C. Cir. 2023) (order restraining a party's First Amendment rights during trial was immediately appealable); *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1330-31 (D.C. Cir. 1985) (same for reporters' First Amendment right to access "unprivileged information during trial").[4]

---

[4] The Supreme Court has adopted a somewhat similar framework for determining when a litigant can bypass the typical requirement to raise challenges to administrative-agency actions before that agency. In *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), for example, the Court held that claims challenging an agency's constitutional authority to conduct a proceeding could be asserted directly in district court, rather than only at the conclusion of the agency proceedings. *See id.* at 191-95 (relying on the Court's collateral-order-doctrine precedents).

**C. The Church-Autonomy Doctrine Is A Constitutionally Rooted Defense Against The Burdens Of Litigation**

A district court's denial of a church-autonomy defense squarely implicates both of the criteria described above: (1) a church-autonomy defense is a protection against the burdens of litigation, not just against liability, and (2) that protection is constitutionally rooted. Accordingly, Section 1291 permits immediate appeals of orders that would force litigants asserting a church-autonomy defense to endure discovery and trial.

*First*, a church-autonomy defense—like immunity defenses for states or government officials—provides an "entitlement not to stand trial or face the other burdens of litigation," not a "mere defense to liability." *Mitchell*, 472 U.S. at 526. The Supreme Court has long and repeatedly recognized that, on "matters of church government as well as those of faith and doctrine," a religious organization is entitled to be "free from state interference"—not just from judicial judgments. *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. America*, 344 U.S. 94, 116 (1952). Courts are accordingly "bound to stay out of" litigation over a religious entity's "internal management decisions." *Our Lady of Guadalupe*, 591 U.S. at 746-47; *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 196 (2012) (explaining that the church-autonomy doctrine and its concomitant ministerial exception "bars such a suit"); *Serbian E. Orthodox Diocese for U.S. & Can. v. Milivojevich*, 426 U.S. 696, 708-09, 723 (1976) (holding that civil courts

18

may not "engage[] in a searching and therefore impermissible inquiry into church polity"). Indeed, the "very process of inquiry" into such internal religious matters "impinge[s] on rights guaranteed by the Religion Clauses." *NLRB v. Cath. Bishop of Chi.*, 440 U.S. 490, 502 (1979); *see Hosanna-Tabor*, 565 U.S. at 205-06 (Alito, J., concurring) (explaining that the "mere adjudication of such" claims "pose[s] grave problems for religious autonomy").

This Circuit's precedents strongly reinforce that understanding. The Court in *Duquesne* held that the First Amendment's Religion Clauses, from which the church-autonomy defense derives, "limits governmental involvement in the affairs of religious groups" and "establish[es] a 'scrupulous policy … against a political interference with religious affairs.'" 947 F.3d at 827-28 (citing *Hosanna-Tabor*, 565 U.S. at 184). And in *EEOC v. Catholic University of America*, 83 F.3d 455 (D.C. Cir. 1996), the Court—in affirming a district court's dismissal of a Title VII claim against a Catholic college—explained that church-autonomy principles "exempt[]" religious institutions from much of Title VII and "preclude[] civil courts from adjudicating" disputes over church personnel and governance. *Id.* at 461; *see also Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1341-42 (D.C. Cir. 2002) ("[C]ourts should refrain from trolling though a person's or institution's religious beliefs." (citation omitted)).

*Second*, a church-autonomy defense reflects the kind of "value of a high order" required to overcome the default policy against appeals before final judgment. *Hallock*, 546 U.S. at 352; *see Mohawk*, 558 U.S. at 107. By its terms, the doctrine embodies a protection against litigation that "originat[es] in the Constitution." *Digit. Equip.*, 511 U.S. at 879. Specifically, the doctrine flows from the Religion Clauses, *Duquesne*, 947 F.3d at 827-28; *see Our Lady of Guadalupe*, 591 U.S. at 746-47; *Kedroff*, 344 U.S. at 116, which provide a "structural" constitutional protection that prohibits the government from "involving itself in ecclesiastical matters," *Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 326 (4th Cir. 2024); *see, e.g., Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727-28 (1872) (grounding church-autonomy principles in the "broad and sound view of the relations of church and state under our system of laws" that "lies at the foundation of our political principles"). As the Seventh Circuit put it, the doctrine upholds both "the injunction in *Matthew* 22:21 to 'render unto Caesar the things which are Caesar's, and unto God the things that are God's,'" and "also the First Amendment, which forbids the government to make religious judgments." *McCarthy v. Fuller*, 714 F.3d 971, 976 (7th Cir. 2013).

