**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-7173

DAVID O'CONNELL,

*Plaintiff-Appellee,*

*v.*

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of
Columbia in No. 1:20-cv-01365-JMC, Jia M. Cobb, U.S. District Judge*

## ADDENDUM TO BRIEF FOR PLAINTIFF-APPELLEE

MARTIN WOODWARD
KITNER WOODWARD PLLC
13101 Preston Road, Suite 110
Dallas, Texas 75240
(214) 443-4304
martin@kitnerwoodward.com

SIMON C. FRANZINI
GABRIEL Z. DOBLE
DOVEL AND LUNER
201 Santa Monica Boulevard, Suite 600
Santa Monica, California 90401
(310) 656-7066
simon@dovel.com
gabe@dovel.com

*Counsel for Plaintiff-Appellee*

November 6, 2024



# TABLE OF CONTENTS

**Page**

Transcript of Oral Argument in en banc rehearing of *Huntsman v. Corp. of President of Church of Jesus Christ of Latter-day Saints*, 76 F.4th 962 (9th Cir. 2023), dated September 25, 2024 ........................................ ADD1

Page 1

```
 1        UNITED STATES COURT OF APPEALS
              FOR THE NINTH CIRCUIT
 2
      JAMES HUNTSMAN,              )
 3                                 )
          Plaintiff-Appellant,     )
 4                                 )
      vs.                          )
 5                                 )  No. 21-56056
      CORPORATION OF THE           )
 6    PRESIDENT OF THE CHURCH      )
      OF JESUS CHRIST OF           )  D.C. No.
 7    LATTER-DAY SAINTS,           )  2:21-cv02504-
                                   )  SVW-SK
 8         Defendant-Appellee.     )
                                   )
 9    and                          )
                                   )
10    DOES, 1-10,                  )
                                   )
11         Defendant.             )
12
           NINTH CIRCUIT EN BANC ARGUMENT
13              SEPTEMBER 25, 2024
14                    - - -
15         Transcript of recorded media
16    transcribed by Carrie A. Campbell, Registered
17    Diplomate Reporter, Certified Realtime
18    Reporter, Illinois, California & Texas
19    Certified Shorthand Reporter, Louisiana, New
20    Jersey, Missouri & Kansas Certified Court
21    Reporter.
22                    - - -
           GOLKOW LITIGATION SERVICES
23             deps@golkow.com
24
25
```

ADD1

```
                                              Page 2

 1        S P E A K E R   A P P E A R A N C E S:

 2

 3        LAVELY AND SINGER PC
          BY:   DAVID B. JONELIS
 4             djonelis@lavelysinger.com
          2049 Century Park East, Suite 2400
 5        Los Angeles, California  90067-2906
          (310) 556-3501
 6        Counsel for Plaintiff-Appellant

 7

 8        CLEMENT & MURPHY PLLC
          BY:   PAUL D. CLEMENT
 9             paul.clement@clementmurphy.com
          706 Duke Street
10        Alexandria, Virginia  22314
          (202) 742-8900
11        Counsel for Defendant-Appellee

12                             - - -

13

14

15

16

17

18

19

20

21

22

23

24

25
```

ADD2

Page 3

1           CLERK:  The United States Board
2      of Appeals for the Ninth Circuit is
3      now in session.
4           JUDGE MURGUIA:  Thank you.  You
5      may be seated.
6           Good afternoon and welcome to
7      all of you.  Welcome to the James
8      Browning Courthouse here in San
9      Francisco.  We're all happy to be
10     here.
11          This is the time set for the
12     case of James Huntsman versus the
13     Corporation of the President of the
14     Church of Jesus Christ of Latter-Day
15     Saints.
16          If the lawyers are ready to
17     proceed, you may come forward.
18          MR. JONELIS:  Good afternoon,
19     and may it please the Court, your
20     Honors.  My name is David Jonelis, and
21     I represent Appellant James Huntsman.
22          Before I begin, may I reserve
23     five minutes for rebuttal?  Thank you.
24          I'd like to start, your Honors,
25     with a quote from a song that I'm sure

ADD3

Page 4

```
 1      you all know.  When I find myself in
 2      times of trouble, Mother Mary comes to
 3      me, speaking words of wisdom, let it
 4      be.
 5            In most contexts, the name
 6      Mother Mary has religious
 7      connotations, but here it's just Sir
 8      Paul McCartney singing about his
 9      mother Mary McCartney.  It's secular.
10            And the same is true of the
11      word "tithing," your Honors.  In many
12      cases, that word would invoke
13      religion, but here in this narrow
14      case, the implications are no more
15      religious than the song Let It Be --
16            JUDGE SMITH:  Counsel, how can
17      you say that?  I understand the
18      importance of avoiding constitutional
19      questions where we don't need to do
20      that.
21            But, for example, the Supreme
22      Court in Presbyterian Church versus
23      Mary Elizabeth Blue Hull, that dealt
24      with a trespass claim, Our Lady of
25      Guadalupe, which dealt with an
```

ADD4

Page 5

1        employment claim, and Kedroff versus
2        St. Nicholas Cathedral of Ross Church
3        dealt with an incorrect incorporation
4        of secular legal principles to church
5        government.
6              Why in this case, where we're
7        dealing with tithing, which I think
8        you would agree, is a very common
9        principle among many, many religions?
10       You've seen some of the arguments from
11       opposing counsel, actually more really
12       amicus counsel, talking about the many
13       differences that there are among
14       religions about the meaning of
15       tithing.
16             But to my understanding,
17       tithing, unlike your Mother Mary
18       example, is a quintessential religious
19       issue.  In fact, I don't know of any
20       use of the term "tithing" that is not
21       religious in context.
22             What am I missing?
23             MR. JONELIS:  Your Honor,
24       you've cited three cases in which the
25       Court's decision -- I'm sorry, the

ADD5

Page 6

```
 1        church's decision-making functions
 2        were at issue.
 3              For example, in our Lady of
 4        Guadalupe School, as your Honor noted,
 5        that had to do with a decision to hire
 6        or fire.  It was employment, which is
 7        why the ministerial exception applies.
 8              What we have here is more
 9        similar, your Honor, to US v.
10        Rasheed, wherein in this circuit found
11        that even where -- and there it wasn't
12        called tithing, but it was still a
13        donation made to the religious
14        organization under a supposed
15        commandment of God, and the
16        organization in that particular
17        instance had not disclosed how the
18        money was being used truthfully.  And
19        this circuit found that that -- it
20        doesn't matter that the concept of
21        donation may be cloaked in religion,
22        that's not a way to get away from
23        fraud.
24              And, your Honor, this is a
25        fraud case, a simple fraud case, for
```

ADD6

Page 7

```
1       which the First Amendment provides no
2       sanctuary.  And frankly, that's why
3       every single judge that's looked at
4       this case so far has reached the same
5       conclusion with respect to the First
6       Amendment, even where they may have
7       staunchly disagreed on other issues.
8               And to this point, your Honors,
9       I would like to spend my limited time
10      here today addressing three points.
11              First, the secular nature of
12      this dispute.
13              Second, inferences that must be
14      drawn in Mr. Huntsman's favor.
15              And third, the slippery slope.
16              And I also understand that the
17      panel has requested that we be
18      prepared to discuss domicile, and
19      should the panel have questions, I'm
20      happy to address.
21              JUDGE SMITH:  You may be going
22      to address this, but I hope you will.
23      Your claim sounds under California and
24      tort law for fraud, and one of the
25      elements of that, of course you know,
```

ADD7

Page 8

```
 1          is justifiable reliance.

 2                  I would be interested to know,

 3          wouldn't you be asking a jury to

 4          determine whether Mr. Huntsman's

 5          reliance was justifiable, and in order

 6          to do that, wouldn't you have to

 7          understand what a reasonable church

 8          member would know, which would get you

 9          into the religious context?

10                  Would you -- at some point,

11          will you answer that question, please?

12                  MR. JONELIS:  I am happy, Judge

13          Smith, to answer that question now.

14                  With respect to the issue of

15          reliance -- and again, this gets me to

16          preview my second issue of inferences.

17          We have Mr. Huntsman's sworn testimony

18          on pages 44 to 45 of the record

19          unequivocally that he relied on the

20          Church's statement that the money from

21          City Creek was coming from somewhere

22          other than tithing.  In fact, the

23          Church on one instance at least went

24          so far as to say not one penny of

25          tithing was used.  And Mr. Huntsman
```

ADD8

Page 9

1      has stated unequivocally that that
2      mattered to him.  It was material.
3      And that that impacted his decision to
4      donate tithing.
5              JUDGE BRESS:  It still has to
6      be reasonable reliance, right?  That's
7      the test under state law.  So he may
8      subjectively believe that, but we
9      would then have to ask or a jury would
10     have to ask is that reasonable.
11             MR. JONELIS:  That's correct,
12     your Honor.
13             JUDGE BRESS:  Again, at that
14     point -- sorry to cut you off, but the
15     question would be, how is that not
16     essentially weighing his belief that
17     he gave tithed monies as a condition
18     for something and the Church's view
19     that tithed money is a required
20     commandment.
21             MR. JONELIS:  Because, your
22     Honor, in the context of the reliance
23     here, Judge Bress, it's a secular
24     issue.  It's one of accounting.  And
25     that's the fundamental way we would

Page 10

```
 1          submit that this case has been
 2          misframed by the Church, respectfully.
 3               Yes, tithing is a religious
 4          doctrine, a commandment from God, as
 5          the Church would have it be known.
 6          However, to address tithing in the
 7          context of this case, with the facts
 8          at far, we don't need to look at any
 9          commandment.  We need to look at the
10          Church's own secular definition of
11          tithing, which at the record at 682 --
12               JUDGE BRESS:  And just to pause
13          you.  I don't -- how can a church have
14          a secular definition of a religious
15          obligation?  I don't understand how
16          that could be.
17               MR. JONELIS:  Because it's not
18          about the reasons for giving tithing
19          in general.  It's the reasons for
20          giving the tithing in this particular
21          instance.
22               Again, it's a very --
23               JUDGE NGUYEN:  Counsel, let me
24          follow-up on that because I'm
25          certainly struggling to understand how
```

Page 11

```
 1          this case would be tried without

 2          really delving into not only the

 3          Church's view of what its doctrines

 4          dictate, but Mr. Huntsman's own

 5          understanding of tithing and how

 6          tithing donations would be utilized.

 7               I thought that he had testified

 8          at numerous points in his declaration

 9          talking about how when he gave the

10          tithing money, there were no

11          conditions put on it.  And the reason

12          was that as a long-time church member,

13          he had a very firm understanding of

14          what tithing really meant.  And all of

15          that understanding really stemmed from

16          church doctrine or his understanding

17          of church doctrine.

18               So I take it that your argument

19          really tries to narrow the trial on

20          the few statements that were at issue

21          in this case, but if this case were to

22          go to trial, wouldn't the Church be

23          entitled to pull the lens back and

24          talk about tithing, the purposes of

25          tithing in general.  They would be
```

ADD11

Page 12

```
 1          able to talk about President
 2          Hinckley's statements, not just as
 3          narrowly defined as you, but much
 4          broader than that.  And in response,
 5          then Mr. Huntsman would also
 6          potentially testify about his own
 7          understanding of religious doctrine.
 8          I just don't see how this case could
 9          be tried as narrowly as you're
10          contemplating.
11                  Can you respond to that?
12                  MR. JONELIS:  Of course, your
13          Honor.
14                  And this goes to Judge Bress's
15          question as well --
16                  JUDGE NGUYEN:  Yes, I'm really
17          struggling with the same area that his
18          questions went to.
19                  MR. JONELIS:  I think we need
20          to respectfully back up for a moment
21          just to talk about this case because
22          you've referenced what the case is
23          about.  And let me be clear, lest this
24          has been misframed by the church.
25                  Mr. Huntsman in this case does
```

ADD12

Page 13

```
 1        not challenge how the Church
 2        ultimately chooses to spend its
 3        tithing, even if it spends the money
 4        on City Creek or on Beneficial Life.
 5        That's the Church's prerogative.
 6        That's protected, admittedly, under
 7        the First Amendment and 14th
 8        Amendment, the autonomy doctrine,
 9        whatever we want to call it, and
10        completely distinct from the issue
11        here.
12              The issue here is how the
13        Church told Mr. Huntsman under its
14        definition of tithing, which, again,
15        is not secular.  The Church has used
16        general accounting principles to
17        describe the tithing here.
18              If we look at page 682 of the
19        record, the Church has stated that
20        tithing, as President Hinckley
21        apparently understood it in 2003
22        during his general address, was the
23        principal, the money that my client,
24        Mr. Huntsman, took and gave to the
25        Church before it was invested anywhere
```

Page 14

```
 1     else.
 2             JUDGE SANCHEZ:  Does it matter
 3     that the April 2003 speech came from
 4     President Hinckley in this religious
 5     context?
 6             In other words, this isn't just
 7     any old speech.  It was given in this
 8     broader sense of describing the church
 9     activities and religious mission and
10     isn't there a concern if you're asking
11     courts to start parsing these
12     speeches, whether it's going to chill
13     something within religious doctrine or
14     internal church governance that a
15     church leader might have to run a
16     speech by legal before you can deliver
17     a sermon?
18             MR. JONELIS:  No, your Honor.
19     And in respect for that, that actually
20     piggybacks very nicely on Judge Bress
21     and Judge Nguyen's question.  I can
22     answer all these together.
23             Because the answer would be no
24     more so than the religious statements
25     made in Rasheed.  No more so than the
```

ADD14

```
                                    Page 15

 1       religious statements made in McTaab

 2       Tareeg {phonetic} or in Anamalie

 3       {phonetic}, in any of the other cases

 4       where our Supreme Court or this

 5       circuit or other circuits, such as the

 6       Eleventh Circuit in Anamalie or the

 7       Court of Appeal in Texas in Liphart

 8       have addressed issues where in the

 9       context of a sermon, for example, in

10       Rasheed, Pastor Rasheed, told his

11       congregants, it is God's will, from

12       the pulpit, that you give your money

13       as ministers, and it will be

14       quadrupled under the will of God.

15               In that case, just as we would

16       submit in this case, Pastor Rasheed

17       knew at the time that he made that

18       statement that it was not actually

19       going to be quadrupled under the will

20       of God.  It was going to be quadrupled

21       by all of the other donations that

22       were taken in what this circuit

23       characterized as a pyramid or Ponzi

24       scheme.

25               In this case, likewise, there
```

ADD15

Page 16

```
 1        is at a bare minimum, your Honor, is a
 2        triable issue of fact as to when
 3        President Hinckley and Bishop Burton
 4        and the Church's official magazine and
 5        the Church's statement to Deseret News
 6        and Keith B. McMullin's statement to
 7        the Salt Lake Tribune, at the time
 8        that all of those statements were made
 9        on five --
10            JUDGE BUMATAY:  About McMullin,
11        don't we have to decide whether or not
12        McMullin can speak for the Church, and
13        isn't that a religious question?
14            MR. JONELIS:  No, your Honor,
15        because at the time that McMullin made
16        the statement he was speaking on
17        behalf of the Church.  And he said
18        that not one penny of tithing --
19            JUDGE BUMATAY:  So we -- I
20        mean, how do we know he was speaking
21        on behalf of the Church?
22            MR. JONELIS:  Your Honor, that
23        would be a question that could be
24        asked in discovery, should this case
25        proceed --
```

ADD16

Page 17

```
 1              JUDGE BUMATAY:  Yeah, isn't
 2         that precisely the problem, that we're
 3         supposed to ask who can speak on
 4         behalf of the Church?
 5              So what if the Church says, no,
 6         he wasn't speaking on behalf of us and
 7         that we're going to decide as a
 8         religious matter that he was speaking
 9         on behalf of the Church?
10              MR. JONELIS:  First of all,
11         your Honor, the Church has never
12         questioned that issue.  In fact, in
13         the record --
14              JUDGE BUMATAY:  But in that
15         hypothetical, what would happen in
16         that case?
17              MR. JONELIS:  Hypothetically,
18         if he was not speaking upon the Church
19         and if the Church chose to distance
20         itself, which it had the opportunity
21         to do -- I mean, that statement was
22         made, as we know, in 2012.  This case
23         was filed in 2022.  There was ample
24         opportunity for the Church to --
25              JUDGE BUMATAY:  So what would
```

ADD17

Page 18

```
 1        happen in that case, though?  Then we
 2        would have to say the Church is wrong,
 3        that Keith McMullin actually was
 4        speaking on behalf of the Church.
 5              MR. JONELIS:  The Church
 6        would -- in your hypothetical, if the
 7        Church denied that Mr. McMullin was
 8        speaking on behalf of the Church and
 9        said, no, none of these five
10        individuals were speaking on behalf,
11        and really it was something completely
12        different, even though one of the
13        individuals, President Hinckley, was,
14        according to the Church, speaking on
15        behalf --
16              JUDGE BUMATAY:  But the bottom
17        line is we can say, no, the Church is
18        wrong, Keith McMullin was speaking on
19        behalf of the Church.
20              MR. JONELIS:  Based on the
21        record, yes, and in your hypothetical,
22        we would have to address it on the
23        facts at bar, but the issue --
24              JUDGE BUMATAY:  But how is that
25        not, like, deeply intwined with the
```

ADD18

Page 19

```
 1          religious matters then?
 2               MR. JONELIS:  Because if that
 3          was deeply intwined in religious
 4          matters, a simple issue of is somebody
 5          speaking on behalf of an organization,
 6          where would we even draw the line as
 7          to what's religious and what's not.
 8               So long as linguistics are and
 9          vernacular are religious, I mean, this
10          gets back to the issue of Let It Be
11          and tithing, and it shouldn't be -- it
12          wouldn't be equitable or consistent
13          with the intent of the First and 14th
14          Amendments and the doctrine stemming
15          therefore to say simply to use this
16          circuit's terminology, simply because
17          you invoke religious terminology,
18          you're now cloaking civil torts in
19          immunity.  That's not the purpose.
20               When there are issues here --
21          and this, again, gets back to the
22          questions.  These are accounting
23          issues.  The Church --
24               JUDGE SMITH:  Counsel, with
25          respect, if I understand the record
```

