No. 23-7173

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA

———————————————

DAVID O'CONNELL,

*Plaintiff-Appellee,*

v.

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,

*Defendant-Appellant.*

———————————————

On Appeal from the
United States District Court for the District of Columbia
Case No. 1:20-cv-01365, Hon. Jia M. Cobb

BRIEF OF AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE
AS *AMICUS CURIAE* SUPPORTING APPELLEE AND AFFIRMANCE

JENNY SAMUELS
ALEX J. LUCHENITSER
Americans United for Separation
 of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
(202) 466-7308

*Counsel for* Amicus Curiae

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

*Amicus* Americans United for Separation of Church and State provides the following information in accordance with D.C. Circuit Rule 28(a)(1):

### A. Parties and *Amici*

Except for the following, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Opening Brief of Defendant-Appellant United States Conference of Catholic Bishops ("USCCB"): Americans United for Separation of Church and State, Lael Weinberger, Derek T. Muller, Jewish Coalition for Religious Liberty, General Conference of Seventh-Day Adventists, Assembly of Canonical Orthodox Bishops of the United States of America, Church of Jesus Christ of Latter-Day Saints, National Association of Evangelicals, Lutheran Church-Missouri Synod, Muslim Public Affairs Council, Thomas C. Berg, Elizabeth Clark, Richard W. Garnett, Douglas Laycock, Christopher C. Lund, Michael W. McConnell, Michael P. Moreland, Robert J. Pushaw, and Eugene Volokh.

### B. Ruling Under Review

The ruling under review is the November 17, 2023 Minute Order issued by District Court Judge Jia M. Cobb. A144–63. There is no official citation for the decision below, which was pronounced orally and entered by Minute Order. There are no other prior rulings under review.

i

**C. Related Cases**

Counsel for *Amicus* are unaware of any other case pending before this or any other court that is related to this case under D.C. Circuit Rule 28(a)(1)(C).

## CORPORATE DISCLOSURE STATEMENT

*Amicus* is a nonprofit corporation organized under the laws of the District of Columbia. It has no parent corporations, and no publicly held corporation owns any portion of any of it.

## D.C. CIRCUIT RULE 29(D) CERTIFICATE

*Amicus* is not aware of other *amicus* briefs supporting Plaintiff-Appellee David O'Connell. To the extent other *amicus* briefs are filed in support of O'Connell, this separate *amicus* brief would be necessary. It addresses the church-autonomy doctrine from the unique perspective of an organization with extensive experience litigating First Amendment issues in general and about the doctrine in particular.

# TABLE OF CONTENTS

**Page(s)**

Certificate as to Parties, Rulings, and Related Cases ....................................... i

Corporate Disclosure Statement ........................................................................ iii

D.C. Circuit Rule 29(D) Certificate ................................................................... iv

Table of Authorities ........................................................................................... vi

Interests of the *Amicus Curiae* ...........................................................................1

Introduction and Summary of Argument ............................................................2

Argument...............................................................................................................3

I.    The church-autonomy doctrine does not prevent courts from adjudicating claims under neutral principles of law.................................3

II.   O'Connell's claims are not barred by the church-autonomy doctrine. .......................................................................................................9

Conclusion ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
    387 F. Supp. 3d 71 (D.D.C. 2019) ........................................................ 10

*Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of
    the Apostolic Faith, Inc.*, 684 F.3d 413 (3d Cir. 2012)............................. 6

*Bell v. Presbyterian Church (U.S.A.)*,
    126 F.3d 328 (4th Cir. 1997) ............................................................... 10

*Belya v. Kapral*,
    45 F.4th 621 (2d Cir. 2022) ..................................................... 5, 6, 9, 13

*Bollard v. Calif. Province of the Soc'y of Jesus*,
    196 F.3d 940 (9th Cir. 1999) ............................................................... 15

*Cantwell v. Connecticut*,
    310 U.S. 296 (1940) ............................................................................ 12

*Duquesne Univ. of the Holy Spirit v. NLRB*,
    947 F.3d 824 (D.C. Cir. 2020) ............................................................. 14

*EEOC v. Cath. Univ. of Am.*,
    83 F.3d 455 (D.C. Cir. 1996) .......................................................... 6, 7, 8

*El Pescador Church v. Ferrero*,
    594 S.W.3d 645 (Tex. Ct. App. 2019) .................................................. 10

*Elvig v. Calvin Presbyterian Church*,
    375 F.3d 951 (9th Cir. 2004) ............................................................... 15

