# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 10, 2025            Decided April 25, 2025

No. 23-7173

DAVID O'CONNELL,
APPELLEE

v.

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01365)

———

*Daniel H. Blomberg* argued the cause for appellant. With him on the briefs were *Kevin T. Baine*, *Emmet T. Flood*, *Laura Wolk Slavis*, *Colten L. Stanberry*, *Kelly R. Oeltjenbruns*, and *Kelsey Baer Flores*. *Mark S. Storslee* entered an appearance.

*Daniel F. Mummolo*, *Christopher G. Michel*, and *Rachel G. Frank* were on the brief for *amicus curiae* Federal Courts Professor Derek T. Muller in support of appellant.

*Aaron M. Streett* and *Matthew M. Hilderbrand* were on the brief for *amicus curiae* Dr. Lael Weinberger in support of appellant.

2

*Michael J. Showalter*, *Victoria N. Lynch-Draper*, and *Joel S. Nolette* were on the brief for *amici curiae* Seven Religious Organizations in support of appellant.

*Thomas G. Hungar*, *Russell B. Balikian*, and *Cameron J. E. Pritchett* were on the brief for *amici curiae* Law & Religion Scholars in support of appellant.

*Gabriel Z. Doble* argued the cause for appellee. With him on the brief were *Martin Woodward* and *Simon C. Franzini*.

*Jenny Samuels* and *Alex J. Luchenitser* were on the brief for *amicus curiae* Americans United for Separation of Church and State in support of appellee.

Before: SRINIVASAN, *Chief Judge*, CHILDS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case involves an action by Appellee, David O'Connell, against Appellant, United States Conference of Catholic Bishops ("USCCB"), for fraudulent solicitation of donations. In his complaint, O'Connell claims that, at the urging of USCCB, he and others donated money to Peter's Pence Collection for the purported purpose of helping those in immediate need of assistance in disaster-stricken parts of the world. O'Connell contends, however, that USCCB fraudulently concealed that most of the donations to Peter's Pence were not for victims of war, oppression, natural disaster, or disease, as he and others allegedly had been told. Rather, according to O'Connell, most of the donated money was "diverted into various suspicious

3

investment funds, which in turn have funneled the money into such diverse ventures as luxury condominium developments and Hollywood movies while paying fund managers hefty, multi-million dollar commissions." Complaint ¶ 4.

Before discovery and trial, USCCB moved to dismiss the case in District Court. USCCB contended that the court had no subject matter jurisdiction because O'Connell's action was barred by the church autonomy doctrine. Without in any way addressing the merits of the parties' claims, the District Court denied the motion to dismiss. The court found that, at this stage of the litigation, O'Connell's claims raised a purely secular dispute that could be resolved according to neutral principles of law. However, the District Court made it clear to the parties that it could not and would not address purely religious questions, should they arise during litigation. Thereafter, rather than proceeding with trial, USCCB filed an appeal with this court seeking interlocutory review. For the reasons explained below, we dismiss this appeal for want of jurisdiction and remand the case to the District Court for further proceedings.

Section 1291 of the Judicial Code confers on federal courts of appeals jurisdiction to review "final decisions of the district courts." 28 U.S.C. § 1291. "A 'final decisio[n]' is typically one 'by which a district court disassociates itself from a case.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (alteration in original) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). The collateral order doctrine, however, provides a limited exception to this final decision rule for a "small class" of collateral rulings that, although they do not end the litigation, are appropriately deemed "final." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). This "small category includes only decisions that are [1] conclusive, [2] that resolve important questions separate from the merits, and [3] that are effectively

4

unreviewable on appeal from the final judgment in the underlying action." *Swint*, 514 U.S. at 42 (citation omitted). The Supreme Court has made it clear that these requirements are stringent. *Will v. Hallock*, 546 U.S. 345, 349 (2006). The Court has also stressed the importance of the third *Cohen* requirement, *i.e.*, a decision that can be effectively reviewed on appeal is not covered by the collateral order doctrine. *See, e.g.*, *Mohawk Indus.*, 558 U.S. at 107-08. The Court has openly acknowledged that many trial court rulings "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994) (citations omitted). Nevertheless, the Court has been resolute in saying that "the mere identification of some interest that would be 'irretrievably lost' has never sufficed to meet the third *Cohen* requirement." *Id.* (quoting *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 431 (1985)).

USCCB attempts to bring a collateral order appeal to challenge the District Court's order denying its motion to dismiss based on the church autonomy doctrine. The church autonomy doctrine protects against government interference in matters of faith, doctrine, and internal management. It may be raised as a defense in a civil suit, but it does not immunize religious organizations from civil actions. Pleading-stage denials of a church autonomy defense, such as the contested motion to dismiss in this case, do not satisfy the strict requirements of the collateral order doctrine. They are neither conclusive nor separate from the merits and, most importantly, they can be reviewed upon post-judgment appeal.