Accordingly, a defendant can immediately appeal the denial of a church-autonomy defense under Section 1291 for the same reasons that defendants can immediately appeal denials of defenses under the Double Jeopardy Clause, the Speech or Debate Clause, principles of state-sovereign immunity, and the qualified-

and absolute-immunity doctrines. *See, e.g.*, Lael Weinberger, *Is Church Autonomy Jurisdictional?*, 54 Loy. U. Chi. L.J. 471, 503-05 (2022); Moore, *supra* at 44-46; Mark E. Chopko & Marissa Parker, *Still a Threshold Question: Refining the Ministerial Exception Post*-Hosanna-Tabor, 10 First Amend. L. Rev. 233, 294 (2012). If anything, the appealability of denials of church-autonomy defenses follows *a fortiori* from the appealability of qualified-immunity defenses, because the church-autonomy doctrine rests on an express and "fundamental constitutional protection." *Puerto Rico Aqueduct*, 506 U.S. at 145.

## II. SECTION 1291 ALLOWS IMMEDIATE APPEAL OF THE DISTRICT COURT'S ORDER IN THIS CASE

Applying the framework outlined above, the district court's denial of the Catholic Bishops' motion to dismiss is immediately appealable to this Court under Section 1291. In his class action complaint for fraud, unjust enrichment, and breach of fiduciary duty, appellee David O'Connell—a parishioner at a Catholic parish in Rhode Island—alleged that the Holy See in Rome invested his contribution to the "Peter's Pence" annual church collection without telling him. J.A. 12 ¶¶ 3-4. The Catholic Bishops moved to dismiss based on, among other things, O'Connell's attempt "to involve a civil court in the oversight of a hierarchical church's governance and administration." Docket No. 22-1 at 8. Invoking the religious-autonomy defense, the Catholic Bishops argued that the district court could not "define the duties owed by the Church to its members," regulate communications

21

about church affairs, or "oversee how the Church spends its funds to pursue its religious mission." *Id.* at 9. That kind of intrusion into internal church policy, the Catholic Bishops asserted, would violate first principles "of religious freedom and church sovereignty … firmly established by the Supreme Court." *Id.* at 8.

The district court's denial of that motion fits comfortably within the category of orders immediately appealable under Section 1291. As explained above, the church-autonomy doctrine protects against the "very process of inquiry" into a religious actor's decision—not simply against the entry of an adverse judgment. *Cath. Bishop*, 440 U.S. at 502; *see also Milivojevich*, 426 U.S. at 723 (forbidding civil courts from "engaging in a searching and therefore impermissible inquiry into church polity"). If the Catholic Bishops correctly invoked the doctrine, the district court's decision will deprive them of the right "not to stand trial or face the other burdens of litigation." *Mitchell*, 472 U.S. at 526; *see Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 580-81 (D.C. Cir. 2020). And because that right is deeply rooted in the Constitution, it overcomes the default policy against serial appeals. *See Digit. Equip.*, 511 U.S. at 879; *see also Trump*, 88 F.4th at 1000-01 (order interfering with First Amendment rights immediately appealable); *In re Stone*, 940 F.3d 1332, 1340 (D.C. Cir. 2019) (similar). That result is well supported by this Court's precedents, which—as described above—have long consistently read Section 1291 to authorize interlocutory review of an order denying a defendant's

22

assertion of immunities that are substantively comparable to the religious-autonomy defense. *See* pp. 14, 17, *supra*.

Regrettably, other courts of appeals have sharply split on this question. For example, in *Garrick v. Moody Bible Institute*, the Seventh Circuit declined to hear an appeal of a district court's denial of a motion to dismiss asserting a church-autonomy defense. 95 F.4th at 1106. The majority did not announce a categorical rule, instead dismissing the appeal for lack of jurisdiction because the particular facts of the case—an employment dispute—did not in its view present "any usurpation … of church autonomy." *Id.* at 1106, 1114. The threshold problem with that reasoning, however, is that it conflates jurisdiction with the merits. Judge Brennan accordingly dissented from the majority's jurisdictional holding, explaining that "the collateral order doctrine categorically applies to cases involving church autonomy," given that the doctrine provides defendants with a constitutionally rooted right not to stand trial and is "similar to other immunity doctrines on which collateral orders may warrant immediate appeal." *Id.* at 1118, 1123 (Brennan, J., dissenting); *see id.* at 1123 n.6 (relying on a similar brief submitted by this amicus).