Page 20

```
 1            correctly, President Hinckley never
 2            said these were accounting issues.
 3            Mr. Huntsman was a member of the
 4            church for many years, continued to
 5            pay well after President Hinckley said
 6            what he agrees he said.  He says that
 7            he understood President Hinckley to
 8            say that tithing was treated in two
 9            parts.  There's the principal that's
10            given, and then the reserve.  The
11            Church later showed that it was just
12            the reserve that was being used.
13                 You got four statements after
14            the original statement that he didn't
15            break it down that way.  But
16            Mr. Huntsman knows and the record
17            shows that unless you want to get into
18            LDS doctrine, which you can't do,
19            President Hinckley is the only person,
20            the only person, who is authorized to
21            speak authoritatively on behalf of the
22            Church.
23                 So you say that's not true, but
24            then you get into church doctrine to
25            say otherwise.
```

ADD20

Page 21

```
 1              Do you not?
 2              MR. JONELIS:  Respectfully, no
 3        you don't, your Honor.
 4              JUDGE SMITH:  How is that?
 5              MR. JONELIS:  Because, first of
 6        all, Mr. -- President Hinckley was not
 7        the only person to speak on behalf of
 8        the Church.  To -- to --
 9              JUDGE SMITH:  And on what do
10        you rely for that?
11              MR. JONELIS:  I would cite to
12        president -- I'm sorry, Presiding
13        Bishop H. David Burton.
14              JUDGE SMITH:  The bishop --
15        presiding bishop of the Church is an
16        inferior officer of the church.
17        There's only one prophet and president
18        of the Church.  Mr. Huntsman's record
19        indicates that.  He speaks for the
20        Church; nobody else.  So how do --
21        now, you would say that's not true,
22        but then we would be required to get
23        into the LDS doctrine and for you to
24        show that he wasn't the only person.
25              Right?
```

Page 22

```
 1            MR. JONELIS:  No, your Honor.
 2       We'd have to apply common law issues,
 3       again, under --
 4            JUDGE SMITH:  Unless -- unless
 5       the constitution says otherwise.
 6            Right?
 7            MR. JONELIS:  No, your Honor.
 8       We would have to apply neutral
 9       principles of common agency law as to
10       if somebody is holding themselves out
11       as a representative of an
12       organization, as a bishop, any
13       president, and a statement made by the
14       Church to the Church's publication, to
15       say after the fact, to Monday morning
16       quarterback and state, no, that wasn't
17       a statement on behalf of the Church
18       because the LDS's official
19       spokesperson is not President
20       Hinckley, would open up the door for
21       every religious organization,
22       including in Rasheed.
23            It wasn't just Pastor Rasheed
24       who made the statement.  It was Pastor
25       Rasheed's colleague who was not the
```

Page 23

1          pastor, was just a minister, the same

2          way that Presiding Bishop Burton is

3          not the president, but everybody would

4          be exculpated if they could say, well,

5          other than the ultimate be all and end

6          all top of the pyramid person,

7          everybody else isn't speaking for the

8          Church, that would be inconsistent --

9               JUDGE SMITH:  Well, it

10         wouldn't, because in this case if

11         you're looking at LDS doctrine, the

12         answer to that question is absolutely,

13         yes, he is the only person.

14               And it's not agency law.  It's

15         religious law.  And I don't understand

16         how you can determine by applying

17         common agency law to what LDS doctrine

18         is.  And if you're trying to get into

19         LDS doctrine, it seems to me that the

20         First Amendment bars us to consider

21         it.

22               Isn't that right?

23               MR. JONELIS:  And respectfully,

24         no, your Honor.

25               JUDGE SMITH:  Why?

Page 24

```
 1              MR. JONELIS:  Look at the
 2        record here, the representations that
 3        were made starting with President
 4        Hinckley where it may have been
 5        qualified by continuing --
 6              JUDGE SMITH:  It was qualified
 7        and your counsel -- I mean, your --
 8        your client apparently recognized
 9        that.  He understood it.  He heard it.
10        He saw that President Hinckley was
11        saying, you got tithing, and you
12        got -- make the reserve earnings, and
13        from the earnings of entities owned by
14        the Church.  The Church has shown by
15        the record, as I understand it, that
16        that's all that was being used to do
17        the city development, City Creek Mall.
18              MR. JONELIS:  That is the
19        Church's position.  In Mr. Huntsman's
20        deposition --
21              JUDGE SMITH:  Isn't that what
22        the record shows?
23              MR. JONELIS:  No.
24        Mr. Huntsman's declaration, if we look
25        at the record at page 44 to 45, he
```

Page 25

```
 1          doesn't differentiate.  He just took
 2          Mr. -- President Hinckley at his word.
 3               If we look at the qualification
 4          of Mr. Hinckley, meaning not his
 5          qualifications to be president, but
 6          the qualification of his statement
 7          that --
 8               JUDGE SMITH:  Okay.  If you
 9          took -- if you took him at his word,
10          then you take the first statement that
11          he would understand what President
12          Hinckley was talking about.
13               Right?
14               MR. JONELIS:  The issue here,
15          your Honor, is we can take that.  We
16          don't have to, if the Court is so
17          inclined not to look at the subsequent
18          four statements.  If to take your
19          Honor's position, as I understand it,
20          that President Hinckley is the be all
21          and end all, and we just look at his
22          statement.
23               JUDGE SMITH:  Uh-huh.
24               MR. JONELIS:  And we look at
25          how his statement has been explained
```

ADD25

Page 26

```
 1         in the record as he was referring
 2         purely to principle.  That does not
 3         change the ultimate disposition --
 4              JUDGE SMITH:  Well, who says
 5         that he was just referring to
 6         principal in the first doc?
 7              MR. JONELIS:  I'm sorry, your
 8         Honor?
 9              JUDGE SMITH:  Who says that
10         President Hinckley in his first
11         remarks was just referring to
12         principal?
13              MR. JONELIS:  The Church, your
14         Honor.
15              JUDGE SMITH:  The Church says
16         that?
17              MR. JONELIS:  The Church has
18         differentiated in their papers between
19         the principal donations made by
20         members --
21              JUDGE SMITH:  Right.
22              MR. JONELIS:  -- and the
23         interests generated by the investment
24         of it.
25              JUDGE SMITH:  And that's
```

Page 27

```
 1        what -- exactly what I'm saying.
 2        President Hinckley made that clear.
 3             JUDGE MURGUIA:  Counsel, can
 4        I -- I want to ask a question on a
 5        different matter.
 6             I guess what's your best case
 7        to support that there was a
 8        misrepresentation here?  Or that there
 9        was a factual dispute regarding the
10        misrepresentation?
11             Especially given that the
12        Church told its members that it would
13        fund the mall with earnings on
14        invested reserves, it appears that
15        that's what occurred, so I wanted to
16        give you a chance to address that.
17             MR. JONELIS:  And respectfully,
18        your Honor, we would disagree that the
19        record shows that's what occurred.
20        What we have in the record is the
21        Church's testimony -- and again, let's
22        take -- so we're not delving into
23        meanings, let's take President
24        Hinckley's after-the-fact explanation
25        in the record as to what he meant,
```

ADD27

Page 28

```
 1          principal.  Let's look aside for a
 2          moment as -- from the issue of
 3          interest.  Let's just look at the
 4          principal.
 5               We have sworn testimony from
 6          David Nielsen stating -- and this is
 7          in the record at pages 80 through 82,
 8          stating that principal tithing funds
 9          were used to fund City Creek Mall.
10          And that beyond that, principal
11          tithing funds were also commingled
12          with the earnings on the principal.
13               However, he's clear that even
14          without looking at the commingling,
15          principal tithing funds with -- and
16          that goes -- and this goes to Judge
17          Smith's question as well.  It has to
18          do -- and this was my second point
19          with inferences.  We are on summary
20          judgment.  And despite all the First
21          Amendment and 14th Amendment and
22          constitutional issues, if we really
23          look at what we're talking about here
24          in the posture of this case, which is
25          what's on appeal, we are at summary
```

Page 29

```
 1      judgment.
 2              And on summary judgment, all of
 3      Mr. Huntsman's evidence must be taken
 4      as true and all reasonable inferences
 5      must be drawn in favor --
 6              JUDGE NGUYEN:  Counsel, I'm
 7      sorry to interrupt you, before you run
 8      out of time altogether, I want to give
 9      you a chance to address the diversity
10      jurisdiction.  Because my concern is
11      I'm not sure on this record without
12      further factual findings by this
13      Court, which wouldn't be appropriate,
14      that there's enough to determine his
15      domicile.
16              As you know, the burden is on
17      Mr. Huntsman to demonstrate diversity
18      jurisdiction.  He moved to California
19      shortly before the lawsuit was filed,
20      but his company had a filing with the
21      State of California that has the Utah
22      address.  So to figure out domicile
23      involves an evaluation of a lot of
24      facts and a lot of them doesn't appear
25      to be on the record.
```

Page 30

```
 1          MR. JONELIS:  I appreciate
 2     that, your Honor.  And if I may
 3     respectfully put a pin in my answer, I
 4     will come back in about 45 seconds to
 5     the inference --
 6          JUDGE MURGUIA:  Yeah, I have a
 7     follow-up for you as well.
 8          MR. JONELIS:  Fantastic, your
 9     Honor.
10          To Judge Nguyen's question, if
11     we look, as you've recognized in the
12     record at 213 and 214, what we know,
13     which in and of itself is a far cry
14     from the facts of Lew v. Moss, we know
15     that Mr. Huntsman moved his family to
16     California in October of 2020.  We
17     know this case was filed in March
18     of 2021.  We know Mr. Huntsman moved
19     to California to be closer to his
20     business, which is located --
21     notwithstanding where it may be
22     registered, but it's located, its
23     office is in California.
24          We know Mr. Huntsman came here
25     for -- he wanted to be closer to the
```

Page 31

```
 1          ocean, he said, too.  And we know that
 2          at the time that the case was filed,
 3          there's no indication, unlike in Lew
 4          v. Moss, that Mr. Huntsman had any
 5          intention to be anywhere else.
 6                  And if we look at the circuit's
 7          decision in Mondragon v. Capital One
 8          Auto Finance, this circuit
 9          contemplated without applying it
10          there, because the facts were
11          different, that a party -- that a
12          court may treat a party's residence as
13          a presumption of domicile.  In fact,
14          other --
15                  JUDGE NGUYEN:  Well, actually
16          under Lew v. Moss the presumption is
17          in the favor of his established
18          domicile, which is Utah.  So I'm
19          trying to figure out whether he
20          overcame that presumption with what's
21          currently in the record.
22                  He obviously has the ability to
23          have homes in a lot of different
24          places, and the -- I know his
25          business, Blue Fox Entertainment, had
```

Page 32

```
 1            a California address, but the filing
 2            actually listed his personal address
 3            as a Utah address.
 4                 So there's just a lot of --
 5            given the timing of it, my concern is
 6            that the presumption should have been
 7            triggered and the district court -- we
 8            would have benefitted from findings by
 9            the district court.
10                 But neither party really raised
11            this issue below, and the district
12            court didn't sua sponte examine this
13            issue.
14                 MR. JONELIS:  And we agree,
15            your Honor.  While of course the Court
16            could sua sponte address it, it was
17            never challenged by the Court;
18            therefore, there was never any
19            response by Mr. Huntsman.  And until
20            this panel had raised the issue, it's
21            never been in dispute.
22                 That said, we would welcome --
23            if there's concerns by this panel that
24            necessitated remand to the district
25            court on the limited issue of
```

Page 33

```
 1        domicile, we'd welcome the opportunity
 2        to clarify the record, put in the
 3        evidence, either through declarations
 4        or documents or depositions, on that
 5        issue.  That would not be a problem.
 6             And so it is a resolvable issue
 7        either through the presumption, based
 8        on what's in the record already,
 9        which, again, is not like Lew v. Moss
10        where the person was living in hotels
11        in the challenged domicile at the
12        time.  This is -- Mr. Huntsman was
13        living in California, had his family
14        here, moved here.
15             I see a question.
16             JUDGE BUMATAY:  Yes, sorry.
17        Thank you, Counsel.
18             Do you have a position on
19        whether or not the Church autonomy
20        doctrine is jurisdictional or not?  I
21        mean, it's an important question
22        because whether or not we can skip
23        right to the fraud analysis or do we
24        have to address this question of the
25        First Amendment?
```

Page 34

```
 1              MR. JONELIS:  Your Honor, it is
 2       jurisdictional insofar as conceptually
 3       an Article III court cannot -- I
 4       don't -- I'm not aware, maybe there is
 5       a case that states it in terms of
 6       specific jurisdiction, but
 7       conceptually, yes --
 8              JUDGE BUMATAY:  -- does say
 9       jurisdiction, but that was, like, a
10       hundred years ago.  So I'm just
11       wondering --
12              MR. JONELIS:  Understood.  And
13       recently, conceptually, perhaps yes,
14       insofar as if a church has to delve
15       into issues of doctrine, the church
16       cannot do so.
17              But to address the issue here,
18       it would be -- it's a moot point
19       because our position is, again -- not
20       our position, but the position of
21       every judge that's looked at it so
22       far --
23              JUDGE BUMATAY:  It doesn't
24       apply.
25              MR. JONELIS:  -- is that this
```

Page 35

```
 1          is secular.  And again, it just gets
 2          back to --
 3               JUDGE BRESS:  Let me ask you on
 4          this point, one question one would
 5          have looking at the lawsuit is whether
 6          if this lawsuit is allowed, will it
 7          invite a flood of lawsuits by people
 8          who become disillusioned with their
 9          religion?  Because many people are
10          religious or belong to a religious
11          organization and then decide that it's
12          not for them.
13               And in this case, the speech
14          that we're speaking of is really more
15          of a sermon.  And are we going to --
16          if this case goes forward, are we
17          going to have situations in which lots
18          of people are suing their church or
19          their synagogue or something else
20          asking us to resolve claims of
21          religious nature?
22               MR. JONELIS:  Your Honor, I see
23          my time, once we take into account
24          rebuttal, has run, and I would like to
25          have time to respond to Mr. Clement.
```

ADD35

Page 36

```
 1        I'd be happy to answer your question,
 2        but I just --
 3             JUDGE MURGUIA:  You should go
 4        ahead and answer Judge Bress's
 5        question.
 6             MR. JONELIS:  Yes.  So the
 7        answer to the question is, no.  The
 8        precedence set here is very, very
 9        limited.  If we find -- again, this
10        goes to the slippery slope.
11             And in fact, if we -- just had
12        Judge Fletcher's prior opinion not
13        been vacated, it would have had no
14        impact whatsoever on how the Church or
15        any other religious organization
16        practices its religion.
17             The only precedent set by that
18        opinion, now vacated, or by this
19        Court's opinion, if it's reinstated,
20        is that a church in this circuit
21        cannot lie about how it intends to
22        spend the donations of its
23        congregants.
24             And so if that's the precedent
25        that's set, we would submit that's a
```

Page 37

```
 1          proper precedent.  It's not
 2          inconsistent with doctrine.  It
 3          doesn't revolve -- it doesn't require
 4          an analysis of doctrine.  It is
 5          secular.  The same way it was secular
 6          in Rasheed, the same way it was
 7          secular in every case thus far that's
 8          looked at the issue of fraud, not
 9          employment decisions.
10               Your Honors, I'd like to
11          reserve the -- just very quickly.  In
12          conclusion, tithing is a religious
13          practice; fraud is not.  To hold
14          otherwise would open up the floodgates
15          to a litany of serious civil torts no
16          longer being punishable.
17               Thank you, your Honors.  I
18          respectfully reserve my time.
19               MR. CLEMENT:  Good afternoon,
20          your Honors.  May it please the Court,
21          Paul Clement for the appellees.
22               There are at least two
23          fundamental problems with the fraud
24          claim by a former church member
25          against his church here.
```

Page 38

```
 1            First, there's no
 2       misrepresentation.  The leader of the
 3       church explained that financing for a
 4       particular project would come from two
 5       buckets of church money and not from a
 6       third.  And that is exactly what
 7       happens as the record reflects.
 8            Second, and even more
 9       fundamentally, this kind of tithing
10       refund claim is barred by the church
11       autonomy doctrine of the First
12       Amendment.
13            This case ultimately boils down
14       to the question of what a church
15       leader meant and what a church member
16       understood when the former talked
17       about tithing funds in
18       contradistinction to earnings on
19       invested reserve funds.
20            JUDGE NGUYEN:  Counsel, can I
21       ask something?  Because you had
22       briefed and argued this case as first
23       and foremost, no triable question of
24       fact, summary judgment should have
25       been granted, and secondarily, the
```

Page 39

```
 1        First Amendment, but I would have
 2        thought given the church autonomy
 3        doctrine that the arguments would go
 4        the other way in terms of the order.
 5              So I'm curious to see what your
 6        response as to, you know, why the
 7        defense has set up the arguments that
 8        way.
 9              And secondarily, assuming that
10        the church autonomy doctrine doesn't
11        stand in the way of reaching the
12        summary judgment issue, there is still
13        the declaration of Mr. Nielsen
14        indicating that funds were commingled.
15              MR. CLEMENT:  So two questions
16        here.  Let me try to answer them in
17        turn.
18              You know, look, I think it's a
19        challenge for a church when they feel
20        they are falsely accused of fraud in
21        context of the church leader speaking
22        to the flock.  It's a bit of a
23        conundrum.  Do you try to essentially
24        clear the Church's name by saying
25        there's absolutely no
```

Page 40

```
 1        misrepresentation here.  Even if this
 2        were a completely secular case, there
 3        would be no there, there.
 4            Or do you say instead, this is
 5        a religious autonomy doctrine, the
 6        church autonomy doctrine.
 7            I think in fairness, the church
 8        was so convinced that there's just no
 9        there here, that it essentially wanted
10        to clear its name and say, look, the
11        easiest way to decide this case is to
12        decide that there's absolutely no
13        misrepresentation here --
14            JUDGE NGUYEN:  That's where --
15        that's what I figured the answer was,
16        but now then on summary judgment, you
17        want us to go there first.  There is
18        the declaration saying that the funds
19        were commingled, so why doesn't that
20        create a triable question of fact for
21        the jury?
22            MR. CLEMENT:  It absolutely
23        doesn't, your Honor, because the fact
24        that the funds may have been
25        commingled for some purposes makes
```