*Emp. Div. v. Smith*,
    494 U.S. 872 (1990) .............................................................................. 2

*Fam. Fed'n for World Peace v. Hyun Jin Moon*,
    129 A.3d 234 (D.C. 2015)...................................................................... 3

*Garrick v. Moody Bible Inst.*,
    95 F.4th 1104 (7th Cir. 2024)................................................... 5, 6, 8, 13

*Gen. Council on Fin. & Admin. of the United Methodist Church
    v. Superior Ct.*, 439 U.S. 1355 (1978) ................................................ 12

vi

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Gregorio v. Hoover*,
  No. 16-782, 2019 WL 13280765 (D.D.C. Feb. 8, 2019) ........................... 6

*Harris v. Matthews*,
  643 S.E.2d 566 (N.C. 2007) .................................................... 10

*Hawthorne v. Couch*,
  911 So.2d 907 (La. Ct. App. 2005) ........................................... 10

*Heard v. Johnson*,
  810 A.2d 871 (D.C. 2002) ...................................................... 3

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
  565 U.S. 171 (2012) .............................................................. 5

*Hutterville Hutterian Brethren, Inc. v. Sveen*,
  776 F.3d 547 (8th Cir. 2015) .................................................. 6

*In re Godwin*,
  293 S.W.3d 742 (Tex. App. 2009) ....................................... 12, 13

*Jones v. Wolf*,
  443 U.S. 595 (1979) ............................................................... 5

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church
  in N. Am.*, 344 U.S. 94 (1952) .......................................... 3, 4, 5

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention,
  Inc.*, 966 F.3d 346 (5th Cir. 2020) ...................................... 5, 6

*Minker v. Balt. Ann. Conf. of United Methodist Church*,
  894 F.2d 1354 (D.C. Cir. 1990) ............................................ 7, 8

*Moses v. Diocese of Colo.*,
  863 P.2d 310 (Colo. 1993) ..................................................... 12

*Myhre v. Seventh-Day Adventist Church Reform Movement Am.
  Union Int'l Missionary Soc'y*, 719 F. App'x 926 (11th Cir. 2018) ........... 5

*NLRB v. Cath. Bishop of Chi.*,
  440 U.S. 490 (1979) ......................................................... 13, 14

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Ogle v. Hocker*,
  279 F. App'x 391 (6th Cir. 2008) .................................................... 12, 13

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
  591 U.S. 732 (2020) ........................................................................ 2

*Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l
Presbyterian Church*, 393 U.S. 440 (1968) .............................. 5

*Puri v. Khalsa*,
  844 F.3d 1152 (9th Cir. 2017) ...................................................... 5, 6

*Redwing v. Cath. Bishop for Diocese of Memphis*,
  363 S.W.3d 436 (Tenn. 2012) ........................................................ 9, 12

*Remeikis v. Boss & Phelps, Inc.*,
  419 A.2d 986 (D.C. 1980)............................................................... 10

*Second Episcopal Dist. African Methodist Episcopal Church v.
Prioleau*, 49 A.3d 812 (D.C. 2012)............................................ 3

*Serbian E. Orthodox Diocese v. Milivojevich*,
  426 U.S. 696 (1976) ...................................................................... 4, 5

*United States v. Annamalai*,
  939 F.3d 1216 (11th Cir. 2019) .................................................. 8

*Univ. of Great Falls v. NLRB*,
  278 F.3d 1335 (D.C. Cir. 2002) ................................................... 14

*Watson v. Jones*,
  80 U.S. (13 Wall.) 679 (1871) ....................................................... 3, 4, 5

## INTERESTS OF THE *AMICUS CURIAE*[1]

Americans United for Separation of Church and State is a national, nonpartisan organization that for over seventy-five years has brought together people of all faiths and the nonreligious who share a deep commitment to religious freedom as a shield to protect but never a sword to harm others. Americans United is frequently counsel in cases that present questions of the scope of the church-autonomy doctrine. *See, e.g.*, *Garrick v. Moody Bible Inst.*, 95 F.4th 1104 (7th Cir. 2024); *Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 76 F.4th 962 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 94 F.4th 781 (9th Cir. 2024); *Belya v. Kapral*, 45 F.4th 621 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 2609 (2023). Americans United thus has an interest in ensuring that applications of the church-autonomy doctrine serve—and do not distort—its important purpose.