Neither the Supreme Court nor any circuit has ever expanded the collateral order doctrine to categorically cover alleged denials of a church autonomy defense. This is hardly surprising. The limited scope of the collateral order doctrine

5

reflects a healthy respect for the virtues of the final decision rule, which serves as an important safeguard against piecemeal and premature review. USCCB's claimed rights can be adequately addressed on appeal after the District Court issues a final decision and, therefore, are not eligible for collateral order appeal.

## I. BACKGROUND

### A. *Factual and Procedural History*

Appellant USCCB, headquartered in Washington, D.C., is an organization of Roman Catholic Bishops serving the United States and the U.S. Virgin Islands. As part of its mission to support the work of the Catholic Church, USCCB oversees the promotion of the Peter's Pence Collection, an annual offering given by the Catholic faithful to the Pope. Complaint ¶ 18-19. Specifically, USCCB creates materials, such as letters, web ads, and posters, promoting the Collection which can then be used in parishes and dioceses. *Id.* ¶ 20.

Appellee David O'Connell donated to Peter's Pence at a Rhode Island church in the summer of 2018. *Id.* ¶ 34. On January 22, 2020, O'Connell filed a class action complaint in federal district court against USCCB, asserting claims of fraud, unjust enrichment, and breach of fiduciary duty. He seeks to represent a class of all persons in the United States who have donated money to the Peter's Pence Collection. O'Connell initially sued USCCB in the U.S. District Court for the District of Rhode Island. On USCCB's motion, the case was transferred to the U.S. District Court for the District of Columbia.

According to O'Connell, he was led to believe by USCCB that his donations to Peter's Pence would be used only "for emergency assistance" to "the poor" and "victims of war,

6

oppression, natural disaster, or disease throughout the world."
*Id.* ¶¶ 35-36, 48. However, in 2019, news organizations
published stories revealing that Peter's Pence funds were used
to support the Vatican's administrative budget, placed in
various investments including Hollywood films and real estate,
or used to pay hefty commissions for fund managers, with only
ten percent going to the charitable causes featured in USCCB's
promotional materials. *Id.* ¶¶ 27-30. O'Connell alleges that
"USCCB has always known the difference between a donation
for emergency assistance and a donation to defray Vatican
administrative expenses. But USCCB hid this distinction in its
promotion, oversight, and administration of the Peters [sic]
Pence collection in the United States." *Id.* ¶ 36. He also
maintains that if USCCB had disclosed the actual purposes for
which the funds would be used, he would not have donated to
the Collection. *Id.* ¶ 35. O'Connell does not allege that the
church cannot use collected funds for particular purposes, such
as for investments or overhead expenses – only that USCCB
cannot misrepresent how the funds will be used. *See* Br. for
Plaintiff-Appellee 5-6.

USCCB answered the complaint in July 2020. Shortly
thereafter, O'Connell served document production requests.
Those requests sought documents showing the Peter's Pence
promotional materials that USCCB created; lists of donors and
amounts received; USCCB's knowledge of how the funds
would be used; and how the funds were used. The District
Court has had no occasion to rule on these requests. There has
been no discovery.

After answering the complaint, USCCB moved to dismiss
for lack of subject matter jurisdiction and for judgment on the
pleadings. USCCB argued that the complaint was barred by the
church autonomy doctrine, which is grounded in the First
Amendment and prevents civil courts from hearing matters of

7

church doctrine and internal governance. USCCB also argued that O'Connell had failed to adequately plead his claims.

The District Court denied USCCB's motions in an oral ruling and minute order on November 17, 2023. Tr. of Hearing (Nov. 17, 2023). The court ruled that it had subject matter jurisdiction because, at least at this stage of the litigation, O'Connell's claims raised a purely secular dispute involving affirmative misrepresentations and fraudulent omissions, which the District Court could resolve by applying "neutral principles of law." *Id.* at 5-7. In other words, the District Court saw "no need" to "inquire into church operations, religious doctrine, religious hierarchy, or religious decisionmaking to evaluate the merits of [plaintiff's] claim. Instead, this is a case about what defendant represented, what it knew, and the relationship between defendant and plaintiff as a putative class representative." *Id.* at 6. As such, the District Court found that "at this stage, it's not apparent . . . that the resolution of the claims will involve impermissible religious entanglement." *Id.* at 7. Accordingly, it declined to dismiss the case on the basis of the church autonomy doctrine.

The District Court also took care to recognize the limitations imposed by the church autonomy doctrine. It made clear that it would not – and could not – answer purely religious questions, should they arise during litigation. *Id.* at 6. For example, the court would not and "could not rule that the church could only exercise its financial discretion in one way or another." *Id.* The District Court made it clear, however, that it does not believe religious determinations are required for it "to determine, under straightforward common-law principles, whether or not fraud took place." *Id*.