In another closely divided decision stemming from an employment dispute, the Second Circuit dismissed an appeal for lack of jurisdiction where a district court denied a motion to dismiss that raised a church-autonomy defense. *Belya v. Kapral*, 45 F.4th 621, 625 (2d Cir. 2022). Like the Seventh Circuit in *Moody*, the Second

Circuit did not announce a categorical rule barring jurisdiction over such appeals, but instead highlighted "crucial" and "secular fact questions" that it concluded rendered the district court's order unreviewable under Section 1291—an implicit resolution on the merits framed as a jurisdictional holding. *Id.* at 634; *see id.* at 632, 634 (determining that the plaintiff's claims did not "interfere with … church discipline and autonomy" and "c[ould] be litigated with neutral principles of law"). Dissenting from the court's subsequent denial of rehearing en banc on behalf of five judges, Judge Park explained that "[r]ejections of church autonomy defenses should be immediately appealable, in the same way that denials of qualified immunity are appealable." *Belya v. Kapral*, 59 F.4th 570, 577 (2d Cir. 2023); *see id.* at 577-78 ("The panel misapplied each prong of the collateral order doctrine" in dismissing the appeal, because "[t]he denial of a church-autonomy defense is conclusive, separate from the merits, and effectively unreviewable on appeal after final judgment."); *see also Tucker v. Faith Bible Chapel Int'l*, 53 F.4th 620, 625-27 (10th Cir. 2022) (Bacharach, J., dissenting from denial of rehearing en banc) (similar).

This Court can exercise jurisdiction over this appeal without creating a conflict with any other circuit's decisions, each of which turned on particular factors not present here. But if the Court determines that it cannot adequately distinguish those cases, it should reject their position as inconsistent with a proper construction of Section 1291 and this Court's precedent. *See, e.g.*, *Trump*, 91 F.4th at 1188, 1208

24

(exercising collateral-order jurisdiction over an immunity claim before rejecting it on the merits).  This Court has never shied away from creating a circuit split where legally warranted, and that principled approach has been vindicated on multiple occasions.  *See, e.g.*, *Parker v. District of Columbia*, 478 F.3d 370, 373 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008); *In re Korean Airlines Disaster*, 117 F.3d 1477 (D.C. Cir. 1997), *aff'd sub nom. Dooley v. Korean Air Lines Co.*, 524 U.S. 116 (1998).  If necessary, the Court should depart from the mistaken view of its sister circuits on this issue as well by exercising jurisdiction over this appeal.

## CONCLUSION

For the foregoing reasons, this Court has jurisdiction under Section 1291 to resolve the Catholic Bishops' appeal.

September 13, 2024                    Respectfully submitted,

|  |  |
|---|---|
|  | /s/ *Christopher G. Michel* |
| Daniel F. Mummolo | Christopher G. Michel |
| QUINN EMANUEL URQUHART | Rachel G. Frank |
|   & SULLIVAN, LLP | QUINN EMANUEL URQUHART |
| 51 Madison Avenue, 22nd Floor |    & SULLIVAN, LLP |
| New York, NY 10010 | 1300 I Street, NW, Suite 900 |
| (212) 849-7000 | Washington, DC 20005 |
| danielmummolo@quinnemanuel.com | (202) 538-8000 |
|  | christophermichel@quinnemanuel.com |
|  | rachelfrank@quinnemanuel.com |

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirement of Rule 32(a)(6) because it is written in 14- point Times New Roman font, a proportionately spaced typeface.

I further certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure Rule 29(a)(5) (referencing Federal Rule of Appellate Procedure Rule 32(a)(7)(B)) because it contains 5,908 words, excluding the parts exempted from length limits by Federal Rule of Appellate Procedure 32(f).

/s/ *Christopher G. Michel*
Christopher G. Michel
*Counsel for Amicus Curiae*

# CERTIFICATE OF SERVICE

I certify that, on September 13, 2024, I electronically filed the foregoing brief with the Clerk of the Court by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Christopher G. Michel*
Christopher G. Michel
*Counsel for Amicus Curiae*