ADD40

Page 41

```
 1          absolutely no difference under the
 2          secular law or under the church
 3          understanding of what President and
 4          Prophet Hinckley said.
 5               I mean, you know, it may well
 6          be that the people that worked at
 7          Ensign Peak looked at all of the funds
 8          under their management, which at some
 9          broad level, like all church funds,
10          probably came from the faithful.  The
11          fact that they looked at all of those
12          funds as in some sense sacred, in some
13          sense the widows might, as some --
14               JUDGE NGUYEN:  Well, maybe I'm
15          misunderstanding something because I
16          thought the President Hinckley's
17          statement was that no -- no tithing
18          funds will be used but that earnings
19          from reserves would be.
20               But in a commingled --
21          commingling situation, then there may
22          be an issue as to how that's teased
23          apart.
24               MR. CLEMENT:  Here's the thing,
25          your Honor.  I mean, you know, they
```

Page 42

```
 1       may have been commingled for purposes
 2       of making an investment, but there was
 3       very careful recordkeeping.  They were
 4       not commingled for accounting
 5       purposes.
 6              And what the record here
 7       reflects in an irrefutable way, is
 8       that the funds for this project that
 9       started out with $1.2 billion in -- on
10       January 1, 2004, and then were
11       segregated from all other funds, that
12       $1.2 million {sic} came from earnings
13       on investment returns exclusively.
14              And that is the unrebutted
15       testimony, unrefuted testimony of
16       Mr. Writing {phonetic}, and that's in
17       his declaration in paragraph 14, and
18       that's in excerpts of the record 538.
19              So everything that was used --
20              JUDGE MURGUIA:  Just -- I just
21       want to follow up on this.  Because it
22       seems that Mr. Huntsman is arguing
23       that the Church was fraudulently
24       misleading because it did not speak
25       with sufficient clarity about how it
```

Page 43

```
 1        would use the tithes, these tithes.
 2             And so I'm just trying to
 3        figure out, you know, why is he wrong
 4        given that the 1991 and 1995
 5        statements that are in the record
 6        point to several years removed and are
 7        not referenced within the 2003
 8        statement?
 9             MR. CLEMENT:  So, I mean, two
10        things, your Honor.  First, you know,
11        to the extent we're saying, as Judge
12        Fletcher did for the now vacated
13        opinion, that the problem here is that
14        the head of the church didn't speak
15        with sufficient precision when
16        addressing the faithful about tithing,
17        I think that's why this is a First
18        Amendment problem.
19             But I don't actually think --
20        in the president and prophet's
21        defense, I actually think in 2003,
22        even if you look at that document in
23        isolation, he spoke with sufficient
24        precision.  Because he is in a way,
25        that some of the Ensign Peak employees
```

Page 44

```
 1          at a later time are not, he's talking

 2          about three different buckets of

 3          money, and he is distinguishing among

 4          and between those three buckets.  And

 5          he says, okay, the Church has some

 6          earning from commercial ventures, and

 7          that corresponds to the fact that

 8          there was $150 million from an entity

 9          called PRI, that's the Church's sort

10          of real estate arm, that's used as

11          some of the seed money for this.  So

12          he talks about that bucket.

13              Then he talks about another

14          bucket that's distinct, which is, and

15          I want to quote him directly, the

16          earnings on invested reserve funds.

17              And then he talks about a third

18          bucket, which is tithing.

19              Now, in a context where you're

20          talking about those three buckets, I

21          think it is clear, even without the

22          '91 statement, even without the '95

23          statement, that that investment --

24          those earnings on invested reserve

25          funds are different from tithing,
```

ADD44

Page 45

```
 1        which is in the context of that
 2        distinction more of the ongoing,
 3        annual tithing of the faithful.
 4             And the only sort of
 5        contradiction here is the testimony in
 6        the Nielsen declaration, which is all
 7        of three pages long, so I invite you
 8        to read it.  It is not particularly
 9        damming, but he says, well, when they
10        were working at Ensign Peak, they
11        talked about all of their funds, which
12        included current-year tithing funds
13        and earnings on invested reserve
14        funds.  They talked about all of them
15        as tithing.
16             JUDGE SUNG:  Counsel, I would
17        like to essentially piggyback on Judge
18        Bumatay's question about the First
19        Amendment abstention doctrine.  If
20        we -- if -- I understand your argument
21        to have been that if we were to agree
22        with the district court in the sense
23        in the now-vacated three-judge
24        opinion's reasoning on the merits of
25        the fraud claim, that there was no
```

Page 46

```
 1        need to abstain but that it's only
 2        when you don't agree that you start to
 3        get into church doctrine and then
 4        there is a need to abstain.
 5               As a matter of abstention
 6        doctrine as versus the pragmatic
 7        concern you mentioned before, is that
 8        still your position, that that is
 9        doctrinally correct?
10               MR. CLEMENT:  So I don't think
11        we -- I'm not aware that we took a
12        position on that before.  Let me tell
13        you what my position is.
14               JUDGE SUNG:  What is your
15        position now?
16               MR. CLEMENT:  And this is just
17        my effort to be helpful to the Court.
18        I mean, you know, it might be tempting
19        for me to say, yeah, it's
20        jurisdictional, and we really would
21        love you to decide the First Amendment
22        question now, but I don't think that's
23        right.
24               And I think there was a lot of
25        confusion in the courts before
```

Page 47

```
 1        Hosanna-Tabor, but in footnote 4 of
 2        Hosanna-Tabor, the Supreme Court
 3        clearly labels the ministerial
 4        exception as an affirmative defense.
 5        And then a few years later in Our Lady
 6        of Guadalupe, they say that the
 7        ministerial exception is just a
 8        subspecies of the church autonomy
 9        doctrine.
10             So I think if you put the
11        Supreme Court's two latest
12        pronouncements on this question
13        together, you're left with the
14        inescapable conclusion that this is
15        not jurisdictional; it is an
16        affirmative defense.  And I think that
17        is -- I should say, and
18        parenthetically, that is a virtue, of
19        course, being coherent and true.
20        There's nothing about Article III
21        about the church abstention doctrine.
22             JUDGE SMITH:  Can I just change
23        the focus a little bit?
24             The Church primarily defends
25        itself on secular grounds on the basis
```

Page 48

```
 1            that it's very clear what President
 2            Hinckley said at the beginning.  When
 3            you look at what he said, when you
 4            look at what the accounting records
 5            showed and the fact that the former
 6            employee of Ensign Peak wasn't there
 7            when this allegedly occurred, it
 8            doesn't really matter what the
 9            employees said, he wasn't -- they
10            weren't the prophet.
11                 What I don't understand is why
12            the definition of tithing funds by
13            definition doesn't run into a First
14            Amendment problem.  If the First
15            Amendment basically eclipses this, we
16            don't even get into summary judgment
17            issue.  We never get to it at all.
18                 Why did the Church take the
19            position that this was just secular?
20                 MR. CLEMENT:  So I don't think
21            the Church ever took the position this
22            was secular.
23                 JUDGE SMITH:  That's just my
24            reading.
25                 MR. CLEMENT:  Right.  No.  I
```

Page 49

```
 1        think they took the position that
 2        there was no misrepresentation here at
 3        all.  And as I alluded to -- I mean, I
 4        think that's actually an
 5        understandable temptation for any
 6        church when it's accused of fraud or
 7        misconduct, because obviously it's
 8        important to the church to be, you
 9        know, above board, holier than thou,
10        whatever phrase you want.  And so
11        there's this temptation to say, we did
12        nothing wrong.
13             Now, I think --
14             JUDGE SMITH:  And I get that.
15        I get that.
16             MR. CLEMENT:  Right.
17             JUDGE SMITH:  I'm just saying
18        in dealing with your colleague over
19        there, he's saying, hey, look, this is
20        just a tort.  We think it's all
21        secular.  You seem to say it's
22        secular.  It all comes down to who
23        said what, when or where.  It's a
24        material issue of fact.  But if you
25        have a focus on what the tithing
```

Page 50

```
1        means, then you run into the religious
2        protection issue, which you never get
3        to the other one.
4              Help me with that, please.
5              MR. CLEMENT:  I am happy to
6        help you.  I guess what I would say
7        is, you know, I think ultimately the
8        temptation that this church or any
9        church has to defend itself as if it
10       were a secular entity is maybe, upon
11       reflection, the best reason to apply
12       the religious autonomy doctrine at the
13       threshold and just say, we're not
14       going to put churches in this position
15       because we're going to make it crystal
16       clear that when a member or former
17       member of the church sues for a
18       tithing refund, absent unusual
19       circumstances -- and I think there
20       probably are exceptions for
21       embezzlement or cases that would be
22       different where it's not general
23       tithing but it's a specific
24       representation for a particular
25       purpose --
```

Page 51

```
 1              JUDGE SMITH:  And then --
 2              MR. CLEMENT:  -- and the funds
 3         are diverted --
 4              JUDGE SMITH:  There's nothing
 5         in this case, if I understand
 6         correctly, nobody has claimed that the
 7         Church had a Ponzi scheme.  Nobody
 8         claimed that some person enriched
 9         themselves or provided jewels and so
10         on for somebody.
11              This is strictly an issue of
12         the president of the church, who by
13         the LDS people is -- if he is the
14         person, the authorized person, says
15         what it meant, it didn't change.
16         Mr. Huntsman apparently read that,
17         understood that, if I gather.  He's
18         taken the later four statements, he
19         says, well, that's confusing.  Well,
20         it's on him to decide, right.
21         Otherwise you have lay people deciding
22         what the doctrine of the Church is,
23         and that to me gets back to the church
24         autonomy doctrine, which maybe should
25         be governing this case.
```

Page 52

```
 1           MR. CLEMENT:  I don't disagree.
 2      I think the church autonomy doctrine
 3      squarely covers this case.  In my
 4      opening, I was going to give you two
 5      sentences on where there was no
 6      misrepresentation, and then I was
 7      planning to talk to you about the
 8      church autonomy doctrine for the
 9      balance of the time.
10           JUDGE FRIEDLAND:  So if we were
11      to go with the church autonomy
12      doctrine and rationale, it sounds like
13      you were starting to say that there
14      would be still some cases that could
15      be brought, and I would like to hear
16      more about that.
17           Like a hypothetical where
18      there's been some tragedy, there's a
19      fire in the next town and now you've
20      got orphans because their parents were
21      killed in the fire.  And the church
22      says we're collecting for these kids,
23      everything in this basket will go to
24      the kids, and then they spend the
25      money on new clothes for the minister.
```

Page 53

```
 1              Is that a case that could still
 2         be brought under your --
 3              MR. CLEMENT:  Under my view,
 4         that is the case that can be still be
 5         brought and essentially doubly so.
 6         Because the way I would sort of think
 7         about this area of the law, is you
 8         start with the presumption that the
 9         religious autonomy doctrine applies
10         but there are exceptions.  The two
11         exceptions that I think have been
12         recognized by the courts over the
13         years is, one, call it embezzlement,
14         just call it, you know, the --
15         whatever it is, ends up in the church
16         leader's pocket.
17              And then the second situation,
18         which I think is different, and I
19         think you could allow the claims to
20         proceed without running afoul of the
21         doctrine, is where it's not general
22         tithing.  It is a specific
23         solicitation for a specific purpose
24         and then the funds are diverted.
25              And I think that that latter
```

Page 54

1          case is different largely because a
2          whole second problem -- and I believe
3          Judge Bress alluded to this in one of
4          his questions, but a whole separate
5          question under the church autonomy
6          doctrine with this claim is with the
7          reliance element.
8                   Because when it's tithing, from
9          the Church's perspective and from the
10         perspective of a faithful adherent,
11         that that is a commandment, that is a
12         scriptural commandment to give
13         10 percent of your earnings or your
14         increase or your income, that is
15         really wholly independent of what the
16         church does with it.  And that's not
17         the case obviously when it's a
18         solicitation for everything in this
19         basket is going to go to hurricane
20         relief in a particular place.
21                   JUDGE FRIEDLAND:  Are there
22         limits to that, though?  So say it's
23         the Catholic church that has always
24         said we're against abortion and they
25         collect tithe, and then they say we

Page 55

```
 1          would of course never support
 2          abortion.  And then they collect a
 3          bunch of money and they pay for
 4          abortions with it, could you sue?
 5              MR. CLEMENT:  I don't think you
 6          could.  I think that's a hard case.
 7          It's a hard hypothetical.  I
 8          understand it, but I think in that
 9          kind of general tithing thing, you
10          know, you might be able to leave the
11          church over it, but I don't think you
12          can get a refund under those
13          circumstances.
14              JUDGE FRIEDLAND:  And why not?
15          That's because there's some religious
16          ambiguity about what abortion means,
17          or what would be the reason?
18              MR. CLEMENT:  Well, I mean,
19          think of it this way.  I mean, one
20          reason might be that the church might
21          change its doctrine on the issue, and
22          you would still have these refund
23          claims.  And I think if you go down
24          that route, you know, all of a
25          sudden -- I mean, you know, in the
```

Page 56

```
 1        secular context, the SEC has developed
 2        a safe harbor for forward-looking
 3        statements.  And I just hate for this
 4        Court to have to impose that on
 5        religious leaders when they talk to
 6        their flock.  And that's exactly what
 7        this is.  This statement in 2003 is a
 8        forward-looking statement.  It says,
 9        no tithing funds will be used for this
10        purpose.
11             Now, it turns out that under
12        President and Prophet Hinckley's
13        definition, that's exactly what
14        happened.  But if that changed for
15        some reason, would that be a basis for
16        somebody to get a refund, would it be
17        a basis for the courts to be -- even
18        in the hard hypothetical you gave me,
19        you would still have this problem of
20        the Catholic parishioner coming in and
21        saying, well, I would have never given
22        my money if I knew that was going to
23        happen, and then the church would be
24        saying, well, that's not right, you
25        actually as an adherent Catholic, you
```

Page 57

```
 1            have an obligation, a commandment, to
 2            give tithing as well.
 3                 And so there's a jury question
 4            over whether or not there was actual
 5            or reasonable reliance in this case.
 6            I suppose if you were really going to
 7            adjudicate, you could have one side
 8            bring in an expert on Catholic church
 9            doctrine, you could have another side
10            bring in an expert on actual practice
11            of Catholics when it comes to the
12            collection basket, and then you throw
13            it all to the jury.  I think that's a
14            pretty good explanation for why the
15            church autonomy doctrine would apply
16            even in that hard hypo --
17                 JUDGE SANCHEZ:  Can I ask a
18            question about commingling?  If -- and
19            I don't know if this is the Church's
20            position.
21                 But if the funds from tithing
22            went into Ensign's bank account and
23            then the earnings were accrued in
24            that, and so it's commingled, but if
25            the Church establishes that the
```

Page 58

```
 1          earnings themselves far exceeded the
 2          investment that would go into the
 3          secret project, is that the Church's
 4          position as to why there's no
 5          misstatement?
 6                  Because even if there's a
 7          commingling of the funds, the earnings
 8          themselves are more than sufficient to
 9          cover the costs of the investment and,
10          therefore, that's why President
11          Hinckley did not misstate anything.
12                  Is that -- is that the Church's
13          position?
14                  MR. CLEMENT:  Well, if those
15          were the facts, I think that would be
16          the Church's position.  But the facts
17          are even better for the Church,
18          because there -- you know, there
19          were -- there was not commingling for
20          accounting purposes.  And indeed,
21          after January 1, 2004, there's -- the
22          record clearly shows that the -- that
23          money was set aside for this project,
24          $1.2 billion was set aside
25          specifically for this project, and
```

Page 59

```
 1          then that was how it was treated
 2          separately.  There's an account that
 3          shows every withdraw from that
 4          account.  It shows that that was --
 5          that was basically drew down on until
 6          March of 2012 where at the end there
 7          was still $151 million in there.
 8                  So and then we have testimony
 9          from Writing.  That's paragraph 15
10          that I've already alluded to, that
11          says that that $1.2 billion came
12          exclusively from earnings on -- on
13          reserve funds.
14                  So under this record, I don't
15          have to -- you know, and this is
16          something else that you would get into
17          if you got to the reliance element.  I
18          mean, at a certain point, money is
19          fungible.  And so if the Church hadn't
20          been as careful in its accounting, I
21          think I would still be up here saying,
22          like, what are we talking about?
23                  That, you know, in the year
24          2003 alone, the Church had earnings on
25          reserve funds that are well in advance
```

Page 60

```
 1          on anything they spent on this
 2          project, and so there's just no issue
 3          that, like, they had to go into --
 4                  JUDGE SANCHEZ:  Is it your
 5          view -- is it your view that the
 6          Nielsen declaration does not create a
 7          genuine issue?  Because even if Ensign
 8          used shorthand to say, it's all
 9          tithing, that doesn't make it so.
10          It's what the Church is saying that is
11          what's important for purposes of this
12          distinction between earnings versus --
13          versus the principal.
14                  MR. CLEMENT:  Absolutely.  And
15          Judge Smith was alluding to that
16          earlier, but, you know, there's only
17          one person that can speak
18          authoritatively for the Church on the
19          meaning of tithing, and that is the
20          President and the Prophet Hinckley.
21                  And so if other people in the
22          church are using loose language, that
23          is just irrelevant as a legal matter.
24                  I just have to add, though,
25          like, even in a secular setting, I can
```

ADD60

Page 61

```
 1          imagine the same thing.  Because
 2          President Hinckley is being very
 3          specific about three buckets.  And in
 4          that context, he describes one of the
 5          three buckets as tithing.  If somebody
 6          else in another context is not
 7          differentiating between three buckets
 8          and is just talking about one bucket
 9          and describes it as tithing, I mean,
10          you know, look, you know, try to find,
11          like, a simple secular example, but,
12          you know, there's blueberries and then
13          there are blueberries.  You know, not
14          all berries that are blue are
15          blueberries.  And so if somebody is
16          talking about that in one context and
17          they very specifically distinguish
18          between blueberry and black
19          raspberries and blue raspberries,
20          well, then you'd understand it one
21          way.  And if somebody else is saying,
22          oh, they're all blueberries, like, you
23          wouldn't think that was a fraud claim.
24          And at some level it's all that we
25          have here.
```