---

[1] *Amicus* affirms that no counsel for a party authored this brief in whole or in part and that no person other than *Amicus*, its members, or its counsel made a monetary contribution intended to fund the brief's preparation or submission. The parties have consented to the filing of this brief.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The First Amendment "does not mean that religious institutions enjoy a general immunity from secular laws." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020). Although afforded dominion over matters of faith and internal church governance, religious entities are not, and have never been, above the law. Indeed, "[a]ny society adopting such a system would be courting anarchy." *Emp. Div. v. Smith*, 494 U.S. 872, 888 (1990).

Despite this, Defendant-Appellant United States Conference of Catholic Bishops ("USCCB") claims that it should get a free pass to defraud its parishioners, including Plaintiff-Appellee David O'Connell, without legal consequences. For this incredible contention, USCCB relies on church autonomy, a narrow doctrine that prevents courts from intervening in certain religious matters, such as disputes about religious doctrine. But, as the district court correctly held, the church-autonomy doctrine does not bar suit where, as here, the claims can be adjudicated by reference to neutral principles of law without consideration of doctrinal matters.

This Court should affirm. The church-autonomy doctrine does not prevent courts from adjudicating claims under neutral principles of law provided that no religious matters are at issue. And O'Connell's claims can

be adjudicated under neutral principles, without evaluation of any religious issues.[2]

## ARGUMENT

**I.    The church-autonomy doctrine does not prevent courts from adjudicating claims under neutral principles of law.**

The church-autonomy doctrine protects religious institutions' "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952). But the church-autonomy doctrine "does not mean . . . that churches are above the law or that there can never be a civil court review of a church action." *Fam. Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 248 (D.C. 2015) (quoting *Heard v. Johnson*, 810 A.2d 871, 879 (D.C. 2002)). If a dispute can be resolved by application of "neutral principles of law" and without "consideration of doctrinal matters," church autonomy does not bar judicial inquiry. *Id.* at 249 (quoting *Second Episcopal Dist. African Methodist Episcopal Church v. Prioleau*, 49 A.3d 812, 816 (D.C. 2012)).

The principle of church autonomy was first articulated by the Supreme Court in *Watson v. Jones*, 80 U.S. (13 Wall.) 679 (1871). *Watson* concerned

---

[2] *Amicus* writes on the church-autonomy doctrine, but we also agree with O'Connell that the Court should find as a threshold matter that it does not have jurisdiction over this appeal.

a dispute between two congregational factions about the correct interpretation of church doctrine. *Id.* at 690–93. The dispute had been resolved by the church's General Assembly—the church's highest ecclesiastical authority—and then relitigated in the courts by the losing faction. *Id.* at 726–27. The question before the Court was whether it could decide the dispute or whether it had to defer to the General Assembly's decision. The Court, citing the "broad and sound view of the relations of church and state under our system of laws," determined that it had to defer to the General Assembly's decision. *Id.* at 727. "In this class of cases," the Court explained, "whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them." *Id.*

Later recognized as having constitutional dimensions, *see Kedroff*, 344 U.S. at 116,[3] the church-autonomy principle articulated in *Watson* has continued to demand deference to religious authorities on "matters of ecclesiastical cognizance and polity," *Serbian E. Orthodox Diocese v.*

---

[3] *Watson* was decided before the First Amendment was incorporated against the states and therefore was grounded in common-law, rather than constitutional, principles. *See Kedroff*, 344 U.S. at 115.

*Milivojevich*, 426 U.S. 696, 698 (1976). That includes, for example, a church's decision about which congregational faction controls church property, *Watson*, 80 U.S. (Wall) at 726, a church's determination of its internal hierarchy, *Kedroff*, 344 U.S. at 119, a church's interpretation of its own doctrine, *Milivojevich*, 426 U.S. at 724–25, and a church's choice of who teaches and preaches its faith, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188–89 (2012).

"It is obvious, however," that not every dispute touching on a church "jeopardizes values protected by the First Amendment." *Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1968). Legal disputes that can be resolved by reference to "neutral principles of law" and without answering questions about "religious doctrine, polity, and practice" can be adjudicated by secular courts. *Jones v. Wolf*, 443 U.S. 595, 602–03 (1979). This neutral-principles approach has been repeatedly applied by the federal courts of appeals. *See e.g.*, *Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1112 (7th Cir. 2024); *Belya v. Kapral*, 45 F.4th 621, 630 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 2609 (2023); *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 349 (5th Cir. 2020); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 928 (11th Cir. 2018); *Puri v. Khalsa*, 844 F.3d 1152, 1167–68 (9th Cir. 2017); *Hutterville*

5

*Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 553 (8th Cir. 2015); *Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 419 (3d Cir. 2012).