In addition, the District Court denied USCCB's motion for judgment on the pleadings because material disputes of fact

8

remained as to O'Connell's claims. *Id.* at 7. It also concluded that O'Connell had adequately pleaded his claims.

USCCB timely appealed the District Court's decision and advances three arguments on appeal. It argues that this court has jurisdiction over the interlocutory appeal; that O'Connell's claims are barred by the church autonomy doctrine; and that O'Connell failed to adequately plead his claims. O'Connell, in turn, disagrees with each of these arguments.

**B.  *Legal Background***

This case primarily concerns two doctrines: the collateral order doctrine and the church autonomy doctrine.

**1.  Collateral Order Doctrine**

As noted above, the appellate jurisdiction of the federal courts of appeals is generally limited to "final decisions of the district courts of the United States." 28 U.S.C. § 1291. A final decision is typically one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Known as the final decision rule, this limitation on the jurisdiction of federal appellate courts has long served an important purpose: It protects against piecemeal and premature review.

As the Supreme Court has explained,

> Congress from the very beginning has, by forbidding piecemeal disposition on appeal . . . , set itself against enfeebling judicial administration. Thereby is avoided the obstruction . . . that would come from permitting the harassment and cost of a succession of separate appeals

9

> . . . . To be effective, judicial administration must not
> be leaden-footed.

*Cobbledick v. United States*, 309 U.S. 323, 325 (1940). Beyond concerns of judicial economy, the final decision rule also "emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). It would be unwise for an appellate court to prematurely jump into the fray, without the benefit of the trial court's rulings and with only the guidance of a partially developed record. Thus, as a fundamental principle of the federal courts system, the final decision rule does not accommodate exceptions for issues merely because they are important and deserving of attention. The exceptions to the rule that do exist are few and far between.

This case implicates one exception – the collateral order doctrine. "[A]n expansive interpretation of [section 1291's] finality requirement" first announced in *Cohen*, the collateral order doctrine allows appeals "from orders characterized as final . . . even though it may be clear that they do not terminate the action or any part of it." 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3911, Westlaw (database updated June 2024); *see also Cohen*, 337 U.S. at 545-46. This exception to the final decision rule is limited to a ''narrow and selective'' class of orders that (1) are "effectively unreviewable on appeal from a final judgment"; (2) "conclusively determine the disputed question"; and (3) "resolve an important issue completely separate from the merits of the action." *Will*, 546 U.S. at 349-50 (internal quotation marks omitted); *see also United States v. Trump*, 88 F.4th 990, 1000 (D.C. Cir. 2023). These requirements are meant to be difficult to satisfy, as "the

10

narrow exception should stay that way and never be allowed to
swallow the general rule that a party is entitled to a single
appeal" after "final judgment has been entered." *Digit. Equip.
Corp.*, 511 U.S. at 868 (internal quotation marks and citation
omitted).

Over the years, the Supreme Court has provided the courts
of appeals with general guideposts to follow when assessing
these three stringent conditions. First, an order is "effectively
unreviewable" where the "legal and practical value" of the
asserted right "would be destroyed if it were not vindicated
before trial." *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 498-
99 (1989) (internal quotation marks and citations omitted). As
noted above, the fact that a ruling "may burden litigants in ways
that are only imperfectly reparable by appellate reversal of a
final district court judgment" is not sufficient. *Mohawk Indus.*,
558 U.S. at 107 (citation omitted). Nor is it sufficient for
litigants to rest on the importance of the asserted right when
seeking interlocutory review. *See id.* at 108. Rather, "[t]he
crucial question" is "whether deferring review until final
judgment so imperils the interest [at stake] as to justify the cost
of allowing immediate appeal of the entire class of relevant
orders." *Id*. Second, a conclusive determination is required. An
order is conclusive when it is the "complete, formal, and, in the
trial court, final rejection of" the issue. *Abney v. United States*,
431 U.S. 651, 659 (1977). The decision must "not constitute
merely a 'step toward final disposition of the merits of the
case.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974)
(quoting *Cohen*, 337 U.S. at 546). Finally, the order must
involve a "claim[] of right separable from, and collateral to,
rights asserted in the action." *Cohen*, 337 U.S. at 546. Orders
are "entwined with the merits" when "courts of appeals will
often have to review the nature and content of" the merits to
determine the issue on appeal. *Richardson-Merrell*, 472 U.S. at
439. Although complete separation is not required, the asserted

11

interest on appeal must be "conceptually distinct." *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985).

When assessing these three requirements of the collateral order rule, "we do not engage in an 'individualized jurisdictional inquiry.'" *Mohawk Indus.*, 558 U.S. at 107 (citation omitted). "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustic[e] averted, does not provide a basis for jurisdiction under § 1291." *Id.* (alteration in original) (internal quotation marks omitted). The question of whether an order is appealable is thus "determined for the entire category to which a claim belongs" rather than for individual cases. *Digit. Equip. Corp.*, 511 U.S. at 868. For our purposes, the relevant category of orders involves denials of a pleading-stage motion to dismiss based on the church autonomy defense.