Page 62

```
 1              JUDGE BUMATAY:  Can you explain
 2         why we are carving out embezzlement
 3         from the church autonomy doctrine?  It
 4         seems like it'd be the same interest.
 5         Are you saying that there's a text and
 6         history of that or something of that
 7         nature?
 8              MR. CLEMENT:  You know, when
 9         the courts have come up with something
10         that is, you know, that egregiously
11         self-dealing, and that's really this
12         court's decision in Rasheed, I think
13         what the courts have done has -- had
14         they maybe called it a cheat, but what
15         they've done is they've said there's a
16         sincerity problem.
17              JUDGE BUMATAY:  Right.  And
18         that's the way they've sort of been
19         carving out embezzlement, though?
20              MR. CLEMENT:  It comes to the
21         same thing at the end of the day.  And
22         not every court has gone the sincerity
23         route, but that's the way I think the
24         courts have mostly approached that.
25              I also think that, you know,
```

Page 63

```
 1        the reason maybe they're sort of
 2        joined at the hip is at a certain
 3        point, you know, the reliance question
 4        I think becomes more straightforward
 5        when very few people are actually
 6        going to give money to the Church if
 7        they just think it's going to be
 8        embezzled, so --
 9             JUDGE MURGUIA:  You said you
10        were going to start -- I am sorry, you
11        said you were going to start out by
12        saying there was no misrepresentation
13        here and then go into the church
14        autonomy doctrine.
15             Are you suggesting that is the
16        way we can resolve this, is just say
17        there's no misrepresentation and end
18        it there?
19             MR. CLEMENT:  That is a way you
20        could resolve this case, and you could
21        say not one word about the religious
22        autonomy doctrine, and I would happy
23        to win this case for my client on that
24        ground alone.
25             JUDGE NGUYEN:  Can you talk
```

Page 64

```
 1        about the re -- oh, sorry, go ahead,
 2        Judge Friedland.
 3            JUDGE FRIEDLAND:  But could I
 4        just go back?  So the hypo -- I think
 5        you said there were two things:  So
 6        there's the fire and you've got kids
 7        who have no parents, and they say,
 8        this basket of money is going to those
 9        kids.  Let's get rid of the clothes
10        for the priest and say instead they
11        spend it just on a hurricane somewhere
12        else.  Is that a claim?
13            MR. CLEMENT:  I think that's a
14        claim.  Because I think that's a
15        distinguishable situation where it's a
16        solicitation for a particular reason.
17        And if those funds are diverted to
18        something else, I think that's a
19        different -- I think that's a claim
20        that you could bring, and I don't
21        think --
22            JUDGE FRIEDLAND:  Not just
23        embezzlement, it's broader, yeah.
24            MR. CLEMENT:  Right.  I took
25        the question to be in some respects
```

ADD64

Page 65

```
 1          it's harder to explain the
 2          embezzlement exception than it is the
 3          specific solicitation diversion.  At
 4          least I find it harder to explain the
 5          embezzlement exemption, but it's there
 6          in the cases, and I do think, as I
 7          say, you know, whether you call it a
 8          little bit of a cheat or you just
 9          understand it as a unique situation
10          where there's just no real practical
11          difficulty in proving reliance.
12               JUDGE SMITH:  And in this case
13          there is no allegation, I gather, of a
14          specific request to use tithing for
15          this specific fund.
16               That's the Church's position,
17          right?
18               MR. CLEMENT:  That is the
19          Church's position.  And one of the
20          things that makes this case so
21          extraordinary, of course, is we're so
22          far away from these other examples
23          because the Church was completely
24          forthright that it was going to use
25          church money for this particular
```

Page 66

```
 1         purpose.
 2                And then the president added, I
 3         suppose, gratuitously and maybe
 4         unfortunately in hindsight, all right,
 5         but I'm going to be clear, there's
 6         three buckets of church money that we
 7         could use, and we're only going to use
 8         two buckets, we're not going to use
 9         the third bucket for this purpose.
10                JUDGE SMITH:  So in this case,
11         where if the Church takes the
12         position, he's the president of the
13         church, the prophet, and the church
14         members are asked to contribute
15         tithing based upon worthiness, they
16         only get to go to the temple if they
17         do that, they're supposed to get
18         certain blessings, there's never any
19         discussion about how it's going to be
20         used in church doctrine.
21                So if you have that situation
22         and you get back to what was actually
23         said by President Hinckley, you don't
24         have the example that you give where
25         they said, we'd like you to contribute
```

Page 67

```
 1          some money for this and we're going to
 2          use it for this, which is contrary to
 3          the normal doctrine.  And that
 4          answers, I think, my colleague's
 5          question.
 6                  If there's a specific request
 7          to use money for X and they don't use
 8          it for X, that might be different.
 9          But that's not the way tithing is
10          solicited, is it?
11                  MR. CLEMENT:  Well, yes.  And
12          tithing really isn't solicited in the
13          same way as limited purpose funds are,
14          which is why in describing sort of the
15          metes and bounds of the doctrine, I
16          would describe it as tithing refund
17          claims are presumptively covered by
18          the church autonomy doctrine subject
19          to these two exceptions, and I think
20          that would provide a clear rule.
21                  And it would have the
22          incidental benefit of avoiding
23          churches from being in the dilemma
24          that my clients were in, which is,
25          they don't want to just rely on an
```

Page 68

```
 1        immunity; they want to -- you know,
 2        they've been accused of wrongdoing,
 3        and they want to defend themselves.
 4             But if you want to make it
 5        crystal clear that there's, you know,
 6        a broad doctrine with two exceptions,
 7        then I think that it's much easier for
 8        churches in future cases to say, we're
 9        going to get rid of these cases at the
10        threshold, and it also prevents the,
11        you know, opening the floodgates.
12             And Judge Bress asked a
13        question about as if it were a
14        hypothetical, but since this panel
15        decision, there have been multiple
16        class actions brought against the
17        Church, and I don't think it is a
18        problem that is limited to the -- my
19        client.  Other churches are here as a
20        amici because they're worried about
21        this same thing, and I think the
22        reason they're worried about it is
23        every church has adherents that then
24        lose their faith.
25             Now, if those adherents, former
```

Page 69

```
 1          adherents, came into court and said,
 2          well, I want all my money back
 3          because, you know, for years I was
 4          told I needed to give this money to
 5          save my mortal soul, and now I've
 6          decided all of that immortal soul
 7          stuff is bunk.  There's no afterlife.
 8          This is it.  I want to that money
 9          back.  I'm going to Vegas, whatever.
10          Like, if they tried to bring that
11          claim, they would be laughed out of
12          court.  Of course you can't bring that
13          kind of fraud claim where you bring in
14          experts and say, oh, this afterlife
15          stuff is bunk.
16               But there's a profound
17          temptation in that circumstance to,
18          you know, go back and fly speck all of
19          the sermons and say, oh, well, I was
20          told something about abortion, or I
21          was told something about this, this
22          City Creek project and, well, you
23          know, in retrospect, I wouldn't have
24          given my money.  So I want to do a
25          secular fraud claim instead of the
```

Page 70

```
 1        obviously improper religious fraud
 2        claim.  I think there are good reason
 3        to stop that threshold.
 4             JUDGE NGUYEN:  Counsel, can
 5        you -- sorry to interrupt you because
 6        I know your time is running short.
 7             Can you spend a minute
 8        addressing the jurisdictional issue?
 9        Because it seems apparent to me that
10        the Church's counsel were aware and
11        just the way that they questioned
12        Mr. Huntsman during his deposition had
13        flagged this issue for themselves, but
14        then it just kind of, like, petered
15        out.
16             Is there a reason for that?  Is
17        there downside to remanding for
18        additional factual findings by the
19        district court before we take up the
20        merits of the case?
21             MR. CLEMENT:  So, I mean, you
22        know, if this Court can, you know,
23        instantly reconvene the En Banc panel
24        after it sends it back to clarify what
25        I think is true and have no reason to
```

Page 71

```
 1          doubt, I mean, I don't really -- you
 2          know, I barely have standing to object
 3          to that.
 4               I mean, I think if the
 5          consequences of that were that we had
 6          to go back to square one or something,
 7          you know, I -- I think it was not the
 8          best use of this Court's resources.
 9               I guess, you know, to answer
10          the question, we -- we asked some
11          questions in the deposition.  The
12          answers were such that combined with
13          the averments in the complaint, we
14          didn't think we had a basis to
15          question his domicile at the point
16          that he filed the complaint.  I mean,
17          he alleges he's a California resident,
18          which I know there's kind of these
19          competing presumptions, the
20          presumption in favor of the old sort
21          of domicile but there's also a
22          presumption in favor of residents
23          being that the domicile as my friend
24          on the other side said, you know,
25          we're miles away from a situation
```

ADD71

Page 72

```
 1        where the only new domicile is a hotel
 2        room.
 3                And then you add to that the
 4        fact that there was a specific
 5        allegation that there's complete
 6        diversity in the citizenships of the
 7        parties, which was a separate
 8        allegation in the complaint.  I think
 9        we took all of that, everything we
10        heard in the deposition, we did not
11        think we had a good faith basis to
12        question what is -- you know, this
13        is -- this is -- you know, it's a
14        weird situation in a sense because the
15        question is ultimately -- I mean,
16        although, you know, testimony intent
17        is not dispositive, the legal question
18        is ultimately the intent of the person
19        at the point of which they filed the
20        complaint.  And we don't think we have
21        any basis to question that.
22                And I would say, maybe this is
23        another reason why the church autonomy
24        doctrine should apply, but, you know,
25        it puts the Church in a weird position
```

Page 73

```
 1        where it has to call its former member
 2        a liar, you know, at the
 3        jurisdictional threshold, which is
 4        essentially what we would have to do
 5        if we doubted his averments in his
 6        testimony.
 7              JUDGE BUMATAY:  Counsel, can I
 8        ask a question?  What are we -- what
 9        are we to do with Watson, which did
10        call it jurisdictional?  I know that
11        wasn't a constitutional case, but it
12        does seem relevant to how we look at
13        this now.
14              MR. CLEMENT:  So, you know, the
15        Supreme Court multiple times since
16        Watson has said that jurisdiction is a
17        term of many meanings.
18              JUDGE BUMATAY:  Right.
19              MR. CLEMENT:  Too many
20        meanings.
21              JUDGE BUMATAY:  Right.
22              MR. CLEMENT:  And so I think
23        when you put that more recent
24        observation of the court together with
25        what it said in Hosanna-Tabor and what
```

Page 74

```
 1        they -- what they then subsequently
 2        said in Our Lady, I think as a lower
 3        court, you do not have to tie yourself
 4        to the mast of what the court said in
 5        Watson.  I think you're free looking
 6        at the Supreme Court's --
 7             JUDGE BUMATAY:  That footnote
 8        could also be considered dicta, don't
 9        you think?
10             MR. CLEMENT:  What's that?
11             JUDGE BUMATAY:  That footnote
12        in Hosanna-Tabor could also be
13        considered a footnote?
14             MR. CLEMENT:  I have read
15        theories that that is dictum.  I
16        would -- I would -- I mean, you know,
17        I would take my chances with saying
18        that's a holding and think that's a
19        safer course than saying we're bound
20        by Watson as the holding.
21             JUDGE OWENS:  So, Counsel, in
22        this case if we were to resolve it on
23        what I'll call the first ground, which
24        is the nonconstitutional ground, that
25        would be solely a question, really, of
```

ADD74

Page 75

```
 1      California law.
 2              Correct?  You agree with that?
 3              MR. CLEMENT:  I would agree
 4      with that.
 5              JUDGE OWENS:  So there are a
 6      lot of other states in the country,
 7      and I am curious, would there be other
 8      states that define fraud differently
 9      that would then in a sense bring this
10      case right back to us if it was
11      brought in Nevada or brought in Idaho
12      or Utah, or do you think -- or do you
13      not see a difference?
14              MR. CLEMENT:  I don't see a
15      material difference.  I mean, every --
16      you know, there's probably some state
17      out there that has a funky concept of
18      fraud by omission, but I think, you
19      know, you really don't get a fraud
20      claim anywhere without a
21      misrepresentation and our --
22              JUDGE SMITH:  Does the Church
23      have any sense of how many copycat
24      cases were filed against it as a
25      result of the original panel's
```

ADD75

Page 76

```
 1      decision?
 2              MR. CLEMENT:  Well, there's
 3      been at least half a dozen, but most
 4      of those have been styled as putative
 5      class actions.
 6              JUDGE SMITH:  Right.
 7              MR. CLEMENT:  And there's
 8      sufficient litigation against them
 9      that an MDL has been convened.
10              JUDGE SMITH:  Got it.
11              MR. CLEMENT:  So that's why I
12      say the hype -- the floodgates concern
13      here is not hypothetical.  It is real,
14      and it's all since the panel's
15      decision in this case.
16              JUDGE SANCHEZ:  Are they all
17      California cases, or do they vary
18      in --
19              MR. CLEMENT:  They're brought
20      in multiple jurisdictions.  So let me
21      just, like, close with one point of
22      context here.
23              I mean, you know, among the
24      problems with this claim is not just
25      that you can't decide it without
```

ADD76

Page 77

```
1        deciding the definition of tithing,
2        but you can't really decide it without
3        saying that the supreme leader, the
4        supreme religious prophet of a
5        religion with 17 million adherents
6        basically committed a massive fraud on
7        his followers when he was speaking ex
8        cathedra.
9             Now, I don't think that
10       proposition alone decides the case for
11       the reasons I alluded to and the
12       exceptions, but it sure contextualizes
13       the case and sure makes clear that the
14       autonomy doctrine should apply.
15            Thank you.
16            JUDGE MURGUIA:  Thank you very
17       much.
18            MR. JONELIS:  Your Honors, I
19       would like to make three brief points
20       on rebuttal.
21            First of all, with respect to
22       Judge Nguyen and Judge Smith's
23       question on characterizing the First
24       Amendment as really the fallback
25       argument here, that's precisely right.
```

ADD77

Page 78

```
 1              What's strange about the
 2        posture here is that the Church put
 3        its financials on the table.  This is
 4        not a situation where the Church said,
 5        we're called out for our financials.
 6        We're not giving them to you because
 7        it's First Amendment protected.  The
 8        Church went ahead and put its
 9        financials on the table and
10        characterized them a certain way.
11              And it was only when
12        Mr. Huntsman, again, whose inferences
13        must be drawn in favor of, put his own
14        contrary declaration on the table and
15        said, no, tithing principal funds
16        were, in fact, used, then all of a
17        sudden the Church said, oh, this is a
18        constitutional First Amendment issue
19        up front and center.  It was after the
20        prior vacated decision recognized the
21        triable issue.
22              So it's patently unfair, we'd
23        submit, for the Church to put their
24        financials, and then when those
25        financials are questioned, which,
```

Page 79

```
 1        again, is a secular issue, it's
 2        anybody with an accounting degree, any
 3        high school student, even an
 4        elementary school who takes economics
 5        or anything, simple math, let's count
 6        up what's in this pile, let's count up
 7        what's in this pile, and let's see if
 8        that's consistent with what we submit
 9        is a secular statement by President
10        Hinckley about which pile was used.
11        That's a secular issue that creates a
12        triable issue under the summary
13        judgment --
14             JUDGE FRIEDLAND:  On that one,
15        are you saying that commingling is
16        combining the piles?  Because the
17        Nielsen talks about commingling, as I
18        read it, and I'm not sure you have
19        evidence that there really were two
20        piles and they took from both.
21             You just have one pile
22        together, right?
23             MR. JONELIS:  No, your Honor.
24        If we look at the actual documents --
25        and, again, this is what's strange
```

ADD79

Page 80

```
 1            about the case.  The Church keeps
 2            saying the documents show, the
 3            documents show.  The documents don't
 4            even mention the word "tithing" or
 5            "tithe" once.  The documents are
 6            questionable.  And if the case moves
 7            forward, there can be discovery and
 8            follow-up questions concerning those
 9            documents.
10                 We thought it was sufficient
11            for the purpose of summary judgment
12            that a sworn testimony of somebody who
13            has percipient knowledge having worked
14            for the Church's financial arm would
15            at least create a triable issue.  But
16            there are numerous follow-up
17            questions, not about the Church's
18            business decisions or about how
19            they're conducting things, but simply
20            these are financials.  Why don't they
21            say tithing.  Why don't they
22            differentiate between principal and
23            interest as the Church said.  These
24            are accounting issues that you
25            wouldn't need a doctrine expert.  You
```

Page 81

```
 1          would need a CPA to resolve.
 2                  And to say that this is a First
 3          Amendment issue or even that there's
 4          no triable issue of fact at this
 5          juncture when inferences need to be
 6          drawn in favor of Mr. Nielsen and not
 7          the Church and Mr. Writing would be to
 8          prematurely decide this case for the
 9          wrong reasons.
10                  Finally, with respect to Judge
11          Friedland's hypothetical, your
12          hypothetical about you're raising
13          money for orphans and instead you're
14          spending it for something else, and my
15          colleague says, no, that case wouldn't
16          be precluded by a decision in the
17          Church's favor here.  To the contrary,
18          it would.  Because if it's okay here
19          for the Church to say, where the
20          money's not going to go and to do it
21          dishonestly, then it's fine for
22          somebody to say where the money will
23          go and to do it dishonestly.  It's two
24          sides of the same coin.
25                  JUDGE BRESS:  Doesn't it turn
```