USCCB argues (Br. at 45) that the neutral-principles approach is only applicable to church-property disputes. But courts—including this Court—routinely evaluate other types of claims against religious entities when the claims can be decided under neutral principles. *See, e.g.*, *EEOC v. Cath. Univ. of Am.*, 83 F.3d 455, 466 (D.C. Cir. 1996) (explaining that neutral principles can be used to resolve non-doctrinal disputes using secular analysis, without distinguishing between property disputes and other types of cases); *Garrick*, 95 F.4th at 1112–13; *Belya*, 45 F.4th at 630 n.8; *McRaney*, 966 F.3d at 349–50; *Puri*, 844 F.3d at 1165; *see also Gregorio v. Hoover*, No. 16-782, 2019 WL 13280765, at *7 (D.D.C. Feb. 8, 2019).

Nor is it true, as USCCB argues (Br. at 47), that this Court established "an exceedingly narrow" version of the neutral-principles approach in *Catholic University*, 83 F.3d 455. *Catholic University* did not narrow the scope of the neutral-principles approach or expand the scope of the church-autonomy doctrine—it simply affirmed that courts cannot resolve disputes that hinge on religious questions. *Catholic University* concerned a sex-discrimination suit brought by a Professor of Canon Law—a ministerial employee—at a Catholic university. 83 F.3d at 465. The University asserted

6

that its decision to deny tenure was based on the quality of the professor's scholarship; the professor argued that the University's reasoning was pretextual and that it had really denied her tenure because of sex. *Id.* at 457, 465. The district court judge had first attempted to resolve the dispute by reference to neutral principles, but "after a week of trial," he determined that it was impossible to "effectively filter out the religious elements from the secular ones." *Id.* at 466 (citation omitted). Specifically, it was impossible for the court to evaluate the quality of the professor's scholarship without considering "whether her conclusions were in accord with what the Church teaches or what, in [the court's] judgment, the Church ought to teach." *Id.*

This Court agreed that the professor's suit could not be decided based on neutral principles. *Id.* The Court explained that "the neutral principles test adopted in *Jones* will only 'permit[ ] a court to interpret provisions of religious documents involving . . . non-doctrinal matters as long as the analysis can be done in purely secular terms.'" *Id.* (quoting *Minker v. Balt. Ann. Conf. of United Methodist Church*, 894 F.2d 1354, 1358 (D.C. Cir. 1990)). The analysis of the professor's suit could not be done in "purely secular terms" because her claims turned on religious questions: Was the professor qualified to "teach in the name of the Church"? Was her

scholarship in line with church doctrine? Would her appointment further the religious mission of the Canon Law Department? *See id.*

*Catholic University* merely stands for the uncontroversial rule that courts cannot evaluate claims that turn on religious questions. It does not hold that church-autonomy "immunize[s] the church from all temporal claims made against it." *Cf. Minker*, 894 F.2d at 1360. Yet that is precisely the argument that USCCB's rewrite of the church-autonomy doctrine—under which only "purely secular" disputes would be amenable to judicial adjudication—would invite. *See* USCCB Br. 47.

If USCCB's view became the constitutional standard, individuals harmed by the tortious or unlawful conduct of a religious institution or clergy member would have no legal recourse any time the wrongdoer asserted that there is some religious element to the case. So, for example, a temple could overcharge its followers "for religious and spiritual products and services" and then "use[ ] the fraud proceeds to fund [the leader's] lavish lifestyle, including multiple homes and expensive cars." *Contra United States v. Annamalai*, 939 F.3d 1216, 1221 (11th Cir. 2019). A religious employer would have carte blanche to discriminate on the basis of sex against non-ministerial employees because "certain distinctions between men and women" implicate religious doctrine. *Contra Garrick*, 95 F.4th at 1113. And a church could evade liability for knowingly hiring and retaining

a priest with a "history and propensity for committing sexual abuse upon minors" because reviewing the claims would "necessarily require addressing church doctrine and practices." *Contra Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 443, 452 (Tenn. 2012).

The church-autonomy doctrine does not require these outcomes. This Court should reject USCCB's invitation to hold otherwise.