Front of mind when applying *Cohen*'s collateral order doctrine is the Supreme Court's command that "the class of collaterally appealable orders . . . remain 'narrow and selective in its membership.'" *Mohawk Indus.*, 558 U.S. at 113 (quoting *Will*, 546 U.S. at 350). The Court's admonition "reflects a healthy respect for the virtues of the final-judgment rule": "Permitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Id.* at 106 (internal quotation marks and citations omitted); *see also Richardson-Merrell*, 472 U.S. at 436 ("[D]istrict judge[s] can better exercise [their] responsibility [to police the prejudgment tactics of litigants] if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings.").

12

As mentioned earlier, an interlocutory appeal "risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). Too many interlocutory appeals can thus cause serious harm and, as such, they "are the exception, not the rule." *Id.*

Accordingly, the Supreme Court has rarely extended the collateral order doctrine to cover new categories. Indeed, there are presently less than ten categories of orders falling under the collateral order doctrine – none of which are applicable to this case. *See Belya v. Kapral*, 45 F.4th 621, 629 n.5 (2d Cir. 2022) (collecting cases); *see, e.g.*, *Abney*, 431 U.S. at 659 (orders denying a criminal defendant's claim of double jeopardy); *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (orders denying a public official's claim of absolute immunity); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993) (orders denying a state's claim of Eleventh Amendment immunity).

Moreover, Congress has authorized the Supreme Court to promulgate rules "defin[ing] when a ruling of a district court is final for the purposes of appeal under [28 U.S.C. § 1291]." 28 U.S.C. § 2072(c). "Congress' designation of the rulemaking process as the way to define or refine when a district court ruling is 'final' and when an interlocutory order is appealable warrants the Judiciary's full respect." *Swint*, 514 U.S. at 48. Thus, as the Supreme Court has made clear, rulemaking, rather than expansion by court decision, is "the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Mohawk Indus.*, 558 U.S. at 113. As relevant here, the Supreme Court has not promulgated any rules

13

that would grant this court appellate jurisdiction over a district court's pleading-stage denial of the church autonomy defense.

### 2. Church Autonomy Doctrine

The church autonomy doctrine derives from the Religion Clauses of the First Amendment. Church autonomy protects against government interference in "matters of faith and doctrine and in closely linked matters of internal government." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 747 (2020). Accordingly, secular courts may not interpret religious law or wade into religious disputes. *See Serbian E. Orthodox Diocese for the U.S. & Can. v. Milivojevich*, 426 U.S. 696, 708-09 (1976); *see also Korte v. Sebelius*, 735 F.3d 654, 677 (7th Cir. 2013) (noting that secular courts must "respect[] [religious institutions'] autonomy to shape their own missions, conduct their own ministries, and generally govern themselves in accordance with their own doctrines as religious institutions"). The First Amendment also protects against employment discrimination claims brought by ministers against their religious employers. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012). This protection is known as the ministerial exception, a narrower offshoot of the broader church autonomy doctrine. *See Our Lady of Guadalupe*, 591 U.S. at 747.

These protections afforded by the First Amendment do not grant religious institutions a general immunity from secular laws. *See id.* at 746. Courts may adjudicate secular disputes involving religious institutions where resolution of the case does not require inquiry into doctrinal disputes. *See Jones v. Wolf*, 443 U.S. 595, 602-04 (1979) (holding that courts may apply neutral principles of law to resolve church property disputes); *see also Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 127 F.4th 784,

14

792 (9th Cir. 2025) (en banc) ("Because nothing in our analysis of [plaintiff's] fraud claims delves into matters of Church doctrine or policy, our decision in this case does not run afoul of the church autonomy doctrine."). So long as a court relies "exclusively on objective, well-established [legal] concepts," or neutral principles of law, it steers clear of any violations of the church autonomy doctrine. *Jones*, 443 U.S. at 603; *see, e.g.*, *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 349 (5th Cir. 2020) (allowing claims of defamation, intentional infliction of emotional distress, and intentional interference that "ask[] the court to apply neutral principles of tort law to a case that, on the face of the complaint, involves a civil rather than religious dispute").

As this court has twice made clear, the neutral principles approach "permits a court to interpret provisions of religious documents involving . . . nondoctrinal matters as long as the analysis can be done in purely secular terms." *Minker v. Balt. Ann. Conf. of United Methodist Church*, 894 F.2d 1354, 1358 (D.C. Cir. 1990); *see EEOC v. Cath. Univ. of Am.*, 83 F.3d 455, 466 (D.C. Cir. 1996) (same). "Thus, simply having a religious association on one side of the 'v' does not automatically mean a district court must dismiss the case or limit discovery." *Belya*, 45 F.4th at 630.