Page 82

```
 1          on the baseline obligation?  I mean,
 2          here the obligation is to pay money as
 3          a religious commandment.  In these
 4          other hypotheticals, it's sort of like
 5          a conditional donation.  I'm giving
 6          this money for this particular
 7          purpose.  Don't you think there's a
 8          distinction between the two?
 9              MR. JONELIS:  No, your Honor.
10          Because the Church in this instance
11          set its own condition -- sorry, its
12          own secular condition on the money.
13          The Church said on five separate
14          occasions, the money will not be used,
15          including not one penny of this pile
16          will be used to fund City Creek, and
17          Mr. Huntsman relied on that.
18              And if it turns out from the
19          documents that even one penny was
20          used, it was a misrepresentation, not
21          under the First Amendment, not under
22          the 14th Amendment, not under the
23          church autonomy doctrine, under
24          California neutral principles of law.
25              JUDGE SUNG:  Counsel, on the
```

Page 83

```
 1        question of the accounting, my
 2        understanding for your -- to create a
 3        dispute of material fact, you're
 4        relying completely on the Nielsen
 5        declaration and regarding the seed
 6        money for EPA -- as far as I could
 7        tell, the entirety of his declaration
 8        was that according to the -- what
 9        senior leadership of EPA informed me
10        in 1997, EPA was formed and was seeded
11        with tithing money.
12             Is there anything else in the
13        record specifically that you're
14        relying on to create a genuine dispute
15        of material fact regarding the source
16        of the seeding money?
17             MR. JONELIS:  Your Honor,
18        frankly, it wouldn't be possible for
19        there to be something else in the
20        record at this juncture because
21        there's been no ability.  If we
22        remember the posture, this was
23        remarkably ordered to summary judgment
24        a few months into the case at what was
25        supposed to be a conference to discuss
```

Page 84

```
 1        a discovery calendar and a trial date.
 2               None of that was done.  All
 3        there was a single deposition of
 4        Mr. Huntsman, and there was a
 5        declaration from Mr. Nielsen.  And if
 6        this case moves forward, which it
 7        should, there will be an opportunity
 8        to flesh that out.
 9               But to say that because the
10        Church is able to put in, again,
11        documents that we submit don't really
12        stand for much other than how the
13        Court chooses to characterize them,
14        but we can't then follow up and ask
15        what they actually stand for,
16        consistent with Mr. Nielsen's
17        declaration, again, on personal
18        knowledge, as you just read, would be,
19        again, to cut the legs of this case
20        off prematurely.
21               JUDGE BUMATAY:  Can I ask, why
22        doesn't sincerity fix the problem of
23        Judge Friedland's hypothetical?
24               MR. JONELIS:  It does, your
25        Honor.  And if we look again at this
```

Page 85

```
 1      sincerity doctrine here --
 2              JUDGE BUMATAY:  Right.
 3              MR. JONELIS:  -- which notably
 4      the first time it's been raised is
 5      here at oral argument.  The Church
 6      hasn't had a response to that point in
 7      any of its briefs.  And that's because
 8      the point swings in Mr. Huntsman's
 9      favor.
10              The issue of sincerity and as
11      was held in Perry {phonetic} and
12      Rasheed is if you say, this is a
13      commandment of God, we're going to do
14      it this way, and you knew at the time
15      that you said it, just like in Perry,
16      it wasn't coming from investments that
17      were making money because God blessed
18      them.  The money was coming just from
19      other members, other ministers.
20              Just like here, the money
21      wasn't -- at the time these statements
22      were made, the money wasn't coming, at
23      least according to Mr. Nielsen, from
24      earnings on tithing funds; it was
25      coming from principal.
```

ADD85

Page 86

```
 1            So under the sincerity
 2       doctrine, President Hinckley knew, we
 3       submit, at the time that he said it
 4       that what he was representing was not
 5       true on behalf of the Church.  And
 6       that falls outside of the sincerity
 7       doctrine because it's not a question
 8       of his belief; it's a question of the
 9       facts that he was aware of separate
10       and apart from what a doctrine of God
11       may have dictated to him.  These were
12       facts, these were secular facts, and,
13       your Honor --
14            JUDGE MURGUIA:  Thank you.
15            MR. JONELIS:  Yes.  Thank you.
16            JUDGE MURGUIA:  Thank you very
17       much.  Thank you, Mr. Jonelis, and
18       thank you, Mr. Clement, for the oral
19       argument presentations here today.
20            The case of James Huntsman
21       versus The Corporation of the
22       President of the Church of Christ of
23       Latter-Day Saints is now submitted and
24       we are adjourned.  Thank you.
25            (Recording concluded.)
```

ADD86



Page 87

1    – – – – – –
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Golkow Technologies,
A Veritext Division
877-370-3377                                    www.veritext.com

Page 88

```
 1                    CERTIFICATE
 2           I, CARRIE A. CAMPBELL, Registered
      Diplomate Reporter, Certified Realtime
 3    Reporter and Certified Shorthand Reporter, do
      hereby certify that the recording as taken
 4    stenographically by and before me at the
      time, place and on the date hereinbefore set
 5    forth, to the best of my ability.
 6           I DO FURTHER CERTIFY that I am
      neither a relative nor employee nor attorney
 7    nor counsel of any of the parties to this
      action, and that I am neither a relative nor
 8    employee of such attorney or counsel, and
      that I am not financially interested in the
 9    action.
10
11
12    _____
      CARRIE A. CAMPBELL,
13    NCRA Registered Diplomate Reporter
      Certified Realtime Reporter
14    California Certified Shorthand
      Reporter #13921
15    Missouri Certified Court Reporter #859
      Illinois Certified Shorthand Reporter
16    #084-004229
      Texas Certified Shorthand Reporter #9328
17    Kansas Certified Court Reporter #1715
      New Jersey Certified Court Reporter
18    #30XI00242600
      Louisiana Certified Court Reporter
19    #2021012
      Notary Public
20    Dated:  October 24, 2024
21
22
23
24
25
```

ADD88

**[& - adherent]**                                                    Page 1

| & |
|---|
| **&**   1:18,20 2:8 |

| 0 |
|---|
| **084-004229** 88:16 |

| 1 |
|---|
| **1**   42:10 58:21 |
| **1-10**   1:10 |
| **1.2**   42:9,12 |
|   58:24 59:11 |
| **10**   54:13 |
| **13921**   88:14 |
| **14**   42:17 |
| **14th**   13:7 19:13 |
|   28:21 82:22 |
| **15**   59:9 |
| **150**   44:8 |
| **151**   59:7 |
| **17**   77:5 |
| **1715**   88:17 |
| **1991**   43:4 |
| **1995**   43:4 |
| **1997**   83:10 |

| 2 |
|---|
| **2003**   13:21 |
|   14:3 43:7,21 |
|   56:7 59:24 |
| **2004**   42:10 |
|   58:21 |
| **2012**   17:22 |
|   59:6 |
| **202**   2:10 |
| **2020**   30:16 |

**2021**   30:18
**2021012**   88:19
**2022**   17:23
**2024**   1:13
  88:20
**2049**   2:4
**21-56056**   1:5
**213**   30:12
**214**   30:12
**22314**   2:10
**24**   88:20
**2400**   2:4
**25**   1:13
**2:21**   1:7

| 3 |
|---|
| **30xi00242600** 88:18 |
| **310**   2:5 |
| **31964**   88:11 |

| 4 |
|---|
| **4**   47:1 |
| **44**   8:18 24:25 |
| **45**   8:18 24:25 |
|   30:4 |

| 5 |
|---|
| **538**   42:18 |
| **556-3501**   2:5 |

| 6 |
|---|
| **682**   10:11 |
|   13:18 |

| 7 |
|---|
| **706**   2:9 |

**742-8900**   2:10

| 8 |
|---|
| **80**   28:7 |
| **82**   28:7 |
| **859**   88:15 |

| 9 |
|---|
| **90067-2906**   2:5 |
| **91**   44:22 |
| **9328**   88:16 |
| **95**   44:22 |

| a |
|---|
| **ability**   31:22 |
|   83:21 88:5 |
| **able**   12:1 55:10 |
|   84:10 |
| **abortion**   54:24 |
|   55:2,16 69:20 |
| **abortions**   55:4 |
| **above**   49:9 |
| **absent**   50:18 |
| **absolutely** |
|   23:12 39:25 |
|   40:12,22 41:1 |
|   60:14 |
| **abstain**   46:1,4 |
| **abstention** |
|   45:19 46:5 |
|   47:21 |
| **account**   35:23 |
|   57:22 59:2,4 |
| **accounting** |
|   9:24 13:16 |
|   19:22 20:2 |
|   42:4 48:4 |

58:20 59:20
79:2 80:24
83:1
**accrued**   57:23
**accused**   39:20
  49:6 68:2
**action**   88:7,9
**actions**   68:16
  76:5
**activities**   14:9
**actual**   57:4,10
  79:24
**actually**   5:11
  14:19 15:18
  18:3 31:15
  32:2 43:19,21
  49:4 56:25
  63:5 66:22
  84:15
**add**   60:24 72:3
**added**   66:2
**additional**
  70:18
**address**   7:20,22
  10:6 13:22
  18:22 27:16
  29:9,22 32:1,2
  32:3,16 33:24
  34:17
**addressed**   15:8
**addressing**
  7:10 43:16
  70:8
**adherent**   54:10
  56:25

**adherents** 68:23,25 69:1 77:5
**adjourned** 86:24
**adjudicate** 57:7
**admittedly** 13:6
**advance** 59:25
**affirmative** 47:4,16
**afoul** 53:20
**afterlife** 69:7 69:14
**afternoon** 3:6 3:18 37:19
**agency** 22:9 23:14,17
**ago** 34:10
**agree** 5:8 32:14 45:21 46:2 75:2,3
**agrees** 20:6
**ahead** 36:4 64:1 78:8
**alexandria** 2:10
**allegation** 65:13 72:5,8
**allegedly** 48:7
**alleges** 71:17
**allow** 53:19
**allowed** 35:6
**alluded** 49:3 54:3 59:10

77:11
**alluding** 60:15
**altogether** 29:8
**ambiguity** 55:16
**amendment** 7:1 7:6 13:7,8 23:20 28:21,21 33:25 38:12 39:1 43:18 45:19 46:21 48:14,15 77:24 78:7,18 81:3 82:21,22
**amendments** 19:14
**amici** 68:20
**amicus** 5:12
**ample** 17:23
**analysis** 33:23 37:4
**anamalie** 15:2 15:6
**angeles** 2:5
**annual** 45:3
**answer** 8:11,13 14:22,23 23:12 30:3 36:1,4,7 39:16 40:15 71:9
**answers** 67:4 71:12
**anybody** 79:2
**apart** 41:23 86:10

**apparent** 70:9
**apparently** 13:21 24:8 51:16
**appeal** 15:7 28:25
**appeals** 1:1 3:2
**appear** 29:24
**appears** 27:14
**appellant** 1:3 2:6 3:21
**appellee** 1:8 2:11
**appellees** 37:21
**applies** 6:7 53:9
**apply** 22:2,8 34:24 50:11 57:15 72:24 77:14
**applying** 23:16 31:9
**appreciate** 30:1
**approached** 62:24
**appropriate** 29:13
**april** 14:3
**area** 12:17 53:7
**argued** 38:22
**arguing** 42:22
**argument** 1:12 11:18 45:20 77:25 85:5 86:19

**arguments** 5:10 39:3,7
**arm** 44:10 80:14
**article** 34:3 47:20
**aside** 28:1 58:23,24
**asked** 16:24 66:14 68:12 71:10
**asking** 8:3 14:10 35:20
**assuming** 39:9
**attorney** 88:6,8
**authoritatively** 20:21 60:18
**authorized** 20:20 51:14
**auto** 31:8
**autonomy** 13:8 33:19 38:11 39:2,10 40:5,6 47:8 50:12 51:24 52:2,8 52:11 53:9 54:5 57:15 62:3 63:14,22 67:18 72:23 77:14 82:23
**averments** 71:13 73:5
**avoiding** 4:18 67:22

ADD90

**aware** 34:4
46:11 70:10
86:9

**b**

**b** 2:3 16:6
**back** 11:23
12:20 19:10,21
30:4 35:2
51:23 64:4
66:22 69:2,9
69:18 70:24
71:6 75:10
**balance** 52:9
**banc** 1:12
70:23
**bank** 57:22
**bar** 18:23
**bare** 16:1
**barely** 71:2
**barred** 38:10
**bars** 23:20
**based** 18:20
33:7 66:15
**baseline** 82:1
**basically** 48:15
59:5 77:6
**basis** 47:25
56:15,17 71:14
72:11,21
**basket** 52:23
54:19 57:12
64:8
**beginning** 48:2
**behalf** 16:17,21
17:4,6,9 18:4,8

18:10,15,19
19:5 20:21
21:7 22:17
86:5
**belief** 9:16 86:8
**believe** 9:8 54:2
**belong** 35:10
**beneficial** 13:4
**benefit** 67:22
**benefitted** 32:8
**berries** 61:14
**best** 27:6 50:11
71:8 88:5
**better** 58:17
**beyond** 28:10
**billion** 42:9
58:24 59:11
**bishop** 16:3
21:13,14,15
22:12 23:2
**bit** 39:22 47:23
65:8
**black** 61:18
**blessed** 85:17
**blessings** 66:18
**blue** 4:23 31:25
61:14,19
**blueberries**
61:12,13,15,22
**blueberry**
61:18
**board** 3:1 49:9
**boils** 38:13
**bottom** 18:16

**bound** 74:19
**bounds** 67:15
**break** 20:15
**bress** 9:5,13,23
10:12 14:20
35:3 54:3
68:12 81:25
**bress's** 12:14
36:4
**brief** 77:19
**briefed** 38:22
**briefs** 85:7
**bring** 57:8,10
64:20 69:10,12
69:13 75:9
**broad** 41:9
68:6
**broader** 12:4
14:8 64:23
**brought** 52:15
53:2,5 68:16
75:11,11 76:19
**browning** 3:8
**bucket** 44:12
44:14,18 61:8
66:9
**buckets** 38:5
44:2,4,20 61:3
61:5,7 66:6,8
**bumatay** 16:10
16:19 17:1,14
17:25 18:16,24
33:16 34:8,23
62:1,17 73:7
73:18,21 74:7

74:11 84:21
85:2
**bumatay's**
45:18
**bunch** 55:3
**bunk** 69:7,15
**burden** 29:16
**burton** 16:3
21:13 23:2
**business** 30:20
31:25 80:18

**c**

**c** 2:1
**calendar** 84:1
**california** 1:18
2:5 7:23 29:18
29:21 30:16,19
30:23 32:1
33:13 71:17
75:1 76:17
82:24 88:14
**call** 13:9 53:13
53:14 65:7
73:1,10 74:23
**called** 6:12 44:9
62:14 78:5
**campbell** 1:16
88:2,12
**capital** 31:7
**careful** 42:3
59:20
**carrie** 1:16
88:2,12
**carving** 62:2,19

**case** 3:12 4:14
5:6 6:25,25 7:4
10:1,7 11:1,21
11:21 12:8,21
12:22,25 15:15
15:16,25 16:24
17:16,22 18:1
23:10 27:6
28:24 30:17
31:2 34:5
35:13,16 37:7
38:13,22 40:2
40:11 51:5,25
52:3 53:1,4
54:1,17 55:6
57:5 63:20,23
65:12,20 66:10
70:20 73:11
74:22 75:10
76:15 77:10,13
80:1,6 81:8,15
83:24 84:6,19
86:20
**cases** 4:12 5:24
15:3 50:21
52:14 65:6
68:8,9 75:24
76:17
**cathedra** 77:8
**cathedral** 5:2
**catholic** 54:23
56:20,25 57:8
**catholics** 57:11
**center** 78:19

**century** 2:4
**certain** 59:18
63:2 66:18
78:10
**certainly** 10:25
**certificate** 88:1
**certified** 1:17
1:19,20 88:2,3
88:13,14,15,15
88:16,17,17,18
**certify** 88:3,6
**challenge** 13:1
39:19
**challenged**
32:17 33:11
**chance** 27:16
29:9
**chances** 74:17
**change** 26:3
47:22 51:15
55:21
**changed** 56:14
**characterize**
84:13
**characterized**
15:23 78:10
**characterizing**
77:23
**cheat** 62:14
65:8
**chill** 14:12
**chooses** 13:2
84:13
**chose** 17:19

**christ** 1:6 3:14
86:22
**church** 1:6 3:14
4:22 5:2,4 8:7
8:23 10:2,5,13
11:12,16,17,22
12:24 13:1,13
13:15,19,25
14:8,14,15
16:12,17,21
17:4,5,9,11,18
17:19,24 18:2
18:4,5,7,8,14
18:17,19 19:23
20:4,11,22,24
21:8,15,16,18
21:20 22:14,17
23:8 24:14,14
26:13,15,17
27:12 33:19
34:14,15 35:18
36:14,20 37:24
37:25 38:3,5
38:10,14,15
39:2,10,19,21
40:6,7 41:2,9
42:23 43:14
44:5 46:3 47:8
47:21,24 48:18
48:21 49:6,8
50:8,9,17 51:7
51:12,22,23
52:2,8,11,21
53:15 54:5,16
54:23 55:11,20

56:23 57:8,15
57:25 58:17
59:19,24 60:10
60:18,22 62:3
63:6,13 65:23
65:25 66:6,11
66:13,13,20
67:18 68:17,23
72:23,25 75:22
78:2,4,8,17,23
80:1,23 81:7
81:19 82:10,13
82:23 84:10
85:5 86:5,22
**church's** 6:1
8:20 9:18
10:10 11:3
13:5 16:4,5
22:14 24:19
27:21 39:24
44:9 54:9
57:19 58:3,12
58:16 65:16,19
70:10 80:14,17
81:17
**churches** 50:14
67:23 68:8,19
**circuit** 1:1,12
3:2 6:10,19
15:5,6,22 31:8
36:20
**circuit's** 19:16
31:6
**circuits** 15:5

**circumstance**
69:17
**circumstances**
50:19 55:13
**cite** 21:11
**cited** 5:24
**citizenships**
72:6
**city** 8:21 13:4
24:17,17 28:9
69:22 82:16
**civil** 19:18
37:15
**claim** 4:24 5:1
7:23 37:24
38:10 45:25
54:6 61:23
64:12,14,19
69:11,13,25
70:2 75:20
76:24
**claimed** 51:6,8
**claims** 35:20
53:19 55:23
67:17
**clarify** 33:2
70:24
**clarity** 42:25
**class** 68:16
76:5
**clear** 12:23
27:2 28:13
39:24 40:10
44:21 48:1
50:16 66:5