## II.    O'Connell's claims are not barred by the church-autonomy doctrine.

Here, as the district court correctly recognized, O'Connell's claims can be resolved by reference to neutral principles of law and without consideration of doctrinal matters. *See* A148–49.[4] Specifically, O'Connell asserts claims for fraud, unjust enrichment, and breach of fiduciary duty. A30–33 ¶¶ 47–64. These claims depend on "[d]ecidedly non-ecclesiastical questions of fact[,]" *Belya*, 45 F.4th at 634, namely: Did USCCB knowingly misrepresent and conceal the true use of Peter's Pence donations with the intent to deceive? Was a benefit conferred on and retained by USCCB? Was

---

[4] Although the district court mentioned that elements of "fraud [and] collusion" are present in this case, A148, it did not find, as USCCB asserts, that O'Connell's claims fall under a "'fraud' exception to church autonomy," USCCB Br. 45. Rather, the district court correctly found that O'Connell's claims are not barred by the church-autonomy doctrine because they do not require consideration of "church operations, religious doctrine, religious hierarchy, or religious decisionmaking." A149. Thus, whether a "fraud or collusion" exception to church autonomy exists is irrelevant in this case.

a fiduciary duty created and breached? These are secular questions suitable for adjudication according to neutral principles.

USCCB repeatedly attempts to inject religious issues into this case, but none of the religious issues raised by USCCB are material to O'Connell's claims. For example, despite what USCCB argues (Br. at 34, 36, 40–41), O'Connell's claims do not "second-guess[ ] the Pope's use of religious offerings," nor has O'Connell ever disputed that USCCB may religiously define terms such as "charitable works" and "witnessing to charity."[5] USCCB may spend its money and define terms however it likes. What USCCB may not do, however, is mislead parishioners about how it is using Peter's Pence funds in order to extract donations. But that is exactly what USCCB did here. Even taking at face value USCCB's assertion that "charitable works" and "witnessing to charity" have religious meanings that presumably cover investments in luxury real estate and Hollywood productions, "a statement literally true is actionable if made to create a false impression." *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 989 (D.C. 1980).

---

[5] So cases in which courts rejected challenges to scriptural interpretation or general church expenditures are beside the point. *See* USCCB Br. 37–38 (citing *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328, 332–33 (4th Cir. 1997); *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 80–81 (D.D.C. 2019); *Harris v. Matthews*, 643 S.E.2d 566, 571–72 (N.C. 2007); *El Pescador Church v. Ferrero*, 594 S.W.3d 645, 657–59 (Tex. Ct. App. 2019); *Hawthorne v. Couch*, 911 So.2d 907, 910–11 (La. Ct. App. 2005)).

O'Connell's complaint is replete with facts demonstrating USCCB's intent to create the false impression that Peter's Pence donations would be used for "emergency assistance [for] those in need because of natural disaster, war, oppression, and disease." A16 ¶ 18; *see also* A18–20 ¶¶ 22–25.

USCCB's other attempts to inject religious issues into the case are equally unavailing. For one thing, O'Connell's suit does not rely on an argument that USCCB violated Canon law or its own ecclesiastical procedures. *Cf.* USCCB Br. 39. Rather, USCCB's guidelines on collections are invoked by O'Connell only to demonstrate USCCB's "aware[ness] of the importance of transparency, accountability, accuracy, and honoring donor intent in connection with national collections like Peter's Pence." A20 ¶ 26. Similarly, it is not necessary to "take sides" on any "canonical" question to find that USCCB is responsible for the misleading messaging around Peter's Pence. *Cf.* USCCB Br. 41. USCCB openly admits that "[t]he USCCB National Collections Committee oversees the promotion of the Peter's Pence Collection," A17 ¶ 19, and provides specific instructions on the language to be read at the pulpit for soliciting donations, A19 ¶ 24. And determining whether USCCB retained a benefit from Peter's Pence does not require "scrutiniz[ing] the Church's representations on ecclesiastical structure and religious authority over Peter's Pence"—it is a straightforward (and secular)

factual question that can be answered by reviewing financial records. *Cf.* USCCB Br. 42.

Moreover, church autonomy does not bar O'Connell's breach of fiduciary duty claim. *See* USCCB Br. 41. As other courts have held, church autonomy does not bar fiduciary claims "as long as the fiduciary relationship is not based on a religious duty or is not inextricably tied to a religious duty." *Redwing*, 363 S.W.3d at 455; *see also, e.g.*, *Moses v. Diocese of Colo.*, 863 P.2d 310, 319–21 (Colo. 1993), *cert. denied*, 511 U.S. 1137 (1994). Here, O'Connell's Complaint alleges a fiduciary duty arising not out of a "religious duty," but rather out of USCCB's administration of charitable contributions to Peter's Pence. *See* A33 ¶ 62.