## II. ANALYSIS

The threshold issue in this case is whether this court has jurisdiction, pursuant to the collateral order doctrine, to address USCCB's challenge to the District Court's pleading-stage denial of its church autonomy defense. We do not. Accordingly, we dismiss the appeal and remand the case to the District Court for further proceedings. We do not reach the merits of USCCB's church autonomy claims, nor do we

15

consider USCCB's argument that O'Connell's complaint fails to state a claim.

### A. *Standard of Review*

We determine *de novo* whether this court may properly exercise jurisdiction over this interlocutory appeal.

### B. *This Court Has No Jurisdiction to Entertain Appellant's Interlocutory Appeal*

As explained at the outset of this opinion, collateral order appeals are permissible only in a very small number of cases that involve decisions that are conclusive, resolve important questions separate from the merits, and are effectively unreviewable on appeal from the final judgment in the underlying action. *Swint*, 514 U.S. at 42. USCCB's interlocutory appeal to challenge the District Court's order denying its motion to dismiss based on the church autonomy doctrine does not satisfy these rigid requirements. The most obvious impediment to USCCB's action is that it can get effective review under 28 U.S.C. § 1291 if the District Court issues a final decision against it. USCCB seeks to protect the right of the church to manage its own non-secular affairs free from governmental interference. This is not a right that will be destroyed if not vindicated before trial.

Our determination that the right to church autonomy is effectively reviewable upon appeal is well-supported by existing caselaw. Every circuit to have considered this issue has ruled that district court determinations regarding disputes over the church autonomy defense are properly reviewed upon post-judgment appeal, not pursuant to the collateral order doctrine. *See Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1117 (7th Cir. 2024), *reh'g en banc denied*, No. 21-2683, 2024 WL 1892433

16

(7th Cir. Apr. 30, 2024); *Belya*, 45 F.4th at 634, *reh'g en banc denied*, 59 F.4th 570 (2d Cir. 2023), *cert. denied sub nom. Synod of Bishops of the Russian Orthodox Church Outside of Russ. v. Belya*, 143 S. Ct. 2609 (2023); *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1036 (10th Cir. 2022), *reh'g en banc denied*, 53 F.4th 620 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2608 (2023); *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1091-92 (7th Cir. 2014); *Klein v. Oved*, No. 23-14105, 2024 WL 1092324, at *1 (11th Cir. Mar. 13, 2024). We find the unanimity of our sister circuits on this question to be notable and their reasoning persuasive.

It is also notable that the Supreme Court has repeatedly "insisted that" a collateral order appeal may not be pursued unless "the right asserted [will be] essentially destroyed if its vindication must be postponed until trial is completed." *Lauro Lines s.r.l.*, 490 U.S. at 499. The possibility that a district court ruling before a final decision "may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement." *Richardson-Merrell*, 472 U.S. at 436. In this case, USCCB has suggested that the value of the church's rights will be seriously diminished if this court does not review and overturn the District Court's pleading-stage denial of its motion to dismiss based on a church autonomy defense. This claim has been rejected by all of the courts that have addressed the matter in other cases. *See, e.g.*, *Belya*, 45 F.4th at 633; *Garrick*, 95 F.4th at 1117; *Tucker*, 36 F.4th at 1036; *Herx*, 772 F.3d at 1091-92.

The point is that it does not matter that litigation may impose some burdens on a party before a final decision issues. This is insufficient to justify immediate review. In *Mohawk Industries*, for example, the Supreme Court recognized that, during trial, parties may be ordered to disclose privileged information that intrudes on the confidentiality of attorney-

17

client communications. 558 U.S. at 109. Despite the burden of having to produce such information, the Court nevertheless concluded that post-judgment appeals "suffice" to protect the rights of the litigants. *Id.* A showing that a party may be burdened by having to comply with the final decision rule is not proof that the party's contested rights will be destroyed. *See Digit. Equip. Corp.*, 511 U.S. at 871-72.

Furthermore, if we were to allow collateral appeals to function as an escape valve from adjudicative burdens – or if any potential burden on the right at stake were enough to justify immediate review – then the collateral order exception would expand to swallow the rule. *See id.* at 868. Church autonomy is not the only area in which adjudication may by itself pose a significant cost. The same concern exists for orders on personal jurisdiction, statutes of limitation, claim preclusion, and the right to a speedy trial, to list a few examples. We would risk a dramatic expansion of the collateral order doctrine by hinging it on concerns of encumbrance – and expansion of the collateral order doctrine is precisely the outcome the Supreme Court has consistently rejected. The Court has been quite clear in saying that the final decision rule may not be bypassed in favor of collateral order review merely because it "may impose significant hardship on litigants." *Richardson-Merrell*, 472 U.S. at 440.