67:20 68:5
77:13
**clearly** 47:3
58:22
**clement** 2:8,8
35:25 37:19,21
39:15 40:22
41:24 43:9
46:10,16 48:20
48:25 49:16
50:5 51:2 52:1
53:3 55:5,18
58:14 60:14
62:8,20 63:19
64:13,24 65:18
67:11 70:21
73:14,19,22
74:10,14 75:3
75:14 76:2,7
76:11,19 86:18
**clementmurp...**
2:9
**clerk** 3:1
**client** 13:23
24:8 63:23
68:19
**clients** 67:24
**cloaked** 6:21
**cloaking** 19:18
**close** 76:21
**closer** 30:19,25
**clothes** 52:25
64:9
**coherent** 47:19

**coin** 81:24
**colleague** 22:25
49:18 81:15
**colleague's**
67:4
**collect** 54:25
55:2
**collecting**
52:22
**collection**
57:12
**combined**
71:12
**combining**
79:16
**come** 3:17 30:4
38:4 62:9
**comes** 4:2
49:22 57:11
62:20
**coming** 8:21
56:20 85:16,18
85:22,25
**commandment**
6:15 9:20 10:4
10:9 54:11,12
57:1 82:3
85:13
**commercial**
44:6
**commingled**
28:11 39:14
40:19,25 41:20
42:1,4 57:24

**commingling**
28:14 41:21
57:18 58:7,19
79:15,17
**committed** 77:6
**common** 5:8
22:2,9 23:17
**company** 29:20
**competing**
71:19
**complaint**
71:13,16 72:8
72:20
**complete** 72:5
**completely**
13:10 18:11
40:2 65:23
83:4
**concept** 6:20
75:17
**conceptually**
34:2,7,13
**concern** 14:10
29:10 32:5
46:7 76:12
**concerning**
80:8
**concerns** 32:23
**concluded**
86:25
**conclusion** 7:5
37:12 47:14
**condition** 9:17
82:11,12

**conditional**
82:5
**conditions**
11:11
**conducting**
80:19
**conference**
83:25
**confusing**
51:19
**confusion**
46:25
**congregants**
15:11 36:23
**connotations**
4:7
**consequences**
71:5
**consider**  23:20
**considered**
74:8,13
**consistent**
19:12 79:8
84:16
**constitution**
22:5
**constitutional**
4:18 28:22
73:11 78:18
**contemplated**
31:9
**contemplating**
12:10
**context**  5:21
8:9 9:22 10:7

14:5 15:9
39:21 44:19
45:1 56:1 61:4
61:6,16 76:22
**contexts**  4:5
**contextualizes**
77:12
**continued**  20:4
**continuing**
24:5
**contradiction**
45:5
**contradistinct...**
38:18
**contrary**  67:2
78:14 81:17
**contribute**
66:14,25
**conundrum**
39:23
**convened**  76:9
**convinced**  40:8
**copycat**  75:23
**corporation**
1:5 3:13 86:21
**correct**  9:11
46:9 75:2
**correctly**  20:1
51:6
**corresponds**
44:7
**costs**  58:9
**counsel**  2:6,11
4:16 5:11,12
10:23 19:24

24:7 27:3 29:6
33:17 38:20
45:16 70:4,10
73:7 74:21
82:25 88:7,8
**count**  79:5,6
**country**  75:6
**course**  7:25
12:12 32:15
47:19 55:1
65:21 69:12
74:19
**court**  1:1,20
3:19 4:22 15:4
15:7 25:16
29:13 31:12
32:7,9,12,15,17
32:25 34:3
37:20 45:22
46:17 47:2
56:4 62:22
69:1,12 70:19
70:22 73:15,24
74:3,4 84:13
88:15,17,17,18
**court's**  5:25
36:19 47:11
62:12 71:8
74:6
**courthouse**  3:8
**courts**  14:11
46:25 53:12
56:17 62:9,13
62:24

**cover**  58:9
**covered**  67:17
**covers**  52:3
**cpa**  81:1
**create**  40:20
60:6 80:15
83:2,14
**creates**  79:11
**creek**  8:21 13:4
24:17 28:9
69:22 82:16
**cry**  30:13
**crystal**  50:15
68:5
**curious**  39:5
75:7
**current**  45:12
**currently**  31:21
**cut**  9:14 84:19
**cv02504**  1:7

**d**

**d**  2:8
**d.c.**  1:6
**damming**  45:9
**date**  84:1 88:4
**dated**  88:20
**david**  2:3 3:20
21:13 28:6
**day**  1:7 3:14
62:21 86:23
**dealing**  5:7
49:18 62:11
**dealt**  4:23,25
5:3

ADD94

**decide** 16:11
17:7 35:11
40:11,12 46:21
51:20 76:25
77:2 81:8
**decided** 69:6
**decides** 77:10
**deciding** 51:21
77:1
**decision** 5:25
6:1,5 9:3 31:7
62:12 68:15
76:1,15 78:20
81:16
**decisions** 37:9
80:18
**declaration**
11:8 24:24
39:13 40:18
42:17 45:6
60:6 78:14
83:5,7 84:5,17
**declarations**
33:3
**deeply** 18:25
19:3
**defend** 50:9
68:3
**defendant** 1:8
1:11 2:11
**defends** 47:24
**defense** 39:7
43:21 47:4,16
**define** 75:8

**defined** 12:3
**definition**
10:10,14 13:14
48:12,13 56:13
77:1
**degree** 79:2
**deliver** 14:16
**delve** 34:14
**delving** 11:2
27:22
**demonstrate**
29:17
**denied** 18:7
**deposition**
24:20 70:12
71:11 72:10
84:3
**depositions**
33:4
**deps** 1:23
**describe** 13:17
67:16
**describes** 61:4
61:9
**describing** 14:8
67:14
**deseret** 16:5
**despite** 28:20
**determine** 8:4
23:16 29:14
**developed** 56:1
**development**
24:17
**dicta** 74:8

**dictate** 11:4
**dictated** 86:11
**dictum** 74:15
**difference** 41:1
75:13,15
**differences**
5:13
**different** 18:12
27:5 31:11,23
44:2,25 50:22
53:18 54:1
64:19 67:8
**differentiate**
25:1 80:22
**differentiated**
26:18
**differentiating**
61:7
**differently** 75:8
**difficulty** 65:11
**dilemma** 67:23
**diplomate** 1:17
88:2,13
**directly** 44:15
**disagree** 27:18
52:1
**disagreed** 7:7
**disclosed** 6:17
**discovery**
16:24 80:7
84:1
**discuss** 7:18
83:25
**discussion**
66:19

**dishonestly**
81:21,23
**disillusioned**
35:8
**disposition**
26:3
**dispositive**
72:17
**dispute** 7:12
27:9 32:21
83:3,14
**distance** 17:19
**distinct** 13:10
44:14
**distinction** 45:2
60:12 82:8
**distinguish**
61:17
**distinguishable**
64:15
**distinguishing**
44:3
**district** 32:7,9
32:11,24 45:22
70:19
**diversion** 65:3
**diversity** 29:9
29:17 72:6
**diverted** 51:3
53:24 64:17
**djonelis** 2:4
**doc** 26:6
**doctrinally**
46:9

**doctrine** 10:4
11:16,17 12:7
13:8 14:13
19:14 20:18,24
21:23 23:11,17
23:19 33:20
34:15 37:2,4
38:11 39:3,10
40:5,6 45:19
46:3,6 47:9,21
50:12 51:22,24
52:2,8,12 53:9
53:21 54:6
55:21 57:9,15
62:3 63:14,22
66:20 67:3,15
67:18 68:6
72:24 77:14
80:25 82:23
85:1 86:2,7,10
**doctrines** 11:3
**document**
43:22
**documents**
33:4 79:24
80:2,3,5,9
82:19 84:11
**domicile** 7:18
29:15,22 31:13
31:18 33:1,11
71:15,21,23
72:1
**donate** 9:4
**donation** 6:13
6:21 82:5

**donations** 11:6
15:21 26:19
36:22
**door** 22:20
**doubly** 53:5
**doubt** 71:1
**doubted** 73:5
**downside** 70:17
**dozen** 76:3
**draw** 19:6
**drawn** 7:14
29:5 78:13
81:6
**drew** 59:5
**duke** 2:9

**e**

**e** 2:1,1,1,1
**earlier** 60:16
**earning** 44:6
**earnings** 24:12
24:13 27:13
28:12 38:18
41:18 42:12
44:16,24 45:13
54:13 57:23
58:1,7 59:12
59:24 60:12
85:24
**easier** 68:7
**easiest** 40:11
**east** 2:4
**eclipses** 48:15
**economics** 79:4
**effort** 46:17

**egregiously**
62:10
**either** 33:3,7
**element** 54:7
59:17
**elementary**
79:4
**elements** 7:25
**eleventh** 15:6
**elizabeth** 4:23
**embezzled** 63:8
**embezzlement**
50:21 53:13
62:2,19 64:23
65:2,5
**employee** 48:6
88:6,8
**employees**
43:25 48:9
**employment**
5:1 6:6 37:9
**en** 1:12 70:23
**ends** 53:15
**enriched** 51:8
**ensign** 41:7
43:25 45:10
48:6 60:7
**ensign's** 57:22
**entertainment**
31:25
**entirety** 83:7
**entities** 24:13
**entitled** 11:23
**entity** 44:8
50:10

**epa** 83:6,9,10
**equitable** 19:12
**especially**
27:11
**essentially** 9:16
39:23 40:9
45:17 53:5
73:4
**established**
31:17
**establishes**
57:25
**estate** 44:10
**evaluation**
29:23
**everybody** 23:3
23:7
**evidence** 29:3
33:3 79:19
**ex** 77:7
**exactly** 27:1
38:6 56:6,13
**examine** 32:12
**example** 4:21
5:18 6:3 15:9
61:11 66:24
**examples** 65:22
**exceeded** 58:1
**exception** 6:7
47:4,7 65:2
**exceptions**
50:20 53:10,11
67:19 68:6
77:12

**excerpts** 42:18
**exclusively**
    42:13 59:12
**exculpated**
    23:4
**exemption** 65:5
**expert** 57:8,10
    80:25
**experts** 69:14
**explain** 62:1
    65:1,4
**explained**
    25:25 38:3
**explanation**
    27:24 57:14
**extent** 43:11
**extraordinary**
    65:21

**f**

**fact** 5:19 8:22
    16:2 17:12
    22:15 27:24
    31:13 36:11
    38:24 40:20,23
    41:11 44:7
    48:5 49:24
    72:4 78:16
    81:4 83:3,15
**facts** 10:7
    18:23 29:24
    30:14 31:10
    58:15,16 86:9
    86:12,12
**factual** 27:9
    29:12 70:18

**fairness** 40:7
**faith** 68:24
    72:11
**faithful** 41:10
    43:16 45:3
    54:10
**fallback** 77:24
**falls** 86:6
**falsely** 39:20
**family** 30:15
    33:13
**fantastic** 30:8
**far** 7:4 8:24
    10:8 30:13
    34:22 37:7
    58:1 65:22
    83:6
**favor** 7:14 29:5
    31:17 71:20,22
    78:13 81:6,17
    85:9
**feel** 39:19
**figure** 29:22
    31:19 43:3
**figured** 40:15
**filed** 17:23
    29:19 30:17
    31:2 71:16
    72:19 75:24
**filing** 29:20
    32:1
**finally** 81:10
**finance** 31:8
**financial** 80:14

**financially** 88:8
**financials** 78:3
    78:5,9,24,25
    80:20
**financing** 38:3
**find** 4:1 36:9
    61:10 65:4
**findings** 29:12
    32:8 70:18
**fine** 81:21
**fire** 6:6 52:19
    52:21 64:6
**firm** 11:13
**first** 7:1,5,11
    13:7 17:10
    19:13 21:5
    23:20 25:10
    26:6,10 28:20
    33:25 38:1,11
    38:22 39:1
    40:17 43:10,17
    45:18 46:21
    48:13,14 74:23
    77:21,23 78:7
    78:18 81:2
    82:21 85:4
**five** 3:23 16:9
    18:9 82:13
**fix** 84:22
**flagged** 70:13
**flesh** 84:8
**fletcher** 43:12
**fletcher's** 36:12
**flock** 39:22
    56:6

**flood** 35:7
**floodgates**
    37:14 68:11
    76:12
**fly** 69:18
**focus** 47:23
    49:25
**follow** 10:24
    30:7 42:21
    80:8,16 84:14
**followers** 77:7
**footnote** 47:1
    74:7,11,13
**foremost** 38:23
**formed** 83:10
**former** 37:24
    38:16 48:5
    50:16 68:25
    73:1
**forth** 88:5
**forthright**
    65:24
**forward** 3:17
    35:16 56:2,8
    80:7 84:6
**found** 6:10,19
**four** 20:13
    25:18 51:18
**fox** 31:25
**francisco** 3:9
**frankly** 7:2
    83:18
**fraud** 6:23,25
    6:25 7:24
    33:23 37:8,13

37:23 39:20
45:25 49:6
61:23 69:13,25
70:1 75:8,18
75:19 77:6
**fraudulently**
42:23
**free** 74:5
**friedland** 52:10
54:21 55:14
64:2,3,22
79:14
**friedland's**
81:11 84:23
**friend** 71:23
**front** 78:19
**functions** 6:1
**fund** 27:13
28:9 65:15
82:16
**fundamental**
9:25 37:23
**fundamentally**
38:9
**funds** 28:8,11
28:15 38:17,19
39:14 40:18,24
41:7,9,12,18
42:8,11 44:16
44:25 45:11,12
45:14 48:12
51:2 53:24
56:9 57:21
58:7 59:13,25
64:17 67:13

78:15 85:24
**fungible** 59:19
**funky** 75:17
**further** 29:12
88:6
**future** 68:8

**g**

**gather** 51:17
65:13
**general** 10:19
11:25 13:16,22
50:22 53:21
55:9
**generated**
26:23
**genuine** 60:7
83:14
**give** 15:12
27:16 29:8
52:4 54:12
57:2 63:6
66:24 69:4
**given** 14:7
20:10 27:11
32:5 39:2 43:4
56:21 69:24
**giving** 10:18,20
78:6 82:5
**go** 11:22 36:3
39:3 40:17
52:11,23 54:19
55:23 58:2
60:3 63:13
64:1,4 66:16
69:18 71:6

81:20,23
**god** 6:15 10:4
15:14,20 85:13
85:17 86:10
**god's** 15:11
**goes** 12:14
28:16,16 35:16
36:10
**going** 7:21
14:12 15:19,20
17:7 35:15,17
50:14,15 52:4
54:19 56:22
57:6 63:6,7,10
63:11 64:8
65:24 66:5,7,8
66:19 67:1
68:9 69:9
81:20 85:13
**golkow** 1:22
**golkow.com**
1:23
**good** 3:6,18
37:19 57:14
70:2 72:11
**governance**
14:14
**governing**
51:25
**government**
5:5
**granted** 38:25
**gratuitously**
66:3

**ground** 63:24
74:23,24
**grounds** 47:25
**guadalupe** 4:25
6:4 47:6
**guess** 27:6 50:6
71:9

**h**

**h** 21:13
**half** 76:3
**happen** 17:15
18:1 56:23
**happened**
56:14
**happens** 38:7
**happy** 3:9 7:20
8:12 36:1 50:5
63:22
**harbor** 56:2
**hard** 55:6,7
56:18 57:16
**harder** 65:1,4
**hate** 56:3
**head** 43:14
**hear** 52:15
**heard** 24:9
72:10
**held** 85:11
**help** 50:4,6
**helpful** 46:17
**hereinbefore**
88:4
**hey** 49:19
**high** 79:3

**hinckley** 13:20 14:4 16:3 18:13 20:1,5,7 20:19 21:6 22:20 24:4,10 25:2,4,12,20 26:10 27:2 41:4 48:2 58:11 60:20 61:2 66:23 79:10 86:2

**hinckley's** 12:2 27:24 41:16 56:12

**hindsight** 66:4

**hip** 63:2

**hire** 6:5

**history** 62:6

**hold** 37:13

**holding** 22:10 74:18,20

**holier** 49:9

**homes** 31:23

**honor** 5:23 6:4 6:9,24 9:12,22 12:13 14:18 16:1,14,22 17:11 21:3 22:1,7 23:24 25:15 26:8,14 27:18 30:2,9 32:15 34:1 35:22 40:23 41:25 43:10 79:23 82:9

83:17 84:25 86:13

**honor's** 25:19

**honors** 3:20,24 4:11 7:8 37:10 37:17,20 77:18

**hope** 7:22

**hosanna** 47:1,2 73:25 74:12

**hotel** 72:1

**hotels** 33:10

**huh** 25:23

**hull** 4:23

**hundred** 34:10

**huntsman** 1:2 3:12,21 8:25 12:5,25 13:13 13:24 20:3,16 29:17 30:15,18 30:24 31:4 32:19 33:12 42:22 51:16 70:12 78:12 82:17 84:4 86:20