USCCB argues (Br. at 39) that it should get a free pass to defraud parishioners because some of its misrepresentations were made from the pulpit. That is flatly incorrect. While courts are "solicitous of protecting religious services from interference," it is not "proper to simply label a sermon as 'ecclesiastical' and bar suit." *Ogle v. Hocker*, 279 F. App'x 391, 396 (6th Cir. 2008). That is because the "cloak of religion" does not entitle religious entities to "commit frauds upon the public." *Gen. Council on Fin. & Admin. of the United Methodist Church v. Superior Ct.*, 439 U.S. 1355, 1373 (1978) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 306 (1940)); *see also In re Godwin*, 293 S.W.3d 742, 749 (Tex. App. 2009) ("Case law

12

instructs us that there are indeed limits to what can be said by church officials from the pulpit."). The determinative question when evaluating whether church autonomy bars suit is not whether the fraudulent statements were made from the pulpit, but rather "whether the suit will require [the court] to delve into protected matters of church doctrine, policy, and practice." *Ogle*, 279 F. App'x at 396. None of these "protected matters" are at issue here.

Finally, USCCB asserts (Br. at 42) that engaging in any discovery would violate its rights under the church-autonomy doctrine. But "[t]he church autonomy doctrine provides religious associations neither an immunity from discovery nor an immunity from trial on secular matters." *Belya*, 45 F.4th at 633. "[A]t most," the church-autonomy doctrine "protects against discovery that would intrude into the protected area of the church—it does not provide religious organizations with blanket protection from discovery." *Id.* at 632. Provided that discovery does not "subject [USCCB's religious] doctrine to judicial second-guessing," it is not barred by church autonomy. *Garrick*, 95 F.4th at 1113.

The cases cited by USCCB confirm that the church-autonomy doctrine bars only discovery that veers into "judicial second-guessing" of religious matters. For example, in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), the Supreme Court determined that the National Labor Relations

13

Board could not exercise jurisdiction over disputes between teachers and church-operated schools, in part because the resolution of such disputes "will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission." *Id.* at 502. In such cases, "the very process of inquiry" into religious doctrinal matters "may impinge on rights guaranteed by the Religion Clauses." *Id.* This Court has accordingly affirmed that the First Amendment bars "intrusive inquiries into religious beliefs." *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1342 (D.C. Cir. 2002). Such inquiries "threaten[ ] to embroil the government in line-drawing and second-guessing regarding matters about which it has neither competence nor legitimacy." *Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 835–36 (D.C. Cir. 2020) (citation omitted).

Discovery in this case would not subject USCCB's religious doctrine to any judicial second-guessing. None of the discovery requested by O'Connell—which, according to USCCB, seeks information on who gave to Peter's Pence and how that money was used, *see* USCCB Br. 43—delves into religious beliefs or invites "second-guessing" of doctrinal matters. In any event, even if any discovery request went too far, that would be a reason to limit discovery, not to dismiss the case. "[T]he ability of the district court to control discovery[ ] can prevent a wide-ranging intrusion into sensitive

14

religious matters." *Bollard v. Calif. Province of the Soc'y of Jesus*, 196 F.3d 940, 950 (9th Cir. 1999). District courts can limit discovery so that it does not impermissibly intrude into religious affairs. *See, e.g.*, *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 967–68 (9th Cir. 2004).

## CONCLUSION

For these reasons, the Court should affirm that the church-autonomy doctrine does not bar O'Connell's claims.

Respectfully submitted,

 /s/ *Jenny Samuels*

JENNY SAMUELS
ALEX J. LUCHENITSER
Americans United for Separation of
   Church and State
1310 L Street NW, Suite 200
Washington, D.C. 20005
(202) 466-7308


*Counsel for* Amicus Curiae

November 13, 2024

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief:

(i) complies with the type-volume limitation of Federal Rule of Appellate Procedure Rule 29(a)(5) because it contains 3,283 words including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1); and

(ii) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 365, set in Century Schoolbook font in a size measuring 14 points or larger.

/s/ *Jenny Samuels*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2024 this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ *Jenny Samuels*