In addition, district courts have ample tools at their disposal to limit discovery, tailor jury instructions, and dismiss claims as necessary to safeguard against infringements of the church autonomy doctrine. *See, e.g.*, *Garrick*, 95 F.4th at 1117. And "[w]hen a case can be resolved by applying well-established law to secular components of a dispute, such resolution by a secular court presents no infringement upon a religious association's independence." *Belya,* 45 F.4th at 630. If infringements nevertheless occur, then litigants, once armed

18

with a final decision, can seek relief through the standard review process. *See Gordon Coll. v. DeWeese-Boyd*, 142 S. Ct. 952, 955 (2022) (Alito, J., concurring) (agreeing that nothing "would preclude [defendant] from . . . seeking review . . . when the decision is actually final" (citation omitted)).

Moreover, the Supreme Court has reminded us "that litigants confronted with a particularly injurious or novel [adverse] ruling have several potential avenues of review apart from collateral order appeal." *Mohawk Indus.*, 558 U.S. at 110. Although post-judgment appeals are the norm, a litigant who is faced with an adverse church autonomy ruling can ask the district court to certify, and the court of appeals to accept, an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292 review requires "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The church-defendant in *Demkovich v. St. Andrew the Apostle Parish, Calumet City* pursued this approach and successfully availed itself of immediate review. 3 F.4th 968, 974 (7th Cir. 2021).

Litigants can also petition the courts of appeals for a writ of mandamus under 28 U.S.C. § 1651 when a disputed order "amount[s] to a judicial usurpation of power or a clear abuse of discretion" or otherwise works a manifest injustice. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390 (2004) (internal quotation marks and citations omitted); *Mohawk Indus.*, 558 U.S. at 111.

The Supreme Court has said that these case-specific mechanisms provide "'safety valve[s]' for promptly correcting serious errors" and "will continue to provide adequate protection to litigants" in the absence of collateral order

19

appeals. *Mohawk Indus.*, 558 U.S. at 111, 114 (alteration in original) (quoting *Digit. Equip. Corp.*, 511 U.S. at 883). And they do so without incidentally creating an entire category of immediately appealable orders. USCCB has not sought section 1292 review or a writ of mandamus in this case, so we need not address the viability of any such claims here.

Our decision to abide by the final decision rule, even when an admittedly important right is at stake, is utterly unexceptional. The Supreme Court and this court have "routinely require[d] litigants to wait until after final judgment to vindicate valuable rights." *Mohawk Indus.*, 558 U.S. at 108-09; *see, e.g.*, *Flanagan v. United States*, 465 U.S. 259, 262-63, 270 (1984) (Sixth Amendment right to effective assistance of counsel); *United States v. MacDonald*, 435 U.S. 850, 856-57 (1978) (Sixth Amendment right to speedy trial); *Mohawk Indus.*, 558 U.S. at 114 (attorney-client privilege); *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 348 (D.C. Cir. 2007) (political question doctrine). Like these other interests, the interest of a church in its religious autonomy is undoubtedly important, but deferring review until final judgment does not so imperil the interest as to justify the cost of allowing immediate appeal of an entire class of relevant orders.

### C. *Church Autonomy Functions as a Defense to Liability, Not an Immunity from Suit*

USCCB argues that the church autonomy doctrine "protects not only from the consequences of litigation's results but also from the burden of defending from suit." Opening Br. of Defendant-Appellant 20 (internal quotation marks and citation omitted). It argues that post-trial review of an order denying such protection is insufficient to vindicate the constitutional rights at stake. In other words, in an effort to avoid the applicable strictures of the final decision rule,

20

USCCB attempts to characterize the church autonomy doctrine as a right not to be tried, *i.e.*, as an immunity from suit rather than a defense to liability. The church autonomy doctrine, however, does not confer immunity from trial such that immediate review is warranted.

No federal court has ever held that the church autonomy doctrine establishes a constitutional right to immunity from suit in cases concerning secular claims. Quite the contrary. Several circuits have explicitly declined to characterize church autonomy as an immunity from trial. *See Garrick*, 95 F.4th at 1116 (rejecting argument that the church autonomy doctrine confers "immunity from trial"); *Herx*, 772 F.3d at 1090 (rejecting argument that the First Amendment "provides an immunity *from trial*, as opposed to an ordinary defense to liability"); *Tucker*, 36 F.4th at 1025 (rejecting "novel argument that the 'ministerial exception' . . . immunizes religious employers altogether from the burdens of even having to litigate such claims"); *Klein*, 2024 WL 1092324, at *1 (church-autonomy doctrine "does not immunize religious groups or figures from suit"). As the Second Circuit has explained, "[w]hen a case can be resolved by applying well-established law to secular components of a dispute, such resolution by a secular court presents no infringement upon a religious association's independence." *Belya*, 45 F.4th at 630.

Put simply, if a plaintiff can plausibly assert a secular claim capable of resolution according to neutral principles of law, the First Amendment does not bar judicial examination of that claim. The church autonomy doctrine protects against judicial interference in ecclesiastical matters; it does not provide religious organizations with a blanket immunity from suit, discovery, or trial.