**huntsman's** 7:14 8:4,17 11:4 21:18 24:19,24 29:3 85:8

**hurricane** 54:19 64:11

**hype** 76:12

**hypo** 57:16 64:4

**hypothetical** 17:15 18:6,21 52:17 55:7 56:18 68:14 76:13 81:11,12 84:23

**hypothetically** 17:17

**hypotheticals** 82:4

**i**

**idaho** 75:11

**iii** 34:3 47:20

**illinois** 1:18 88:15

**imagine** 61:1

**immortal** 69:6

**immunity** 19:19 68:1

**impact** 36:14

**impacted** 9:3

**implications** 4:14

**importance** 4:18

**important** 33:21 49:8 60:11

**impose** 56:4

**improper** 70:1

**incidental** 67:22

**inclined** 25:17

**included** 45:12

**including** 22:22 82:15

**income** 54:14

**inconsistent** 23:8 37:2

**incorporation** 5:3

**incorrect** 5:3

**increase** 54:14

**independent** 54:15

**indicates** 21:19

**indicating** 39:14

**indication** 31:3

**individuals** 18:10,13

**inescapable** 47:14

**inference** 30:5

**inferences** 7:13 8:16 28:19 29:4 78:12 81:5

**inferior** 21:16

**informed** 83:9

**insofar** 34:2,14

**instance** 6:17 8:23 10:21 82:10

**instantly** 70:23

**intends** 36:21

**intent** 19:13 72:16,18

ADD99

**intention** 31:5
**interest** 28:3
  62:4 80:23
**interested** 8:2
  88:8
**interests** 26:23
**internal** 14:14
**interrupt** 29:7
  70:5
**intwined** 18:25
  19:3
**invested** 13:25
  27:14 38:19
  44:16,24 45:13
**investment**
  26:23 42:2,13
  44:23 58:2,9
**investments**
  85:16
**invite** 35:7 45:7
**invoke** 4:12
**invoked** 4:12
  19:17
**involves** 29:23
**irrefutable**
  42:7
**irrelevant**
  60:23
**isolation** 43:23
**issue** 5:19 6:2
  8:14,16 9:24
  11:20 13:10,12
  16:2 17:12
  18:23 19:4,10
  25:14 28:2
  32:11,13,20,25

33:5,6 34:17
37:8 39:12
41:22 48:17
49:24 50:2
51:11 55:21
60:2,7 70:8,13
78:18,21 79:1
79:11,12 80:15
81:3,4 85:10
**issues** 7:7 15:8
  19:20,23 20:2
  22:2 28:22
  34:15 80:24
**it'd** 62:4

**j**

**james** 1:2 3:7
  3:12,21 86:20
**january** 42:10
  58:21
**jersey** 1:20
  88:17
**jesus** 1:6 3:14
**jewels** 51:9
**joined** 63:2
**jonelis** 2:3 3:18
  3:20 5:23 8:12
  9:11,21 10:17
  12:12,19 14:18
  16:14,22 17:10
  17:17 18:5,20
  19:2 21:2,5,11
  22:1,7 23:23
  24:1,18,23
  25:14,24 26:7
  26:13,17,22

27:17 30:1,8
32:14 34:1,12
34:25 35:22
36:6 77:18
79:23 82:9
83:17 84:24
85:3 86:15,17
**judge** 3:4 4:16
  7:3,21 8:12 9:5
  9:13,23 10:12
  10:23 12:14,16
  14:2,20,21
  16:10,19 17:1
  17:14,25 18:16
  18:24 19:24
  21:4,9,14 22:4
  23:9,25 24:6
  24:21 25:8,23
  26:4,9,15,21,25
  27:3 28:16
  29:6 30:6,10
  31:15 33:16
  34:8,21,23
  35:3 36:3,4,12
  38:20 40:14
  41:14 42:20
  43:11 45:16,17
  45:23 46:14
  47:22 48:23
  49:14,17 51:1
  51:4 52:10
  54:3,21 55:14
  57:17 60:4,15
  62:1,17 63:9
  63:25 64:2,3

64:22 65:12
66:10 68:12
70:4 73:7,18
73:21 74:7,11
74:21 75:5,22
76:6,10,16
77:16,22,22
79:14 81:10,25
82:25 84:21,23
85:2 86:14,16
**judgment**
  28:20 29:1,2
  38:24 39:12
  40:16 48:16
  79:13 80:11
  83:23
**juncture** 81:5
  83:20
**jurisdiction**
  29:10,18 34:6
  34:9 73:16
**jurisdictional**
  33:20 34:2
  46:20 47:15
  70:8 73:3,10
**jurisdictions**
  76:20
**jury** 8:3 9:9
  40:21 57:3,13
**justifiable** 8:1
  8:5

**k**

**k** 2:1
**kansas** 1:20
  88:17

ADD100

**kedroff** 5:1
**keeps** 80:1
**keith** 16:6 18:3
  18:18
**kids** 52:22,24
  64:6,9
**killed** 52:21
**kind** 38:9 55:9
  69:13 70:14
  71:18
**knew** 15:17
  56:22 85:14
  86:2
**know** 4:1 5:19
  7:25 8:2,8
  16:20 17:22
  29:16 30:12,14
  30:17,18,24
  31:1,24 39:6
  39:18 41:5,25
  43:3,10 46:18
  49:9 50:7
  53:14 55:10,24
  55:25 57:19
  58:18 59:15,23
  60:16 61:10,10
  61:12,13 62:8
  62:10,25 63:3
  65:7 68:1,5,11
  69:3,18,23
  70:6,22,22
  71:2,7,9,18,24
  72:12,13,16,24
  73:2,10,14
  74:16 75:16,19

  76:23
**knowledge**
  80:13 84:18
**known** 10:5
**knows** 20:16

**l**

**labels** 47:3
**lady** 4:24 6:3
  47:5 74:2
**lake** 16:7
**language** 60:22
**largely** 54:1
**latest** 47:11
**laughed** 69:11
**lavely** 2:3
**lavelysinger....**
  2:4
**law** 7:24 9:7
  22:2,9 23:14
  23:15,17 41:2
  53:7 75:1
  82:24
**lawsuit** 29:19
  35:5,6
**lawsuits** 35:7
**lawyers** 3:16
**lay** 51:21
**lds** 20:18 21:23
  23:11,17,19
  51:13
**lds's** 22:18
**leader** 14:15
  38:2,15 39:21
  77:3

**leader's** 53:16
**leaders** 56:5
**leadership** 83:9
**leave** 55:10
**left** 47:13
**legal** 5:4 14:16
  60:23 72:17
**legs** 84:19
**lens** 11:23
**lest** 12:23
**level** 41:9 61:24
**lew** 30:14 31:3
  31:16 33:9
**liar** 73:2
**lie** 36:21
**life** 13:4
**likewise** 15:25
**limited** 7:9
  32:25 36:9
  67:13 68:18
**limits** 54:22
**line** 18:17 19:6
**linguistics** 19:8
**liphart** 15:7
**listed** 32:2
**litany** 37:15
**litigation** 1:22
  76:8
**little** 47:23 65:8
**living** 33:10,13
**located** 30:20
  30:22
**long** 11:12 19:8
  45:7

**longer** 37:16
**look** 10:8,9
  13:18 24:1,24
  25:3,17,21,24
  28:1,3,23
  30:11 31:6
  39:18 40:10
  43:22 48:3,4
  49:19 61:10
  73:12 79:24
  84:25
**looked** 7:3
  34:21 37:8
  41:7,11
**looking** 23:11
  28:14 35:5
  56:2,8 74:5
**loose** 60:22
**los** 2:5
**lose** 68:24
**lot** 29:23,24
  31:23 32:4
  46:24 75:6
**lots** 35:17
**louisiana** 1:19
  88:18
**love** 46:21
**lower** 74:2

**m**

**made** 6:13
  14:25 15:1,17
  16:8,15 17:22
  22:13,24 24:3
  26:19 27:2
  85:22

**magazine** 16:4
**make** 24:12
  50:15 60:9
  68:4 77:19
**makes** 40:25
  65:20 77:13
**making** 6:1
  42:2 85:17
**mall** 24:17
  27:13 28:9
**management**
  41:8
**march** 30:17
  59:6
**mary** 4:2,6,9,23
  5:17
**massive** 77:6
**mast** 74:4
**material** 9:2
  49:24 75:15
  83:3,15
**math** 79:5
**matter** 6:20
  14:2 17:8 27:5
  46:5 48:8
  60:23
**mattered** 9:2
**matters** 19:1,4
**mccartney** 4:8
  4:9
**mcmullin** 16:10
  16:12,15 18:3
  18:7,18
**mcmullin's**
  16:6

**mctaab** 15:1
**mdl** 76:9
**mean** 16:20
  17:21 19:9
  24:7 33:21
  41:5,25 43:9
  46:18 49:3
  55:18,19,25
  59:18 61:9
  70:21 71:1,4
  71:16 72:15
  74:16 75:15
  76:23 82:1
**meaning** 5:14
  25:4 60:19
**meanings**
  27:23 73:17,20
**means** 50:1
  55:16
**meant** 11:14
  27:25 38:15
  51:15
**media** 1:15
**member** 8:8
  11:12 20:3
  37:24 38:15
  50:16,17 73:1
**members** 26:20
  27:12 66:14
  85:19
**mention** 80:4
**mentioned** 46:7
**merits** 45:24
  70:20

**metes** 67:15
**miles** 71:25
**million** 42:12
  44:8 59:7 77:5
**minimum** 16:1
**minister** 23:1
  52:25
**ministerial** 6:7
  47:3,7
**ministers** 15:13
  85:19
**minute** 70:7
**minutes** 3:23
**misconduct**
  49:7
**misframed**
  10:2 12:24
**misleading**
  42:24
**misrepresent...**
  27:8,10 38:2
  40:1,13 49:2
  52:6 63:12,17
  75:21 82:20
**missing** 5:22
**mission** 14:9
**missouri** 1:20
  88:15
**misstate** 58:11
**misstatement**
  58:5
**misunderstan...**
  41:15
**moment** 12:20
  28:2

**monday** 22:15
**mondragon**
  31:7
**money** 6:18
  8:20 9:19
  11:10 13:3,23
  15:12 38:5
  44:3,11 52:25
  55:3 56:22
  58:23 59:18
  63:6 64:8
  65:25 66:6
  67:1,7 69:2,4,8
  69:24 81:13,22
  82:2,6,12,14
  83:6,11,16
  85:17,18,20,22
**money's** 81:20
**monies** 9:17
**months** 83:24
**moot** 34:18
**morning** 22:15
**mortal** 69:5
**moss** 30:14
  31:4,16 33:9
**mother** 4:2,6,9
  5:17
**moved** 29:18
  30:15,18 33:14
**moves** 80:6
  84:6
**multiple** 68:15
  73:15 76:20
**murguia** 3:4
  27:3 30:6 36:3

42:20 63:9
77:16 86:14,16
**murphy**  2:8

**n**

**n**  2:1
**name**  3:20 4:5
39:24 40:10
**narrow**  4:13
11:19
**narrowly**  12:3
12:9
**nature**  7:11
35:21 62:7
**ncra**  88:13
**necessitated**
32:24
**need**  4:19 10:8
10:9 12:19
46:1,4 80:25
81:1,5
**needed**  69:4
**neither**  32:10
88:6,7
**neutral**  22:8
82:24
**nevada**  75:11
**never**  17:11
20:1 32:17,18
32:21 48:17
50:2 55:1
56:21 66:18
**new**  1:19 52:25
72:1 88:17
**news**  16:5

**nguyen**  10:23
12:16 29:6
31:15 38:20
40:14 41:14
63:25 70:4
77:22
**nguyen's**  14:21
30:10
**nicely**  14:20
**nicholas**  5:2
**nielsen**  28:6
39:13 45:6
60:6 79:17
81:6 83:4 84:5
85:23
**nielsen's**  84:16
**ninth**  1:1,12
3:2
**nonconstituti...**
74:24
**normal**  67:3
**notably**  85:3
**notary**  88:19
**noted**  6:4
**notwithstandi...**
30:21
**numerous**  11:8
80:16

**o**

**object**  71:2
**obligation**
10:15 57:1
82:1,2
**observation**
73:24

**obviously**
31:22 49:7
54:17 70:1
**occasions**  82:14
**occurred**  27:15
27:19 48:7
**ocean**  31:1
**october**  30:16
88:20
**office**  30:23
**officer**  21:16
**official**  16:4
22:18
**oh**  61:22 64:1
69:14,19 78:17
**okay**  25:8 44:5
81:18
**old**  14:7 71:20
**omission**  75:18
**once**  35:23 80:5
**ongoing**  45:2
**open**  22:20
37:14
**opening**  52:4
68:11
**opinion**  36:12
36:18,19 43:13
**opinion's**  45:24
**opportunity**
17:20,24 33:1
84:7
**opposing**  5:11
**oral**  85:5 86:18
**order**  8:5 39:4

**ordered**  83:23
**organization**
6:14,16 19:5
22:12,21 35:11
36:15
**original**  20:14
75:25
**orphans**  52:20
81:13
**outside**  86:6
**overcame**
31:20
**owens**  74:21
75:5
**own**  10:10 11:4
12:6 78:13
82:11,12
**owned**  24:13

**p**

**p**  2:1,1,1
**page**  13:18
24:25
**pages**  8:18 28:7
45:7
**panel**  7:17,19
32:20,23 68:14
70:23
**panel's**  75:25
76:14
**papers**  26:18
**paragraph**
42:17 59:9
**parenthetically**
47:18

**parents** 52:20
64:7
**parishioner**
56:20
**park** 2:4
**parsing** 14:11
**particular** 6:16
10:20 38:4
50:24 54:20
64:16 65:25
82:6
**particularly**
45:8
**parties** 72:7
88:7
**parts** 20:9
**party** 31:11
32:10
**party's** 31:12
**pastor** 15:10,16
22:23,24 23:1
**patently** 78:22
**paul** 2:8 4:8
37:21
**paul.clement**
2:9
**pause** 10:12
**pay** 20:5 55:3
82:2
**pc** 2:3
**peak** 41:7
43:25 45:10
48:6
**penny** 8:24
16:18 82:15,19

**people** 35:7,9
35:18 41:6
51:13,21 60:21
63:5
**percent** 54:13
**percipient**
80:13
**perry** 85:11,15
**person** 20:19
20:20 21:7,24
23:6,13 33:10
51:8,14,14
60:17 72:18
**personal** 32:2
84:17
**perspective**
54:9,10
**petered** 70:14
**phonetic** 15:2,3
42:16 85:11
**phrase** 49:10
**piggyback**
45:17
**piggybacks**
14:20
**pile** 79:6,7,10
79:21 82:15
**piles** 79:16,20
**pin** 30:3
**place** 54:20
88:4
**places** 31:24
**plaintiff** 1:3 2:6
**planning** 52:7

**please** 3:19
8:11 37:20
50:4
**pllc** 2:8
**pocket** 53:16
**point** 7:8 8:10
9:14 28:18
34:18 35:4
43:6 59:18
63:3 71:15
72:19 76:21
85:6,8
**points** 7:10
11:8 77:19
**ponzi** 15:23
51:7
**position** 24:19
25:19 33:18
34:19,20,20
46:8,12,13,15
48:19,21 49:1
50:14 57:20
58:4,13,16
65:16,19 66:12
72:25
**possible** 83:18
**posture** 28:24
78:2 83:22
**potentially**
12:6
**practical** 65:10
**practice** 37:13
57:10
**practices** 36:16

**pragmatic** 46:6
**precedence**
36:8
**precedent**
36:17,24 37:1
**precisely** 17:2
77:25
**precision** 43:15
43:24
**precluded**
81:16
**prematurely**
81:8 84:20
**prepared** 7:18
**prerogative**
13:5
**presbyterian**
4:22
**presentations**
86:19
**president** 1:6
3:13 12:1
13:20 14:4
16:3 18:13
20:1,5,7,19
21:6,12,17
22:13,19 23:3
24:3,10 25:2,5
25:11,20 26:10
27:2,23 41:3
41:16 43:20
48:1 51:12
56:12 58:10
60:20 61:2
66:2,12,23

79:9 86:2,22
**presiding**  21:12
  21:15 23:2
**presumption**
  31:13,16,20
  32:6 33:7 53:8
  71:20,22
**presumptions**
  71:19
**presumptively**
  67:17
**pretty**  57:14
**prevents**  68:10
**preview**  8:16
**pri**  44:9
**priest**  64:10
**primarily**
  47:24
**principal**  13:23
  20:9 26:6,12
  26:19 28:1,4,8
  28:10,12,15
  60:13 78:15
  80:22 85:25
**principle**  5:9
  26:2
**principles**  5:4
  13:16 22:9
  82:24
**prior**  36:12
  78:20
**probably**  41:10
  50:20 75:16
**problem**  17:2
  33:5 43:13,18

48:14 54:2
  56:19 62:16
  68:18 84:22
**problems**  37:23
  76:24
**proceed**  3:17
  16:25 53:20
**profound**  69:16
**project**  38:4
  42:8 58:3,23
  58:25 60:2
  69:22
**pronounceme...**
  47:12
**proper**  37:1
**prophet**  21:17
  41:4 48:10
  56:12 60:20
  66:13 77:4
**prophet's**
  43:20
**proposition**
  77:10
**protected**  13:6
  78:7
**protection**  50:2
**provide**  67:20
**provided**  51:9
**provides**  7:1
**proving**  65:11
**public**  88:19
**publication**
  22:14
**pull**  11:23

**pulpit**  15:12
**punishable**
  37:16
**purely**  26:2
**purpose**  19:19
  50:25 53:23
  56:10 66:1,9
  67:13 80:11
  82:7
**purposes**  11:24
  40:25 42:1,5
  58:20 60:11
**put**  11:11 30:3
  33:2 47:10
  50:14 73:23
  78:2,8,13,23
  84:10
**putative**  76:4
**puts**  72:25
**pyramid**  15:23
  23:6

**q**

**quadrupled**
  15:14,19,20
**qualification**
  25:3,6
**qualifications**
  25:5
**qualified**  24:5
  24:6
**quarterback**
  22:16
**question**  8:11
  8:13 9:15
  12:15 14:21

16:13,23 23:12
  27:4 28:17
  30:10 33:15,21
  33:24 35:4
  36:1,5,7 38:14
  38:23 40:20
  45:18 46:22
  47:12 54:5
  57:3,18 63:3
  64:25 67:5
  68:13 71:10,15
  72:12,15,17,21
  73:8 74:25
  77:23 83:1
  86:7,8
**questionable**
  80:6
**questioned**
  17:12 70:11
  78:25
**questions**  4:19
  7:19 12:18
  19:22 39:15
  54:4 71:11
  80:8,17
**quickly**  37:11
**quintessential**
  5:18
**quote**  3:25
  44:15