21

Treating church autonomy as a defense rather than an immunity is also consistent with Supreme Court precedent. In *Hosanna-Tabor*, the Supreme Court made clear that the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." 565 U.S. at 195 n.4. Even though *Hosanna-Tabor* concerned the ministerial exception, the Supreme Court has since recognized the exception as a mere "component" of the church autonomy doctrine. *See Our Lady of Guadalupe*, 591 U.S. at 746. Thus, when the two decisions are considered together, it seems clear that the Court confirmed the church autonomy doctrine is not jurisdictional; it is an affirmative defense. And, like any other defense, a defense based on church autonomy can be adequately addressed after trial.

### D. *The Cases Cited by USCCB Do Not Change the Legal Landscape*

Despite the mountain of precedent against its position, USCCB argues that there is caselaw that supports its view in favor of collateral order appeals of church autonomy orders. We disagree. The cases cited by USCCB clearly do not change the result in this case.

First, USCCB cites *Whole Woman's Health v. Smith*, where the Fifth Circuit allowed an interlocutory appeal of an order enforcing a subpoena against a third-party religious organization. 896 F.3d 362 (5th Cir. 2018). A key distinction, however, exists between *Whole Woman's Health* and this case: There, the Fifth Circuit rested its decision on "the predicament of third parties" who "cannot benefit directly from [post-trial] relief." *Id.* at 367-68. As the Seventh Circuit explained in *Garrick*, when distinguishing *Whole Woman's Health*, "[a]n order conclusively determining that a *nonparty* religious organization must be subjected to extensive discovery . . . is

22

not comparable to the class of order at issue here." 95 F.4th at 1116 n.9 (emphasis added). At issue here – and in *Garrick* – is a class of orders concerning a party to the litigation capable of benefiting directly from a post-judgment appeal. Accordingly, *Whole Woman's Health* is inapposite to the issue at hand.

Second, USCCB cites *McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013). In *McCarthy*, a United States representative of the Holy See, the central governing body of the Roman Catholic Church, issued a declaration that Fuller was not a nun or religious sister. 714 F.3d at 973-74. Nevertheless, the district court planned to instruct the jury to determine whether Fuller was a nun in good standing with the Catholic Church. *Id.* at 976. In light of these facts, the Seventh Circuit held in *McCarthy* that the order "requir[ing] a jury to answer a religious question" was immediately appealable. *Id.*

However, as the Seventh Circuit later explained in *Garrick*, "[t]he circumstances [in *McCarthy*] were remarkably extreme—the judge had determined that the jury's judgment could preempt that of the Holy See on a decidedly doctrinal question, in clear violation of church autonomy." 95 F.4th at 1113-14. The Seventh Circuit also made it clear that "*McCarthy* did not create a new category subjecting denials of a church autonomy defense to immediate appeal." *Id.* at 1114.

Third, USCCB argues that "this Court has 'long allowed' interlocutory appeal of 'alleged injur[ies] [sic] to First Amendment rights during the pendency of a case.'" Opening Br. of Defendant-Appellant 20 (quoting *In re Stone*, 940 F.3d 1332, 1340-41 (D.C. Cir. 2019)). According to USCCB, infringing First Amendment rights for even minimal periods of time results in irreparable harm. As such, an appeal filed after a time-consuming trial is not an effective remedy. Our precedent, however, has never gone so far as to say that a mere

alleged violation of the First Amendment is sufficient for collateral order appeal.

In each of the cases cited by USCCB, this court indicated that an interlocutory appeal would be permissible only because there was a dispute over an order restricting speech during the pendency of the case. *See Trump*, 88 F.4th at 1001; *In re Stone*, 940 F.3d at 1340; *In re Rafferty*, 864 F.2d 151, 154 (D.C. Cir. 1988); *see also Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 490-91 (5th Cir. 2013). In these cases involving orders restricting speech, waiting for post-judgment review would have effectively defeated the right to any review at all. By the time judgment was entered, the party complaining would have already lost its right to speak while the case was pending. We have no such scenario in this case.

USCCB also cites a similar case, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020), which concerned a district court's denial of a preliminary injunction. Even though the order did not involve a restriction on speech, it did involve a restriction on the ability of the faithful to attend religious services during the pendency of litigation – a right that could not be restored after trial. No such restriction on speech or religious practice is present in this case to justify interlocutory review. Furthermore, the courts of appeals have jurisdiction under 28 U.S.C. § 1292(a)(1) to address interlocutory appeals challenging the issuance of a preliminary injunction by a district court. The District Court in this case has not issued an injunction against USCCB.