**r**

**r**  2:1,1
**raised**  32:10,20
  85:4

ADD105

**raising** 81:12
**rasheed** 6:10
  14:25 15:10,10
  15:16 22:22,23
  37:6 62:12
  85:12
**rasheed's** 22:25
**raspberries**
  61:19,19
**rationale** 52:12
**reached** 7:4
**reaching** 39:11
**read** 45:8 51:16
  74:14 79:18
  84:18
**reading** 48:24
**ready** 3:16
**real** 44:10
  65:10 76:13
**really** 5:11 11:2
  11:14,15,19
  12:16 18:11
  28:22 32:10
  35:14 46:20
  48:8 54:15
  57:6 62:11
  67:12 71:1
  74:25 75:19
  77:2,24 79:19
  84:11
**realtime** 1:17
  88:2,13
**reason** 11:11
  50:11 55:17,20
  56:15 63:1

  64:16 68:22
  70:2,16,25
  72:23
**reasonable** 8:7
  9:6,10 29:4
  57:5
**reasoning**
  45:24
**reasons** 10:18
  10:19 77:11
  81:9
**rebuttal** 3:23
  35:24 77:20
**recent** 73:23
**recently** 34:13
**recognized**
  24:8 30:11
  53:12 78:20
**reconvene**
  70:23
**record** 8:18
  10:11 13:19
  17:13 18:21
  19:25 20:16
  21:18 24:2,15
  24:22,25 26:1
  27:19,20,25
  28:7 29:11,25
  30:12 31:21
  33:2,8 38:7
  42:6,18 43:5
  58:22 59:14
  83:13,20
**recorded** 1:15

**recording**
  86:25 88:3
**recordkeeping**
  42:3
**records** 48:4
**referenced**
  12:22 43:7
**referring** 26:1
  26:5,11
**reflection**
  50:11
**reflects** 38:7
  42:7
**refund** 38:10
  50:18 55:12,22
  56:16 67:16
**regarding** 27:9
  83:5,15
**registered** 1:16
  30:22 88:2,13
**reinstated**
  36:19
**relative** 88:6,7
**relevant** 73:12
**reliance** 8:1,5
  8:15 9:6,22
  54:7 57:5
  59:17 63:3
  65:11
**relied** 8:19
  82:17
**relief** 54:20
**religion** 4:13
  6:21 35:9
  36:16 77:5

**religions** 5:9,14
**religious** 4:6,15
  5:18,21 6:13
  8:9 10:3,14
  12:7 14:4,9,13
  14:24 15:1
  16:13 17:8
  19:1,3,7,9,17
  22:21 23:15
  35:10,10,21
  36:15 37:12
  40:5 50:1,12
  53:9 55:15
  56:5 63:21
  70:1 77:4 82:3
**rely** 21:10
  67:25
**relying** 83:4,14
**remand** 32:24
**remanding**
  70:17
**remarkably**
  83:23
**remarks** 26:11
**remember**
  83:22
**removed** 43:6
**reporter** 1:17
  1:18,19,21
  88:2,3,3,13,13
  88:14,15,15,16
  88:17,17,18
**represent** 3:21
**representation**
  50:24

**representations**
  24:2
**representative**
  22:11
**representing**
  86:4
**request**  65:14
  67:6
**requested**  7:17
**require**  37:3
**required**  9:19
  21:22
**reserve**  3:22
  20:10,12 24:12
  37:11,18 38:19
  44:16,24 45:13
  59:13,25
**reserves**  27:14
  41:19
**residence**  31:12
**resident**  71:17
**residents**  71:22
**resolvable**  33:6
**resolve**  35:20
  63:16,20 74:22
  81:1
**resources**  71:8
**respect**  7:5
  8:14 14:19
  19:25 77:21
  81:10
**respectfully**
  10:2 12:20
  21:2 23:23
  27:17 30:3

37:18
**respects**  64:25
**respond**  12:11
  35:25
**response**  12:4
  32:19 39:6
  85:6
**result**  75:25
**retrospect**
  69:23
**returns**  42:13
**revolve**  37:3
**rid**  64:9 68:9
**right**  9:6 21:25
  22:6 23:22
  25:13 26:21
  33:23 46:23
  48:25 49:16
  51:20 56:24
  62:17 64:24
  65:17 66:4
  73:18,21 75:10
  76:6 77:25
  79:22 85:2
**room**  72:2
**ross**  5:2
**route**  55:24
  62:23
**rule**  67:20
**run**  14:15 29:7
  35:24 48:13
  50:1
**running**  53:20
  70:6

**s**

**s**  2:1,1
**sacred**  41:12
**safe**  56:2
**safer**  74:19
**saints**  1:7 3:15
  86:23
**salt**  16:7
**san**  3:8
**sanchez**  14:2
  57:17 60:4
  76:16
**sanctuary**  7:2
**save**  69:5
**saw**  24:10
**saying**  24:11
  27:1 39:24
  40:18 43:11
  49:17,19 56:21
  56:24 59:21
  60:10 61:21
  62:5 63:12
  74:17,19 77:3
  79:15 80:2
**says**  17:5 20:6
  22:5 26:4,9,15
  44:5 45:9
  51:14,19 52:22
  56:8 59:11
  81:15
**scheme**  15:24
  51:7
**school**  6:4 79:3
  79:4

**scriptural**
  54:12
**seated**  3:5
**sec**  56:1
**second**  7:13
  8:16 28:18
  38:8 53:17
  54:2
**secondarily**
  38:25 39:9
**seconds**  30:4
**secret**  58:3
**secular**  4:9 5:4
  7:11 9:23
  10:10,14 13:15
  35:1 37:5,5,7
  40:2 41:2
  47:25 48:19,22
  49:21,22 50:10
  56:1 60:25
  61:11 69:25
  79:1,9,11
  82:12 86:12
**see**  12:8 33:15
  35:22 39:5
  75:13,14 79:7
**seed**  44:11 83:5
**seeded**  83:10
**seeding**  83:16
**seem**  49:21
  73:12
**seems**  23:19
  42:22 62:4
  70:9

**seen**  5:10

**segregated**
42:11

**self**  62:11

**sends**  70:24

**senior**  83:9

**sense**  14:8
41:12,13 45:22
72:14 75:9,23

**sentences**  52:5

**separate**  54:4
72:7 82:13
86:9

**separately**  59:2

**september**  1:13

**serious**  37:15

**sermon**  14:17
15:9 35:15

**sermons**  69:19

**services**  1:22

**session**  3:3

**set**  3:11 36:8,17
36:25 39:7
58:23,24 82:11
88:4

**setting**  60:25

**several**  43:6

**short**  70:6

**shorthand**  1:19
60:8 88:3,14
88:15,16

**shortly**  29:19

**show**  21:24
80:2,3

**showed**  20:11
48:5

**shown**  24:14

**shows**  20:17
24:22 27:19
58:22 59:3,4

**sic**  42:12

**side**  57:7,9
71:24

**sides**  81:24

**signature**  88:11

**similar**  6:9

**simple**  6:25
19:4 61:11
79:5

**simply**  19:15
19:16 80:19

**sincerity**  62:16
62:22 84:22
85:1,10 86:1,6

**singer**  2:3

**singing**  4:8

**single**  7:3 84:3

**sir**  4:7

**situation**  41:21
53:17 64:15
65:9 66:21
71:25 72:14
78:4

**situations**
35:17

**sk**  1:7

**skip**  33:22

**slippery**  7:15
36:10

**slope**  7:15
36:10

**smith**  4:16 7:21
8:13 19:24
21:4,9,14 22:4
23:9,25 24:6
24:21 25:8,23
26:4,9,15,21,25
47:22 48:23
49:14,17 51:1
51:4 60:15
65:12 66:10
75:22 76:6,10

**smith's**  28:17
77:22

**solely**  74:25

**solicitation**
53:23 54:18
64:16 65:3

**solicited**  67:10
67:12

**somebody**  19:4
22:10 51:10
56:16 61:5,15
61:21 80:12
81:22

**song**  3:25 4:15

**sorry**  5:25 9:14
21:12 26:7
29:7 33:16
63:10 64:1
70:5 82:11

**sort**  44:9 45:4
53:6 62:18
63:1 67:14

71:20 82:4

**soul**  69:5,6

**sounds**  7:23
52:12

**source**  83:15

**speak**  16:12
17:3 20:21
21:7 42:24
43:14 60:17

**speaking**  4:3
16:16,20 17:6
17:8,18 18:4,8
18:10,14,18
19:5 23:7
35:14 39:21
77:7

**speaks**  21:19

**specific**  34:6
50:23 53:22,23
61:3 65:3,14
65:15 67:6
72:4

**specifically**
58:25 61:17
83:13

**speck**  69:18

**speech**  14:3,7
14:16 35:13

**speeches**  14:12

**spend**  7:9 13:2
36:22 52:24
64:11 70:7

**spending**  81:14

**spends**  13:3

spent 60:1
spoke 43:23
spokesperson
22:19
sponte 32:12
32:16
square 71:6
squarely 52:3
st 5:2
stand 39:11
84:12,15
standing 71:2
start 3:24
14:11 46:2
53:8 63:10,11
started 42:9
starting 24:3
52:13
state 9:7 22:16
29:21 75:16
stated 9:1
13:19
statement 8:20
15:18 16:5,6
16:16 17:21
20:14 22:13,17
22:24 25:6,10
25:22,25 41:17
43:8 44:22,23
56:7,8 79:9
statements
11:20 12:2
14:24 15:1
16:8 20:13
25:18 43:5

51:18 56:3
85:21
states 1:1 3:1
34:5 75:6,8
stating 28:6,8
staunchly 7:7
stemmed 11:15
stemming
19:14
stenographic...
88:4
stop 70:3
straightforward
63:4
strange 78:1
79:25
street 2:9
strictly 51:11
struggling
10:25 12:17
student 79:3
stuff 69:7,15
styled 76:4
sua 32:12,16
subject 67:18
subjectively
9:8
submit 10:1
15:16 36:25
78:23 79:8
84:11 86:3
submitted
86:23
subsequent
25:17

subsequently
74:1
subspecies 47:8
sudden 55:25
78:17
sue 55:4
sues 50:17
sufficient 42:25
43:15,23 58:8
76:8 80:10
suggesting
63:15
suing 35:18
suite 2:4
summary 28:19
28:25 29:2
38:24 39:12
40:16 48:16
79:12 80:11
83:23
sung 45:16
46:14 82:25
support 27:7
55:1
suppose 57:6
66:3
supposed 6:14
17:3 66:17
83:25
supreme 4:21
15:4 47:2,11
73:15 74:6
77:3,4
sure 3:25 29:11
77:12,13 79:18

svw 1:7
swings 85:8
sworn 8:17
28:5 80:12
synagogue
35:19

**t**

table 78:3,9,14
tabor 47:1,2
73:25 74:12
take 11:18
25:10,15,18
27:22,23 35:23
48:18 70:19
74:17
taken 15:22
29:3 51:18
88:3
takes 66:11
79:4
talk 11:24 12:1
12:21 52:7
56:5 63:25
talked 38:16
45:11,14
talking 5:12
11:9 25:12
28:23 44:1,20
59:22 61:8,16
talks 44:12,13
44:17 79:17
tareeg 15:2
teased 41:22
tell 46:12 83:7

**temple** 66:16
**temptation**
49:5,11 50:8
69:17
**tempting** 46:18
**term** 5:20
73:17
**terminology**
19:16,17
**terms** 34:5 39:4
**test** 9:7
**testified** 11:7
**testify** 12:6
**testimony** 8:17
27:21 28:5
42:15,15 45:5
59:8 72:16
73:6 80:12
**texas** 1:18 15:7
88:16
**text** 62:5
**thank** 3:4,23
33:17 37:17
77:15,16 86:14
86:15,16,17,18
86:24
**theories** 74:15
**thing** 41:24
55:9 61:1
62:21 68:21
**things** 43:10
64:5 65:20
80:19
**think** 5:7 12:19
39:18 40:7

43:17,19,21
44:21 46:10,22
46:24 47:10,16
48:20 49:1,4
49:13,20 50:7
50:19 52:2
53:6,11,18,19
53:25 55:5,6,8
55:11,19,23
57:13 58:15
59:21 61:23
62:12,23,25
63:4,7 64:4,13
64:14,18,19,21
65:6 67:4,19
68:7,17,21
70:2,25 71:4,7
71:14 72:8,11
72:20 73:22
74:2,5,9,18
75:12,18 77:9
82:7
**third** 7:15 38:6
44:17 66:9
**thou** 49:9
**thought** 11:7
39:2 41:16
80:10
**three** 5:24 7:10
44:2,4,20 45:7
45:23 61:3,5,7
66:6 77:19
**threshold**
50:13 68:10
70:3 73:3

**throw** 57:12
**tie** 74:3
**time** 3:11 7:9
11:12 15:17
16:7,15 29:8
31:2 33:12
35:23,25 37:18
44:1 52:9 70:6
85:4,14,21
86:3 88:4
**times** 4:2 73:15
**timing** 32:5
**tithe** 54:25 80:5
**tithed** 9:17,19
**tithes** 43:1,1
**tithing** 4:11 5:7
5:15,17,20
6:12 8:22,25
9:4 10:3,6,11
10:18,20 11:5
11:6,10,14,24
11:25 13:3,14
13:17,20 16:18
19:11 20:8
24:11 28:8,11
28:15 37:12
38:9,17 41:17
43:16 44:18,25
45:3,12,15
48:12 49:25
50:18,23 53:22
54:8 55:9 56:9
57:2,21 60:9
60:19 61:5,9
65:14 66:15

67:9,12,16
77:1 78:15
80:4,21 83:11
85:24
**today** 7:10
86:19
**together** 14:22
47:13 73:24
79:22
**told** 13:13
15:10 27:12
69:4,20,21
**took** 13:24 25:1
25:9,9 46:11
48:21 49:1
64:24 72:9
79:20
**top** 23:6
**tort** 7:24 49:20
**torts** 19:18
37:15
**town** 52:19
**tragedy** 52:18
**transcribed**
1:16
**transcript** 1:15
**treat** 31:12
**treated** 20:8
59:1
**trespass** 4:24
**triable** 16:2
38:23 40:20
78:21 79:12
80:15 81:4

trial  11:19,22
  84:1
tribune  16:7
tried  11:1 12:9
  69:10
tries  11:19
triggered  32:7
trouble  4:2
true  4:10 20:23
  21:21 29:4
  47:19 70:25
  86:5
truthfully  6:18
try  39:16,23
  61:10
trying  23:18
  31:19 43:2
turn  39:17
  81:25
turns  56:11
  82:18
two  20:8 37:22
  38:4 39:15
  43:9 47:11
  52:4 53:10
  64:5 66:8
  67:19 68:6
  79:19 81:23
  82:8

**u**

uh  25:23
ultimate  23:5
  26:3
ultimately  13:2
  38:13 50:7

72:15,18
under  6:14
  7:23 9:7 13:6
  13:13 15:14,19
  22:3 31:16
  41:1,2,8 53:2,3
  54:5 55:12
  56:11 59:14
  79:12 82:21,21
  82:22,23 86:1
understand
  4:17 7:16 8:7
  10:15,25 19:25
  23:15 24:15
  25:11,19 45:20
  48:11 51:5
  55:8 61:20
  65:9
understandable
  49:5
understanding
  5:16 11:5,13
  11:15,16 12:7
  41:3 83:2
understood
  13:21 20:7
  24:9 34:12
  38:16 51:17
unequivocally
  8:19 9:1
unfair  78:22
unfortunately
  66:4
unique  65:9

united  1:1 3:1
unrebutted
  42:14
unrefuted
  42:15
unusual  50:18
use  5:20 19:15
  43:1 65:14,24
  66:7,7,8 67:2,7
  67:7 71:8
used  6:18 8:25
  13:15 20:12
  24:16 28:9
  41:18 42:19
  44:10 56:9
  60:8 66:20
  78:16 79:10
  82:14,16,20
using  60:22
utah  29:21
  31:18 32:3
  75:12
utilized  11:6

**v**

v  6:9 30:14
  31:4,7,16 33:9
vacated  36:13
  36:18 43:12
  45:23 78:20
vary  76:17
vegas  69:9
ventures  44:6
vernacular
  19:9

versus  3:12
  4:22 5:1 46:6
  60:12,13 86:21
view  9:18 11:3
  53:3 60:5,5
virginia  2:10
virtue  47:18
vs  1:4

**w**

want  13:9
  20:17 27:4
  29:8 40:17
  42:21 44:15
  49:10 67:25
  68:1,3,4 69:2,8
  69:24
wanted  27:15
  30:25 40:9
watson  73:9,16
  74:5,20
way  6:22 9:25
  20:15 23:2
  37:5,6 39:4,8
  39:11 40:11
  42:7 43:24
  53:6 55:19
  61:21 62:18,23
  63:16,19 67:9
  67:13 70:11
  78:10 85:14
weighing  9:16
weird  72:14,25
welcome  3:6,7
  32:22 33:1

| | |
|---|---|
| **went**  8:23 | **y** |
| 12:18 57:22 | **yeah**  17:1 30:6 |
| 78:8 | 46:19 64:23 |
| **whatsoever** | **year**  45:12 |
| 36:14 | 59:23 |
| **wholly**  54:15 | **years**  20:4 |
| **widows**  41:13 | 34:10 43:6 |
| **win**  63:23 | 47:5 53:13 |
| **wisdom**  4:3 | 69:3 |
| **withdraw**  59:3 | |
| **wondering** | |
| 34:11 | |
| **word**  4:11,12 | |
| 25:2,9 63:21 | |
| 80:4 | |
| **words**  4:3 14:6 | |
| **worked**  41:6 | |
| 80:13 | |
| **working**  45:10 | |
| **worried**  68:20 | |
| 68:22 | |
| **worthiness** | |
| 66:15 | |
| **writing**  42:16 | |
| 59:9 81:7 | |
| **wrong**  18:2,18 | |
| 43:3 49:12 | |
| 81:9 | |
| **wrongdoing** | |
| 68:2 | |
| **x** | |
| **x**  67:7,8 | |

ADD112