Fourth, USCCB cites some cases in which we have noted that there is an "immediate harm arising from the process of inquiry into religious disputes." Br. of Defendant-Appellant 21 (citing *Cath. Univ. of Am.*, 83 F.3d at 466-67; *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1341-43 (D.C. Cir. 2002);

24

*Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 829-30 (D.C. Cir. 2020)). Importantly, none of these cases involved an application of the collateral order doctrine. Rather, all three cases involved an appeal after a final decision had been issued. None of the cited cases even suggests that "harm arising from the process of inquiry into religious disputes" warrants immediate review. Br. of Defendant-Appellant 21.

Finally, USCCB argues that its "specific First Amendment rights imperiled here are structural protections akin to the separation of powers, which have long received interlocutory review." Opening Br. of Defendant-Appellant 22. Even if we were to accept USCCB's claim that church autonomy is a structural protection, "[m]ost separation-of-power claims are clearly not in [the] category" of collaterally appealable orders. *United States v. Cisneros*, 169 F.3d 763, 769 (D.C. Cir. 1999).

In *Cisneros*, a former Secretary of Housing and Urban Development argued that "the very conduct of the trial" against him would "violate the separation of powers by causing the courts to invade the exclusive constitutional province of coordinate branches." *Id.* Like Cisneros, USCCB makes a separation-of-powers claim to avoid trial. Such reliance on the separation of powers, however, was not enough in *Cisneros* and it is not enough here. This court held in *Cisneros* that "[n]othing Cisneros argue[d] amount[ed] to a right not to be tried." *Id.* "Cisneros, like any criminal defendant, may raise separation of powers as a defense. But it scarcely follows that whenever a defendant relies on the separation-of-powers doctrine, the defendant's right must be treated as if it rested on an explicit guarantee that trial will not occur." *Id.* (cleaned up) (internal quotation marks and citation omitted). In other words, invoking separation of powers is not enough to transform a defense into an immunity. Rather, any "constitutional affront" to the separation of powers "flowing from an adjudication"

25

would be "fully reviewable on appeal should the defendant be convicted." *Id.* Thus, even assuming a violation of the church autonomy doctrine is akin to a violation of the separation of powers, that violation can be reviewed upon post-judgment appeal.

To conclude, the federal courts of appeals – and the Supreme Court – routinely reject parties' efforts to invoke the collateral order doctrine for a wide variety of important rights. And each circuit that has considered extending the collateral order doctrine to cover the right to church autonomy has declined. We join our sister circuits in doing the same: Claims regarding the right to church autonomy are reviewable upon final judgment and, accordingly, not subject to collateral order appeal. And, as explained above, should extreme circumstances arise where immediate relief is required, litigants have alternative appellate options at their disposal.

### E.  *Final Considerations*

We have already made the point that a pleading-stage denial of the church autonomy defense is clearly reviewable upon final judgment. This holding is sufficient to decide this case. However, lest the point be missed, it is important to note that a pleading-stage denial also lacks the conclusiveness required for collateral order appeal. This case remains at the earliest stages of litigation with many more steps before the finish line. USCCB can continue to assert the church autonomy defense during discovery, in future dispositive motions, before trial, and during trial. The contested District Court order therefore is not "conclusive" because it is not a "final rejection" of USCCB's asserted church autonomy defense. Indeed, for an order to conclusively determine the issue, there must be "no further steps that can be taken in the District Court to avoid" infringing on USCCB's religious autonomy. *Mitchell*, 472 U.S.

26

at 527 (internal quotation marks omitted). Here, it is possible that at some later stage, USCCB's church autonomy defense may require limiting the scope of the suit or the extent of discovery, or even warrant dismissal of the suit in its entirety; these are "further steps" that remain available to the District Court to safeguard against First Amendment violations.

USCCB argues that collateral order review is warranted because the District Court "conclusively determined . . . whether USCCB may be compelled to defend on the merits." Opening Br. of Defendant-Appellant 24. The defendants in *Belya* made the same argument before the Second Circuit: "[T]heir claim is that the district court's orders are the final decision on whether discovery can proceed; thus, Defendants contend, the orders constitute a final rejection." 45 F.4th at 631 (internal quotation marks omitted). Our sister circuit rejected that argument in *Belya*, and we do so here as well.

USCCB cites *Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576 (D.C. Cir. 2020), in support of its position that it has a right to collateral order review to ensure that it will not be required to go through discovery. This decision is inapposite because it involves the application of foreign sovereign immunity. *Id.* at 581. Unlike the church autonomy doctrine, questions of sovereign immunity have long been held by the Supreme Court and this court to be immediately appealable. *See, e.g.*, *P.R. Aqueduct*, 506 U.S. at 147; *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990). As we have explained, however, pleading-stage denials of a church autonomy defense do not satisfy the requirements of the collateral order doctrine.

27

### III. CONCLUSION

Because USCCB's appeal falls outside of the collateral order doctrine's narrow and selective class of claims subject to interlocutory review, we dismiss the appeal for lack of jurisdiction without reaching the merits of USCCB's church autonomy defense or USCCB's argument that O'Connell failed to state a claim.

*So ordered.*