ORAL ARGUMENT HELD JANUARY 10, 2025
No. 23-7173

# In the United States Court of Appeals for the District of Columbia

DAVID O'CONNELL,
Plaintiff-Appellee,

v.

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,
Defendant-Appellant.

Appeal from the United States District Court for the District of Columbia
Honorable Jia M. Cobb
(1:20-cv-01365-JMC)

## DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC

KEVIN T. BAINE
EMMET T. FLOOD
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
(202) 434-5000
eflood@wc.com

DANIEL H. BLOMBERG
  *Counsel of Record*
LAURA WOLK SLAVIS
COLTEN L. STANBERRY
KELSEY BAER FLORES
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
  Suite 400
Washington, DC 20006
(202) 955-0095
dblomberg@becketfund.org

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION AND RULE 40(B) STATEMENT ............................... 1

STATEMENT OF THE CASE ................................................................. 4

A.   Factual Background ..................................................................... 4

B.   Procedural Background ............................................................... 5

C.   Panel Decision ............................................................................ 7

ARGUMENT ........................................................................................... 7

I.   The panel decision conflicts with the Supreme Court,
     this Court, and eleven other courts in holding the
     Religion Clauses do not protect against entangling
     proceedings. ............................................................................... 7

     A. The panel decision conflicts with Supreme Court
        and D.C. Circuit precedent. ................................................. 8

     B. The panel decision splits with eleven other courts. ................... 10

II.  The panel decision splits with the Fifth Circuit and
     four states in holding church autonomy ineligible for
     interlocutory review. ................................................................ 12

III. The panel decision conflicts with the Supreme Court,
     this Court, and five other courts in adopting the
     "neutral principles" approach ................................................... 15

CONCLUSION ...................................................................................... 18

CERTIFICATE OF COMPLIANCE ....................................................... 19

CERTIFICATE OF SERVICE ............................................................... 20

ADDENDUM ......................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Belya v. Kapral,*
 59 F.4th 570 (2d Cir. 2023) .................................. 2, 3, 8, 12, 14, 17, 18

*Billard v. Charlotte Catholic High Sch.,*
 101 F.4th 316 (4th Cir. 2024) ..................................................... 10, 15

*Carroll Coll. v. NLRB,*
 558 F.3d 568 (D.C. Cir. 2009) ......................................................... 1, 9

*Cohen v. Beneficial Indus.,*
 337 U.S. 541 (1949) ........................................................................ 14

*Conlon v. IVCF,*
 777 F.3d 829 (6th Cir. 2015) .............................................................. 11

*Duquesne Univ. of the Holy Spirit v. NLRB,*
 947 F.3d 824 (D.C. Cir. 2020) ......................................................... 1, 9

*EEOC v. Catholic Univ. of Am.,*
 83 F.3d 455 (D.C. Cir. 1996) ................................................... 1, 3, 9, 16

*Garrick v. Moody Bible Inst.,*
 95 F.4th 1104 (7th Cir. 2024) .................................................. 2, 12, 14

*Hosanna-Tabor v. EEOC,*
 565 U.S. 171 (2012) ................................................................ 8, 14, 15

*Huntsman v. Corp. of The President of the Church of
 Jesus Christ of Latter-day Saints,*
 127 F.4th 784 (9th Cir. 2025) .................................. 3, 4, 10, 11, 15, 17

*Hutchison v. Thomas,*
 789 F.2d 392 (6th Cir. 1986) ............................................................ 16

*League of Women Voters v. Newby,*
 963 F.3d 130 (D.C. Cir. 2020) ......................................................... 14

*Lee v. Sixth Mount Zion Baptist Church*,
    903 F.3d 113 (3d Cir. 2018) ................................................................. 11

*Leonard v. Martin*,
    38 F.4th 481 (5th Cir. 2022) .............................................................. 13

*Loma Linda v. NLRB*,
    No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023) ............ 2, 10

*Markel v. Union of Orthodox Jewish Congregations*,
    124 F.4th 796 (9th Cir. 2024) ............................................................ 11

*McRaney v. NAMB*,
    980 F.3d 1066 (5th Cir. 2020) .......................................................... 3, 17

*Minker v. Balt. Ann. Conf. of United Methodist Church*,
    894 F.2d 1354 (D.C. Cir. 1990) ......................................................... 16

*NLRB v. Catholic Bishop*,
    440 U.S. 490 (1979) ................................................................ 1, 8, 9, 10

*Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*,
    896 F.3d 520 (D.C. Cir. 2018) ........................................................... 14

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    591 U.S. 732 (2020) .............................................................................. 8

*Presbyterian Church v. Blue Hull Mem'l Presbyterian Church*,
    393 U.S. 440 (1969) ............................................................................ 15

*Rayburn v. Gen. Conf. of Seventh-day Adventists*,
    772 F.2d 1164 (4th Cir. 1985) ........................................................... 10

*Scharon v. St. Luke's*,
    929 F.2d 360 (8th Cir. 1991) ............................................................. 11

*Serbian E. Orthodox Diocese v. Milivojevich*,
    426 U.S. 696 (1976) ................................................................... 3, 8, 15

*Simpson v. Wells Lamont Corp.*,
    494 F.2d 490 (5th Cir. 1974) ............................................................. 16

*Tucker v. Faith Bible Chapel*,
    53 F.4th 620 (10th Cir. 2022) .................................................. 2, 12, 14

*United Methodist Church v. White*,
    571 A.2d 790 (D.C. 1990) ...................................................... 2, 12, 14

*United States v. Trump*,
    91 F.4th 1173 (D.C. Cir. 2024) ............................................... 14

*Univ. of Great Falls v. NLRB*,
    278 F.3d 1335 (D.C. Cir. 2002) .............................................. 1, 9

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ................................................. 2, 11, 13

*X Corp. v. Media Matters*,
    120 F.4th 190 (5th Cir. 2024) ................................................ 13

**Statutes**

28 U.S.C. §1291 ..................................................................... 7, 12

**Other Authorities**

1983 *Code of Canon Law* .......................................................... 5

*About USCCB*, USCCB ............................................................. 5

Fed. R. App. P. 40(b) .............................................................. 1

*Office of National Collections*, USCCB ...................................... 5

*Peter's Pence: An Ancient Custom Still Alive Today*,
    The Vatican (June 2018) ...................................................... 4

*Peter's Pence: How to Send Your Contribution to
    the Holy Father*, The Vatican (June 2018) .............................. 4

Pope Blessed Pius IX, *Saepe Venerabiles Fratres* (1871) ............. 4

Pope Leo XIII, *Paternae* (1899) ............................................... 4

## INTRODUCTION AND RULE 40(B) STATEMENT

This appeal concerns the scope of the First Amendment's protection against judicial interference with internal church governance. Specifically, whether that protection permits collateral-order appeal of an order refusing to dismiss claims that inevitably require religious entanglement. The panel held that it does not. As a result, an extraordinary putative class action—brought by parishioners demanding a refund of their religious offerings to the Pope—can now proceed in civil courts.

The panel's collateral-order holding rested on its conclusion that the Religion Clauses protect against liability, not the process of inquiry itself. That narrow view breaks with precedent from the Supreme Court, this Court, and numerous others. In *NLRB v. Catholic Bishop*, the Supreme Court held that the "very process of inquiry" into matters of faith and church governance can "impinge on rights guaranteed by the Religion Clauses." 440 U.S. 490, 502 (1979). This Court has expressly relied on that holding in each of its church-autonomy cases in the last three decades.[1] And eleven other circuits and state high courts agree, along with the nation's leading Religion Clauses scholars.

---

[1] *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455 (D.C. Cir. 1996); *Univ. of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002); *Carroll Coll. v. NLRB*, 558 F.3d 568 (D.C. Cir. 2009); *Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824 (D.C. Cir. 2020).

The panel then created a second split when its cramped view of the Religion Clauses led it to hold that denials of church-autonomy defenses are categorically ineligible for collateral-order review. That holding conflicts with the law of the Fifth Circuit and several states—including District of Columbia precedent authored by Judge Judith Rogers.[2] Those courts recognize that the harm caused by using governmental power to "troll[] through the beliefs" and the "religious mission" of a church "cannot be undone through a later appeal." *Loma Linda v. NLRB*, No. 23-5096, 2023 WL 7294839, at *16-17 (D.C. Cir. May 25, 2023) (Rao, J., dissenting).

While the panel heavily relied on recent cases from the Second, Seventh, and Tenth Circuits, its holding stretches beyond them. This case presents pure questions of law, while those opinions barred appellate review based on perceived factual disputes. And even those narrower holdings garnered dissents from ten judges. *See Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1117 (7th Cir. 2024) (Brennan, J.); *Belya v. Kapral*, 59 F.4th 570, 580 (2d Cir. 2023) (Park, J., joined by Livingston, C.J., and Sullivan, Nardini, and Menashi, JJ.); *id.* at 573 (Cabranes, J.); *Tucker v. Faith Bible Chapel*, 53 F.4th 620, 625 (10th Cir. 2022) (Bacharach, J., joined by Tymkovich and Eid, JJ.). The panel engaged with none of those dissents in setting the law of this Circuit.

---

[2]   *See, e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018); *United Methodist Church v. White*, 571 A.2d 790 (D.C. 1990).

The panel constricted the Religion Clauses further still—and entered a *third* split—by importing the "neutral principles" approach (developed for church-property disputes) into church-governance cases. But the Supreme Court, this Court, and five circuits and states—again including the District of Columbia—have rejected that blinkered view.[3] So have fifteen federal appellate judges, warning that the panel's approach would "eviscerate" the church-autonomy doctrine. *See Belya*, 59 F.4th at 580 (Park, J., dissenting); *accord McRaney v. NAMB*, 980 F.3d 1066, 1070 (5th Cir. 2020) (Ho, J., joined by Jones, Smith, Elrod, Willett, and Duncan, JJ., dissenting); *Huntsman v. Corp. of the President of The Church of Jesus Christ of Latter-day Saints*, 127 F.4th 784, 792 (9th Cir. 2025) (en banc) (Bress, J., joined by M. Smith, Nguyen, and VanDyke, JJ., concurring).

The upshot of all these rulings is that the panel opinion requires what the unanimous en banc Ninth Circuit just barred: allowing a "patently inappropriate" offering-refund claim to proceed toward full-merits litigation. *Id.* at 793 (Bress, J., concurring). Five of those judges warned that adjudicating such claims "any further" would "obvious[ly]" and "inescapab[ly]" violate the First Amendment. *Id.*; *see also id.* at 800 (Bumatay, J., concurring).

---

[3]    *See, e.g., Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714-15, 717 (1976); *Catholic Univ.*, 83 F.3d at 466.

So too here. O'Connell's refund claims require courts to second-guess how reasonable parishioners would understand an invitation—delivered from the pulpit, during Mass, for a 1,000-year-old offering—to support the Pope's "charitable works." That's unconstitutional. "Nothing says 'entanglement with religion' more" than adjudicating whether a church "should have spoken with greater precision about inherently religious topics." *Huntsman*, 127 F.4th at 798 (Bress, J., concurring). Letting that entanglement take place will irreparably harm the First Amendment's structural limits on judicial interference in church governance.

## STATEMENT OF THE CASE

### A. Factual Background

The *Obolo di San Pietro*, or "Peter's Pence," is an annual offering that has been given by Catholic faithful to the Pope for over 1,000 years. *Peter's Pence: An Ancient Custom Still Alive Today*, The Vatican (June 2018), https://perma.cc/5ATN-HSFM. These offerings support the Holy See, *see* Pope Leo XIII, *Paternae* ¶14 (1899), which in turn has alleviated the "need of so many churches," Pope Blessed Pius IX, *Saepe Venerabiles Fratres* ¶4 (1871). Today, Peter's Pence continues as a gift "offered by the faithful to the Holy Father," to be used both for the "needs of the Universal Church" and "the relief of those most in need." *Peter's Pence: How to Send Your Contribution to the Holy Father*, The Vatican (June 2018), https://perma.cc/G53Z-QP7G.

The offerings are collected in dioceses and parishes, and sent directly to the Holy See. *Office of National Collections*, USCCB, https://perma.cc/4GCT-U4HR ("*Office of National Collections*"). The Pope controls the collection's use. 1983 *Code of Canon Law* 331, 360.

The United States Conference of Catholic Bishops is an assembly of bishops who jointly exercise pastoral functions on behalf of the Catholic faithful in America. *About USCCB*, USCCB, https://perma.cc/RM7R-FW9N. While USSCB designs promotional materials that dioceses may choose to use in their Peter's Pence collections, it does not oversee, collect, or distribute the funds. A43; *Office of National Collections*. Nor can USCCB control how dioceses speak about Peter's Pence. Canon 381; Canon 455 §4; Canon 1266.

## B. Procedural Background

On January 22, 2020, David O'Connell filed a putative class-action complaint against USCCB in federal district court. O'Connell alleges that he offered an unspecified amount to Peter's Pence in 2018 after hearing a "solicit[ation] from the pulpit" "during a Sunday Mass" at his church. A25-26 ¶34. He doesn't identify the speaker or specify the content of the message. But he nevertheless alleges that he was intentionally misled into thinking that Peter's Pence collections would be used "immediately" and "exclusively" for humanitarian purposes, rather than for other religious purposes or investments intended to serve those purposes in the future. A26 ¶36; A30-32 ¶¶48-49, 52-53, 55.

O'Connell claims that USCCB is liable in fraud for his misunderstanding because its promotional materials said Peter's Pence "support[s] the charitable works of Pope Francis for the relief of those most in need," and that contributing to Peter's Pence "witnesses to charity and helps the Holy See reach out compassionately to those who are marginalized." A17-18 ¶¶21-22.

O'Connell has served discovery requests demanding all:

- lists of donors to Peter's Pence;

- documents related to the use of Peter's Pence offerings;

- church laws and guidelines relating to Peter's Pence; and

- communications with the "Holy See, Vatican City, [and] Apostolic Nunciature" relating to Peter's Pence.

*See*, *e.g.*, A175. O'Connell represented that he "cannot" prove his case without such records of the "collection, administration, accounting, or disposition" of Peter's Pence. A170, A172.

USCCB filed a motion to dismiss and for judgment on the pleadings, arguing, *inter alia*, that O'Connell's claims violate the First Amendment. In November 2023, the district court issued a short oral ruling denying the motion, holding that this case could proceed because it involved a "purely secular" dispute governed by "straightforward common-law principles." A148-49.

USCCB timely appealed. After jurisdictional briefing, this Court referred the jurisdictional question to the merits panel.

## C. Panel Decision

The merits panel dismissed the appeal for lack of jurisdiction under 28 U.S.C. §1291. It held that the church-autonomy doctrine doesn't provide "an immunity from suit" or "trial," but is instead merely "a defense to liability" that must await vindication "after trial." Op.20-21. Thus, because permitting O'Connell's case to proceed wouldn't interfere with USCCB's right "to manage its own non-secular affairs free from governmental interference," Op.15, collateral-order review is categorically unavailable, Op.19.

The panel also decided that "the First Amendment does not bar judicial examination of [a] claim" when a plaintiff "can plausibly assert a secular claim capable of resolution according to neutral principles of law" because it doesn't "require inquiry into doctrinal disputes." Op.13, 20.

## ARGUMENT

## I. The panel decision conflicts with the Supreme Court, this Court, and eleven other courts in holding the Religion Clauses do not protect against entangling proceedings.

The panel held that the denial of a church-autonomy defense is not entitled to collateral-order appeal because the doctrine is "a defense to liability" that "does not confer immunity from trial" or "suit" and "can be adequately addressed after trial." Op.20-21. That holding breaks with the Supreme Court, this Court's precedents, and eleven other circuits and state high courts. Such a departure warrants rehearing.

7

## A. The panel decision conflicts with Supreme Court and D.C. Circuit precedent.

The panel's ruling conflicts with Supreme Court precedent. The canonical case is *Catholic Bishop*, which held that "the very process of inquiry" into matters of faith and church governance can "impinge on rights guaranteed by the Religion Clauses." 440 U.S. at 502. There, even the "risk" of "entanglement" caused by inquiry into the relationship between "the good faith" of the church's legal positions and its "religious mission" required denying NLRB jurisdiction over religious schools. *Id.*

Similarly, *Milivojevich* held that because "[r]eligious controversies are not the proper subject of civil court inquiry," letting courts analyze the "ecclesiastical actions of a church" would require "exactly the inquiry that the First Amendment prohibits." 426 U.S. at 713. And *Our Lady of Guadalupe School v. Morrissey-Berru* explained that "[j]udicial review" alone can "undermine the independence of religious institutions in a way that the First Amendment does not tolerate." 591 U.S. 732, 738 (2020); *see also Hosanna-Tabor v. EEOC*, 565 U.S. 171, 205-06 (2012) (Alito, J., joined by Kagan, J., concurring) (the "mere adjudication" of pretext inquiries "pose[s] grave problems for religious autonomy"). Each of "these cases leads to the same conclusion: that 'the very process of inquiry' into matters of faith and church governance offends the Religion Clauses." *Belya*, 59 F.4th at 577 n.2 (Park, J., dissenting).

The panel also deviated from this Court's precedents, claiming that "[n]one" of them "even suggest[] that 'harm arising from the process of inquiry into religious disputes' warrants immediate review." Op.24. That doesn't square with 30 years of this Court's express reliance on *Catholic Bishop* to prohibit unconstitutional inquiry. *Catholic Univ.*, 83 F.3d at 466; *Great Falls*, 278 F.3d at 1341; *Carroll Coll.*, 558 F.3d at 571; *Duquesne*, 947 F.3d at 829.

This Court's precedent has done far more than merely suggest that church autonomy protects from entangling adjudication. *Catholic University* held that being "deposed, interrogated, and haled into court" over a religious dispute violates the First Amendment because it forces religious bodies to make ecclesiastical decisions "with an eye to avoiding litigation or bureaucratic entanglement." 83 F.3d at 466-67. *Duquesne* honored the First Amendment's "scrupulous policy" against "political interference with religious affairs" by affirming this Circuit's "bright-line test" to "altogether exempt" religious bodies from future inquiry into "matters of religious doctrine or motive." 947 F.3d at 828, 831. And both *Great Falls* and *Carroll College* emphatically stressed *Catholic Bishop*'s "very process of inquiry" standard and connected it to Supreme Court rulings from "numerous other contexts" where preventing "intrusive inquiry" justified completely exempting churches from "'case-by-case'" adjudication of certain claims. *Great Falls*, 278 F.3d at 1341-42; *Carroll Coll.*, 558 F.3d at 571.

9

In sum, the "protections at the root of *Catholic Bishop* are as vital today as they ever have been." *Loma Linda*, 2023 WL 7294839, at *16-18 (Rao, J., dissenting). Forcing religious bodies to "wait[] for the conclusion of intrusive [civil] proceedings" will thus cause "an ongoing injury" that "cannot be redressed after the fact." *Id.*

**B. The panel decision splits with eleven other courts.**

The panel claims that "[n]o federal court has ever held that the church autonomy doctrine establishes a constitutional right to immunity from suit in cases concerning secular claims." Op.20. But this case isn't about "secular" claims, and courts "should not indulge in the illusion" that it is. *Huntsman*, 127 F.4th at 793 (Bress, J., concurring). When considering claims—like O'Connell's—that facially entangle courts in ecclesiastical affairs, six federal circuits and five state high courts have recognized that the Religion Clauses protect against the burdens of litigation, similar to an immunity.

The Third, Fourth, Fifth, Sixth, Eighth, and Ninth Circuits have held that the Religion Clauses protect from "legal process[es] designed to probe the mind of the church." *Rayburn v. Gen. Conf. of Seventh-day Adventists,* 772 F.2d 1164, 1171 (4th Cir. 1985). For instance, *Billard v. Charlotte Catholic High School* explained that the First Amendment "immunizes" and "exempt[s]" the religious "decisions of religious entities" from "legal process." 101 F.4th 316, 325-26 (4th Cir. 2024). The Ninth Circuit likewise held that "the First Amendment generally prohibits

merits discovery and trial" in church-autonomy cases because "the process of judicial inquiry" into church governance constitutes "unconstitutional judicial action." *Markel v. Union of Orthodox Jewish Congregations*, 124 F.4th 796, 808-09, 809 n.5 (9th Cir. 2024). And the Fifth Circuit has recognized that the Clauses provide "structural protection" against "judicial discovery procedures." *Whole Woman's Health*, 896 F.3d at 367, 373-74.

Similarly, the Third and Sixth Circuits have held that the Religion Clauses impose a "structural limitation" that "categorically prohibits" judicial "involve[ment]" in religious disputes. *Conlon v. IVCF*, 777 F.3d 829, 836 (6th Cir. 2015); *Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113, 118 n.4 (3d Cir. 2018) (similar). And the Eighth Circuit agrees that "per se religious matters" of church governance "cannot be reviewed by civil courts." *Scharon v. St. Luke's*, 929 F.2d 360, 363 (8th Cir. 1991).

The panel's holding that church-autonomy defenses "can be adequately addressed after trial," Op.20-21, is also in tension with the unanimous en banc Ninth Circuit's rejection of an offering-refund claim before the case could reach full merits discovery. *Huntsman*, 127 F.4th at 784. And it sharply conflicts with five concurring judges' explanation that allowing the "extraordinary and patently inappropriate" refund claims to "go any further" would have violated the First Amendment. *Id.* at 792-93, 796-99 (Bress, J., concurring); *accord id.* at 800 (Bumatay, J., concurring).

11

The Second, Seventh, and Tenth Circuit cases that the panel claims justify its holdings are distinguishable. Op.15-16. Unlike the panel, those cases acknowledge that courts have analogized church autonomy to an immunity, and thus instead rely on factual disputes (nonexistent here) as key to their disposition. USCCB Br.27-29. Moreover, those decisions drew dissents from ten judges, *supra* at 2, who correctly predicted that allowing the cases to proceed would cause First Amendment injury. Weinberger Br.13-17, https://perma.cc/7VCZ-LYGJ.

The District of Columbia, Connecticut, Kentucky, North Carolina, Texas, and leading scholars have also agreed that, in matters of church governance, the First Amendment "grant[s] churches an immunity from civil discovery and trial." *White*, 571 A.2d at 792 (Rogers, C.J.); USCCB Br.26-27 (listing cases); Scholars Br.18-23, https://perma.cc/737S-GN78.

## II. The panel decision splits with the Fifth Circuit and four states in holding church autonomy ineligible for interlocutory review.

As the panel indicates, collateral-order review would be appropriate if church autonomy were a right that would "be destroyed if not vindicated before trial" and thus "effectively unreviewable on appeal from the final judgment." Op.15-16; *see also* Muller Br.2, https://perma.cc/DJ9X-2XR3 (summarizing "the Supreme Court's longstanding … construction of Section 1291"). But since the panel ruled that church autonomy can await post-trial review, it held—as a matter of first impression in this Circuit—that it lacked jurisdiction. Op.15. That split with the Fifth Circuit, the District of Columbia, Connecticut, Kentucky, and North Carolina.

The Fifth Circuit permitted interlocutory appeal from the denial of church-autonomy defenses in *Whole Woman's Health v. Smith*, holding that "interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine." 896 F.3d at 368 (collecting cases). Citing the Constitution's "structural protection afforded religious organizations," the Fifth Circuit held that the collateral-order doctrine was satisfied because "the consequence of forced discovery"—production of internal church communications— would be "'effectively unreviewable' on appeal from the final judgment." *Id.* at 367, 373.

The panel distinguished *Whole Woman's Health* as limited to nonparty discovery orders. Op.20-21. But the Fifth Circuit has explained that it was rather the "substantial First Amendment implications" in that case which required deviating from the otherwise-universal prohibition on interlocutory review of nonparty discovery orders. *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022). And the Fifth Circuit has applied *Whole Woman's Health* to allow *parties* to appeal orders that "arguably infringe on First Amendment rights." *X Corp. v. Media Matters*, 120 F.4th 190, 196 (5th Cir. 2024). The court explained that, "in the collateral order context as in others, the 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.*

13

Similarly, in the District of Columbia, Connecticut, Kentucky, and North Carolina, denial of a church-autonomy defense "is immediately appealable as a collateral order" because the "constitutional rights of the church to operate free of judicial scrutiny" must be "reviewed pretrial or [they] can never be reviewed at all." *White*, 571 A.2d at 792-93 (applying *Cohen v. Beneficial Indus.*, 337 U.S. 541 (1949)); USCCB Br.26-27 (collecting cases). Scholars agree. *See* Scholars Br.29; Muller Br.18-21.

Again, the panel's reliance on the Second, Seventh, and Tenth Circuits is misplaced. Those decisions left open the possibility of collateral-order review, USCCB Br.28-29, which the panel forecloses. And, again, ten judges vigorously dissented from those opinions, which the panel failed to acknowledge in setting the law of this Circuit. *Supra* at 2.

At bottom, rather than giving church autonomy the "special solicitude" the Religion Clauses demand, *Hosanna-Tabor*, 565 U.S. at 189, the panel disfavored it. Other threats to First Amendment (and even unenumerated) rights are regularly worth the "appellate court work" of interlocutory review. Op.12.[4] And other claims to immunity need be only "colorable" to warrant review. *United States v. Trump*, 91 F.4th 1173, 1187 (D.C. Cir. 2024). Yet the panel dismissed inevitable constitutional injury here as simply "encumbrance[s]" or "adjudicative burdens." Op.17.

---

[4]  *See* USCCB Reply Br.14 (collecting cases); *League of Women Voters v. Newby*, 963 F.3d 130 (D.C. Cir. 2020) (intervention); *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520 (D.C. Cir. 2018) (licensure).

And its statement that the court on remand may "safeguard" USCCB via discovery limits and "jury instructions," *id.*, shows its error. *Any* discovery and jury trial here harms USCCB's "immuni[ty]" from entanglement. *Billard*, 101 F.4th at 325. Courts cannot "emcee religious disputes, much less decide them." *Huntsman*, 127 F.4th at 800 (Bress, J., concurring).

## III. The panel decision conflicts with the Supreme Court, this Court, and five other courts in adopting the "neutral principles" approach.

The panel further narrowed church autonomy by stating that it affords no protection "if a plaintiff can plausibly assert a secular claim capable of resolution according to neutral principles of law," which is true whenever "resolution of the case does not require inquiry into doctrinal disputes." Op.13, 20. That rule conflicts with precedent of the Supreme Court, this Court, and five other courts.

To start, the "neutral principles" approach was developed for church-property disputes, *Presbyterian Church v. Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969), and the Supreme Court has never applied it outside that context. Rather, it has repeatedly rejected "reli[ance] on purported 'neutral principles'" to adjudicate matters relating to "internal [church] discipline and government"—even where, as here, lower courts felt they could avoid "determination of theological or doctrinal matters." *Milivojevich*, 426 U.S. at 715, 721, 724; *Hosanna-Tabor*, 565 U.S. at 188, 190 (refusing to apply "neutral" laws to a dispute that "interfere[d] with the internal governance of the church").

15

This Court has also declined to apply the approach beyond "trust and property law." *Catholic Univ.*, 83 F.3d at 466. When, like the panel here, Op.14, EEOC "insist[ed]" that a religious dispute could be "resolved … by invoking 'neutral principles,'" this Court took exception because of the "inevitable risk" of entanglement in church governance. *Catholic Univ.*, 83 F.3d at 465-66. Similarly, *Minker v. Baltimore Annual Conference of United Methodist Church* found the "neutral principles" approach unsuitable for a contract claim that would "inevitably" require intrusion into "highly subjective, spiritual, and ecclesiastical" matters. 894 F.2d 1354, 1359 (D.C. Cir. 1990).[5]

Five other circuits and states—again including the District of Columbia—have also refused to extend the approach to matters of church governance. *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986) (approach applies "only" to church-property disputes and should "never" be "extended to religious controversies in the areas of church government"); *Simpson v. Wells Lamont Corp.*, 494 F.2d 490, 493-94 (5th Cir. 1974) (rejecting approach in church-governance disputes and the idea that church autonomy bars only "interpretation of religious doctrine"); USCCB Br. 48 (listing Arkansas, D.C., and Texas precedent).

---

[5] While *Minker* allowed a "fairly direct inquiry" into the mere existence of a contract, it still required the plaintiff to "demonstrate that he can prove his case without resorting to impermissible avenues of discovery," 894 F.2d at 1360—something O'Connell admitted he *cannot* do. A172.

Fifteen federal judges from three circuits agree. Six judges on the Fifth Circuit explained that the logic of extending the approach to a defamation claim meant "no claim would *ever* be subject to the church autonomy doctrine" because "*every* civil plaintiff purports to invoke neutral legal principles." *McRaney,* 980 F.3d at 1070 (Ho, J., dissenting). And five Second Circuit judges likewise warned that "[g]iving courts a license to apply 'neutral principles' to matters of church government, faith, or doctrine would swallow the church autonomy doctrine altogether." *Belya*, 59 F.4th at 580-82 (Park, J., dissenting).

As particularly applicable here, four Ninth Circuit judges in *Huntsman* explained that litigants cannot "sideline the church autonomy doctrine" by "invok[ing]" an ostensibly "neutral" "state-law prohibition on fraud." 127 F.4th at 797-99 (Bress, J., concurring). Adjudicating the elements of fraud in an offering-refund claim would "quickly devolve" into deciding "inherently religious questions," such as "*why* a reasonable member of the Church … would or should tithe." *Id*. Thus, "a suit like this could never succeed under the First Amendment's church autonomy doctrine." *Id.* at 793.

This *is* a suit like *Huntsman*, but more entangling. O'Connell asks a civil court to determine why a "reasonable" Church member—and a putative *nationwide class* of reasonable members—would give to "the charitable works of Pope Francis," in the context of an offering with over a millennium of accumulated religious meaning. *See*, *e.g.*, Denominations

17

Br.11-12, https://perma.cc/BS5B-QFQJ. That the panel saw all that as a "purely secular" dispute subject to the "neutral principles" approach, Op.14, shows how expansive the approach will be if left uncorrected.

## CONCLUSION

"[T]he issues at hand are of 'exceptional importance' and surely deserve further appellate review." *Belya*, 59 F.4th at 573 (Cabranes, J., dissenting). USCCB respectfully requests rehearing en banc.

Respectfully submitted,

*/s/ Daniel H. Blomberg*

KEVIN T. BAINE
EMMET T. FLOOD
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
(202) 434-5000
*eflood@wc.com*

DANIEL H. BLOMBERG
  *Counsel of Record*
LAURA WOLK SLAVIS
COLTEN L. STANBERRY
KELSEY BAER FLORES
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
  Suite 400
Washington, DC 20006
(202) 955-0095
*dblomberg@becketfund.org*

*Counsel for Defendant-Appellant*

May 27, 2025

18

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This petition complies with the requirements of Fed. R. App. P. 40(d)(3) because it has 3,898 words. This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5), (6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

*/s/ Daniel H. Blomberg*
Daniel H. Blomberg

## CERTIFICATE OF SERVICE

I certify that on May 27, 2025, a copy of this petition was filed with the Clerk of the Court's electronic filing system. That electronic filing system is designed to serve all counsel of record.

*/s/ Daniel H. Blomberg*
Daniel H. Blomberg

# ADDENDUM

## TABLE OF CONTENTS

Page

Panel Opinion (D.C. Cir. April 25, 2025) ................................................ 1a

Certificate as to Parties, Rulings,
and Related Cases ................................................................... 28a

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 10, 2025          Decided April 25, 2025

No. 23-7173

DAVID O'CONNELL,
APPELLEE

v.

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01365)

———

*Daniel H. Blomberg* argued the cause for appellant. With him on the briefs were *Kevin T. Baine*, *Emmet T. Flood*, *Laura Wolk Slavis*, *Colten L. Stanberry*, *Kelly R. Oeltjenbruns*, and *Kelsey Baer Flores*. *Mark S. Storslee* entered an appearance.

*Daniel F. Mummolo*, *Christopher G. Michel*, and *Rachel G. Frank* were on the brief for *amicus curiae* Federal Courts Professor Derek T. Muller in support of appellant.

*Aaron M. Streett* and *Matthew M. Hilderbrand* were on the brief for *amicus curiae* Dr. Lael Weinberger in support of appellant.

2

*Michael J. Showalter*, *Victoria N. Lynch-Draper*, and *Joel S. Nolette* were on the brief for *amici curiae* Seven Religious Organizations in support of appellant.

*Thomas G. Hungar*, *Russell B. Balikian*, and *Cameron J. E. Pritchett* were on the brief for *amici curiae* Law & Religion Scholars in support of appellant.

*Gabriel Z. Doble* argued the cause for appellee. With him on the brief were *Martin Woodward* and *Simon C. Franzini*.

*Jenny Samuels* and *Alex J. Luchenitser* were on the brief for *amicus curiae* Americans United for Separation of Church and State in support of appellee.

Before: SRINIVASAN, *Chief Judge*, CHILDS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case involves an action by Appellee, David O'Connell, against Appellant, United States Conference of Catholic Bishops ("USCCB"), for fraudulent solicitation of donations. In his complaint, O'Connell claims that, at the urging of USCCB, he and others donated money to Peter's Pence Collection for the purported purpose of helping those in immediate need of assistance in disaster-stricken parts of the world. O'Connell contends, however, that USCCB fraudulently concealed that most of the donations to Peter's Pence were not for victims of war, oppression, natural disaster, or disease, as he and others allegedly had been told. Rather, according to O'Connell, most of the donated money was "diverted into various suspicious

3

investment funds, which in turn have funneled the money into such diverse ventures as luxury condominium developments and Hollywood movies while paying fund managers hefty, multi-million dollar commissions." Complaint ¶ 4.

Before discovery and trial, USCCB moved to dismiss the case in District Court. USCCB contended that the court had no subject matter jurisdiction because O'Connell's action was barred by the church autonomy doctrine. Without in any way addressing the merits of the parties' claims, the District Court denied the motion to dismiss. The court found that, at this stage of the litigation, O'Connell's claims raised a purely secular dispute that could be resolved according to neutral principles of law. However, the District Court made it clear to the parties that it could not and would not address purely religious questions, should they arise during litigation. Thereafter, rather than proceeding with trial, USCCB filed an appeal with this court seeking interlocutory review. For the reasons explained below, we dismiss this appeal for want of jurisdiction and remand the case to the District Court for further proceedings.

Section 1291 of the Judicial Code confers on federal courts of appeals jurisdiction to review "final decisions of the district courts." 28 U.S.C. § 1291. "A 'final decisio[n]' is typically one 'by which a district court disassociates itself from a case.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (alteration in original) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). The collateral order doctrine, however, provides a limited exception to this final decision rule for a "small class" of collateral rulings that, although they do not end the litigation, are appropriately deemed "final." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). This "small category includes only decisions that are [1] conclusive, [2] that resolve important questions separate from the merits, and [3] that are effectively

4

unreviewable on appeal from the final judgment in the underlying action." *Swint*, 514 U.S. at 42 (citation omitted). The Supreme Court has made it clear that these requirements are stringent. *Will v. Hallock*, 546 U.S. 345, 349 (2006). The Court has also stressed the importance of the third *Cohen* requirement, *i.e.*, a decision that can be effectively reviewed on appeal is not covered by the collateral order doctrine. *See, e.g.*, *Mohawk Indus.*, 558 U.S. at 107-08. The Court has openly acknowledged that many trial court rulings "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994) (citations omitted). Nevertheless, the Court has been resolute in saying that "the mere identification of some interest that would be 'irretrievably lost' has never sufficed to meet the third *Cohen* requirement." *Id.* (quoting *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 431 (1985)).

USCCB attempts to bring a collateral order appeal to challenge the District Court's order denying its motion to dismiss based on the church autonomy doctrine. The church autonomy doctrine protects against government interference in matters of faith, doctrine, and internal management. It may be raised as a defense in a civil suit, but it does not immunize religious organizations from civil actions. Pleading-stage denials of a church autonomy defense, such as the contested motion to dismiss in this case, do not satisfy the strict requirements of the collateral order doctrine. They are neither conclusive nor separate from the merits and, most importantly, they can be reviewed upon post-judgment appeal.

Neither the Supreme Court nor any circuit has ever expanded the collateral order doctrine to categorically cover alleged denials of a church autonomy defense. This is hardly surprising. The limited scope of the collateral order doctrine

**4a**

5

reflects a healthy respect for the virtues of the final decision rule, which serves as an important safeguard against piecemeal and premature review. USCCB's claimed rights can be adequately addressed on appeal after the District Court issues a final decision and, therefore, are not eligible for collateral order appeal.

## I. BACKGROUND

### A. *Factual and Procedural History*

Appellant USCCB, headquartered in Washington, D.C., is an organization of Roman Catholic Bishops serving the United States and the U.S. Virgin Islands. As part of its mission to support the work of the Catholic Church, USCCB oversees the promotion of the Peter's Pence Collection, an annual offering given by the Catholic faithful to the Pope. Complaint ¶ 18-19. Specifically, USCCB creates materials, such as letters, web ads, and posters, promoting the Collection which can then be used in parishes and dioceses. *Id.* ¶ 20.

Appellee David O'Connell donated to Peter's Pence at a Rhode Island church in the summer of 2018. *Id.* ¶ 34. On January 22, 2020, O'Connell filed a class action complaint in federal district court against USCCB, asserting claims of fraud, unjust enrichment, and breach of fiduciary duty. He seeks to represent a class of all persons in the United States who have donated money to the Peter's Pence Collection. O'Connell initially sued USCCB in the U.S. District Court for the District of Rhode Island. On USCCB's motion, the case was transferred to the U.S. District Court for the District of Columbia.

According to O'Connell, he was led to believe by USCCB that his donations to Peter's Pence would be used only "for emergency assistance" to "the poor" and "victims of war,

6

oppression, natural disaster, or disease throughout the world." *Id.* ¶¶ 35-36, 48. However, in 2019, news organizations published stories revealing that Peter's Pence funds were used to support the Vatican's administrative budget, placed in various investments including Hollywood films and real estate, or used to pay hefty commissions for fund managers, with only ten percent going to the charitable causes featured in USCCB's promotional materials. *Id.* ¶¶ 27-30. O'Connell alleges that "USCCB has always known the difference between a donation for emergency assistance and a donation to defray Vatican administrative expenses. But USCCB hid this distinction in its promotion, oversight, and administration of the Peters [sic] Pence collection in the United States." *Id.* ¶ 36. He also maintains that if USCCB had disclosed the actual purposes for which the funds would be used, he would not have donated to the Collection. *Id.* ¶ 35. O'Connell does not allege that the church cannot use collected funds for particular purposes, such as for investments or overhead expenses – only that USCCB cannot misrepresent how the funds will be used. *See* Br. for Plaintiff-Appellee 5-6.

USCCB answered the complaint in July 2020. Shortly thereafter, O'Connell served document production requests. Those requests sought documents showing the Peter's Pence promotional materials that USCCB created; lists of donors and amounts received; USCCB's knowledge of how the funds would be used; and how the funds were used. The District Court has had no occasion to rule on these requests. There has been no discovery.

After answering the complaint, USCCB moved to dismiss for lack of subject matter jurisdiction and for judgment on the pleadings. USCCB argued that the complaint was barred by the church autonomy doctrine, which is grounded in the First Amendment and prevents civil courts from hearing matters of

**6a**

7

church doctrine and internal governance. USCCB also argued that O'Connell had failed to adequately plead his claims.

The District Court denied USCCB's motions in an oral ruling and minute order on November 17, 2023. Tr. of Hearing (Nov. 17, 2023). The court ruled that it had subject matter jurisdiction because, at least at this stage of the litigation, O'Connell's claims raised a purely secular dispute involving affirmative misrepresentations and fraudulent omissions, which the District Court could resolve by applying "neutral principles of law." *Id.* at 5-7. In other words, the District Court saw "no need" to "inquire into church operations, religious doctrine, religious hierarchy, or religious decisionmaking to evaluate the merits of [plaintiff's] claim. Instead, this is a case about what defendant represented, what it knew, and the relationship between defendant and plaintiff as a putative class representative." *Id.* at 6. As such, the District Court found that "at this stage, it's not apparent . . . that the resolution of the claims will involve impermissible religious entanglement." *Id.* at 7. Accordingly, it declined to dismiss the case on the basis of the church autonomy doctrine.

The District Court also took care to recognize the limitations imposed by the church autonomy doctrine. It made clear that it would not – and could not – answer purely religious questions, should they arise during litigation. *Id.* at 6. For example, the court would not and "could not rule that the church could only exercise its financial discretion in one way or another." *Id.* The District Court made it clear, however, that it does not believe religious determinations are required for it "to determine, under straightforward common-law principles, whether or not fraud took place." *Id*.

In addition, the District Court denied USCCB's motion for judgment on the pleadings because material disputes of fact

**7a**

8

remained as to O'Connell's claims. *Id.* at 7. It also concluded that O'Connell had adequately pleaded his claims.

USCCB timely appealed the District Court's decision and advances three arguments on appeal. It argues that this court has jurisdiction over the interlocutory appeal; that O'Connell's claims are barred by the church autonomy doctrine; and that O'Connell failed to adequately plead his claims. O'Connell, in turn, disagrees with each of these arguments.

### B. *Legal Background*

This case primarily concerns two doctrines: the collateral order doctrine and the church autonomy doctrine.

### 1. **Collateral Order Doctrine**

As noted above, the appellate jurisdiction of the federal courts of appeals is generally limited to "final decisions of the district courts of the United States." 28 U.S.C. § 1291. A final decision is typically one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Known as the final decision rule, this limitation on the jurisdiction of federal appellate courts has long served an important purpose: It protects against piecemeal and premature review.

As the Supreme Court has explained,

> Congress from the very beginning has, by forbidding piecemeal disposition on appeal . . . , set itself against enfeebling judicial administration. Thereby is avoided the obstruction . . . that would come from permitting the harassment and cost of a succession of separate appeals

**8a**

9

. . . . To be effective, judicial administration must not
be leaden-footed.

*Cobbledick v. United States*, 309 U.S. 323, 325 (1940). Beyond
concerns of judicial economy, the final decision rule also
"emphasizes the deference that appellate courts owe to the trial
judge as the individual initially called upon to decide the many
questions of law and fact that occur in the course of a trial."
*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374
(1981). It would be unwise for an appellate court to
prematurely jump into the fray, without the benefit of the trial
court's rulings and with only the guidance of a partially
developed record. Thus, as a fundamental principle of the
federal courts system, the final decision rule does not
accommodate exceptions for issues merely because they are
important and deserving of attention. The exceptions to the rule
that do exist are few and far between.

This case implicates one exception – the collateral order
doctrine. "[A]n expansive interpretation of [section 1291's]
finality requirement" first announced in *Cohen*, the collateral
order doctrine allows appeals "from orders characterized as
final . . . even though it may be clear that they do not terminate
the action or any part of it." 15A CHARLES ALAN WRIGHT,
ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL
PRACTICE AND PROCEDURE § 3911, Westlaw (database updated
June 2024); *see also Cohen*, 337 U.S. at 545-46. This exception
to the final decision rule is limited to a ''narrow and selective''
class of orders that (1) are "effectively unreviewable on appeal
from a final judgment"; (2) "conclusively determine the
disputed question"; and (3) "resolve an important issue
completely separate from the merits of the action." *Will*, 546
U.S. at 349-50 (internal quotation marks omitted); *see also
United States v. Trump*, 88 F.4th 990, 1000 (D.C. Cir. 2023).
These requirements are meant to be difficult to satisfy, as "the

10

narrow exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal" after "final judgment has been entered." *Digit. Equip. Corp.*, 511 U.S. at 868 (internal quotation marks and citation omitted).

Over the years, the Supreme Court has provided the courts of appeals with general guideposts to follow when assessing these three stringent conditions. First, an order is "effectively unreviewable" where the "legal and practical value" of the asserted right "would be destroyed if it were not vindicated before trial." *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 498-99 (1989) (internal quotation marks and citations omitted). As noted above, the fact that a ruling "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment" is not sufficient. *Mohawk Indus.*, 558 U.S. at 107 (citation omitted). Nor is it sufficient for litigants to rest on the importance of the asserted right when seeking interlocutory review. *See id.* at 108. Rather, "[t]he crucial question" is "whether deferring review until final judgment so imperils the interest [at stake] as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Id*. Second, a conclusive determination is required. An order is conclusive when it is the "complete, formal, and, in the trial court, final rejection of" the issue. *Abney v. United States*, 431 U.S. 651, 659 (1977). The decision must "not constitute merely a 'step toward final disposition of the merits of the case.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974) (quoting *Cohen*, 337 U.S. at 546). Finally, the order must involve a "claim[] of right separable from, and collateral to, rights asserted in the action." *Cohen*, 337 U.S. at 546. Orders are "entwined with the merits" when "courts of appeals will often have to review the nature and content of" the merits to determine the issue on appeal. *Richardson-Merrell*, 472 U.S. at 439. Although complete separation is not required, the asserted

11

interest on appeal must be "conceptually distinct." *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985).

When assessing these three requirements of the collateral order rule, "we do not engage in an 'individualized jurisdictional inquiry.'" *Mohawk Indus.*, 558 U.S. at 107 (citation omitted). "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustic[e] averted, does not provide a basis for jurisdiction under § 1291." *Id.* (alteration in original) (internal quotation marks omitted). The question of whether an order is appealable is thus "determined for the entire category to which a claim belongs" rather than for individual cases. *Digit. Equip. Corp.*, 511 U.S. at 868. For our purposes, the relevant category of orders involves denials of a pleading-stage motion to dismiss based on the church autonomy defense.

Front of mind when applying *Cohen*'s collateral order doctrine is the Supreme Court's command that "the class of collaterally appealable orders . . . remain 'narrow and selective in its membership.'" *Mohawk Indus.*, 558 U.S. at 113 (quoting *Will*, 546 U.S. at 350). The Court's admonition "reflects a healthy respect for the virtues of the final-judgment rule": "Permitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Id.* at 106 (internal quotation marks and citations omitted); *see also Richardson-Merrell*, 472 U.S. at 436 ("[D]istrict judge[s] can better exercise [their] responsibility [to police the prejudgment tactics of litigants] if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings.").

12

As mentioned earlier, an interlocutory appeal "risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). Too many interlocutory appeals can thus cause serious harm and, as such, they "are the exception, not the rule." *Id.*

Accordingly, the Supreme Court has rarely extended the collateral order doctrine to cover new categories. Indeed, there are presently less than ten categories of orders falling under the collateral order doctrine – none of which are applicable to this case. *See Belya v. Kapral*, 45 F.4th 621, 629 n.5 (2d Cir. 2022) (collecting cases); *see, e.g.*, *Abney*, 431 U.S. at 659 (orders denying a criminal defendant's claim of double jeopardy); *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (orders denying a public official's claim of absolute immunity); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993) (orders denying a state's claim of Eleventh Amendment immunity).

Moreover, Congress has authorized the Supreme Court to promulgate rules "defin[ing] when a ruling of a district court is final for the purposes of appeal under [28 U.S.C. § 1291]." 28 U.S.C. § 2072(c). "Congress' designation of the rulemaking process as the way to define or refine when a district court ruling is 'final' and when an interlocutory order is appealable warrants the Judiciary's full respect." *Swint*, 514 U.S. at 48. Thus, as the Supreme Court has made clear, rulemaking, rather than expansion by court decision, is "the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Mohawk Indus.*, 558 U.S. at 113. As relevant here, the Supreme Court has not promulgated any rules

13

that would grant this court appellate jurisdiction over a district court's pleading-stage denial of the church autonomy defense.

## 2. Church Autonomy Doctrine

The church autonomy doctrine derives from the Religion Clauses of the First Amendment. Church autonomy protects against government interference in "matters of faith and doctrine and in closely linked matters of internal government." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 747 (2020). Accordingly, secular courts may not interpret religious law or wade into religious disputes. *See Serbian E. Orthodox Diocese for the U.S. & Can. v. Milivojevich*, 426 U.S. 696, 708-09 (1976); *see also Korte v. Sebelius*, 735 F.3d 654, 677 (7th Cir. 2013) (noting that secular courts must "respect[] [religious institutions'] autonomy to shape their own missions, conduct their own ministries, and generally govern themselves in accordance with their own doctrines as religious institutions"). The First Amendment also protects against employment discrimination claims brought by ministers against their religious employers. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012). This protection is known as the ministerial exception, a narrower offshoot of the broader church autonomy doctrine. *See Our Lady of Guadalupe*, 591 U.S. at 747.

These protections afforded by the First Amendment do not grant religious institutions a general immunity from secular laws. *See id.* at 746. Courts may adjudicate secular disputes involving religious institutions where resolution of the case does not require inquiry into doctrinal disputes. *See Jones v. Wolf*, 443 U.S. 595, 602-04 (1979) (holding that courts may apply neutral principles of law to resolve church property disputes); *see also Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 127 F.4th 784,

14

792 (9th Cir. 2025) (en banc) ("Because nothing in our analysis of [plaintiff's] fraud claims delves into matters of Church doctrine or policy, our decision in this case does not run afoul of the church autonomy doctrine."). So long as a court relies "exclusively on objective, well-established [legal] concepts," or neutral principles of law, it steers clear of any violations of the church autonomy doctrine. *Jones*, 443 U.S. at 603; *see, e.g.*, *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 349 (5th Cir. 2020) (allowing claims of defamation, intentional infliction of emotional distress, and intentional interference that "ask[] the court to apply neutral principles of tort law to a case that, on the face of the complaint, involves a civil rather than religious dispute").

As this court has twice made clear, the neutral principles approach "permits a court to interpret provisions of religious documents involving . . . nondoctrinal matters as long as the analysis can be done in purely secular terms." *Minker v. Balt. Ann. Conf. of United Methodist Church*, 894 F.2d 1354, 1358 (D.C. Cir. 1990); *see EEOC v. Cath. Univ. of Am.*, 83 F.3d 455, 466 (D.C. Cir. 1996) (same). "Thus, simply having a religious association on one side of the 'v' does not automatically mean a district court must dismiss the case or limit discovery." *Belya*, 45 F.4th at 630.

## II. ANALYSIS

The threshold issue in this case is whether this court has jurisdiction, pursuant to the collateral order doctrine, to address USCCB's challenge to the District Court's pleading-stage denial of its church autonomy defense. We do not. Accordingly, we dismiss the appeal and remand the case to the District Court for further proceedings. We do not reach the merits of USCCB's church autonomy claims, nor do we

15

consider USCCB's argument that O'Connell's complaint fails to state a claim.

**A.  *Standard of Review***

We determine *de novo* whether this court may properly exercise jurisdiction over this interlocutory appeal.

**B.  *This Court Has No Jurisdiction to Entertain Appellant's Interlocutory Appeal***

As explained at the outset of this opinion, collateral order appeals are permissible only in a very small number of cases that involve decisions that are conclusive, resolve important questions separate from the merits, and are effectively unreviewable on appeal from the final judgment in the underlying action. *Swint*, 514 U.S. at 42. USCCB's interlocutory appeal to challenge the District Court's order denying its motion to dismiss based on the church autonomy doctrine does not satisfy these rigid requirements. The most obvious impediment to USCCB's action is that it can get effective review under 28 U.S.C. § 1291 if the District Court issues a final decision against it. USCCB seeks to protect the right of the church to manage its own non-secular affairs free from governmental interference. This is not a right that will be destroyed if not vindicated before trial.

Our determination that the right to church autonomy is effectively reviewable upon appeal is well-supported by existing caselaw. Every circuit to have considered this issue has ruled that district court determinations regarding disputes over the church autonomy defense are properly reviewed upon post-judgment appeal, not pursuant to the collateral order doctrine. *See Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1117 (7th Cir. 2024), *reh'g en banc denied*, No. 21-2683, 2024 WL 1892433

16

(7th Cir. Apr. 30, 2024); *Belya*, 45 F.4th at 634, *reh'g en banc denied*, 59 F.4th 570 (2d Cir. 2023), *cert. denied sub nom. Synod of Bishops of the Russian Orthodox Church Outside of Russ. v. Belya*, 143 S. Ct. 2609 (2023); *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1036 (10th Cir. 2022), *reh'g en banc denied*, 53 F.4th 620 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2608 (2023); *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1091-92 (7th Cir. 2014); *Klein v. Oved*, No. 23-14105, 2024 WL 1092324, at *1 (11th Cir. Mar. 13, 2024). We find the unanimity of our sister circuits on this question to be notable and their reasoning persuasive.

It is also notable that the Supreme Court has repeatedly "insisted that" a collateral order appeal may not be pursued unless "the right asserted [will be] essentially destroyed if its vindication must be postponed until trial is completed." *Lauro Lines s.r.l.*, 490 U.S. at 499. The possibility that a district court ruling before a final decision "may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement." *Richardson-Merrell*, 472 U.S. at 436. In this case, USCCB has suggested that the value of the church's rights will be seriously diminished if this court does not review and overturn the District Court's pleading-stage denial of its motion to dismiss based on a church autonomy defense. This claim has been rejected by all of the courts that have addressed the matter in other cases. *See, e.g.*, *Belya*, 45 F.4th at 633; *Garrick*, 95 F.4th at 1117; *Tucker*, 36 F.4th at 1036; *Herx*, 772 F.3d at 1091-92.

The point is that it does not matter that litigation may impose some burdens on a party before a final decision issues. This is insufficient to justify immediate review. In *Mohawk Industries*, for example, the Supreme Court recognized that, during trial, parties may be ordered to disclose privileged information that intrudes on the confidentiality of attorney-

**16a**

17

client communications. 558 U.S. at 109. Despite the burden of having to produce such information, the Court nevertheless concluded that post-judgment appeals "suffice" to protect the rights of the litigants. *Id.* A showing that a party may be burdened by having to comply with the final decision rule is not proof that the party's contested rights will be destroyed. *See Digit. Equip. Corp.*, 511 U.S. at 871-72.

Furthermore, if we were to allow collateral appeals to function as an escape valve from adjudicative burdens – or if any potential burden on the right at stake were enough to justify immediate review – then the collateral order exception would expand to swallow the rule. *See id.* at 868. Church autonomy is not the only area in which adjudication may by itself pose a significant cost. The same concern exists for orders on personal jurisdiction, statutes of limitation, claim preclusion, and the right to a speedy trial, to list a few examples. We would risk a dramatic expansion of the collateral order doctrine by hinging it on concerns of encumbrance – and expansion of the collateral order doctrine is precisely the outcome the Supreme Court has consistently rejected. The Court has been quite clear in saying that the final decision rule may not be bypassed in favor of collateral order review merely because it "may impose significant hardship on litigants." *Richardson-Merrell*, 472 U.S. at 440.

In addition, district courts have ample tools at their disposal to limit discovery, tailor jury instructions, and dismiss claims as necessary to safeguard against infringements of the church autonomy doctrine. *See, e.g.*, *Garrick*, 95 F.4th at 1117. And "[w]hen a case can be resolved by applying well-established law to secular components of a dispute, such resolution by a secular court presents no infringement upon a religious association's independence." *Belya,* 45 F.4th at 630. If infringements nevertheless occur, then litigants, once armed

18

with a final decision, can seek relief through the standard review process. *See Gordon Coll. v. DeWeese-Boyd*, 142 S. Ct. 952, 955 (2022) (Alito, J., concurring) (agreeing that nothing "would preclude [defendant] from . . . seeking review . . . when the decision is actually final" (citation omitted)).

Moreover, the Supreme Court has reminded us "that litigants confronted with a particularly injurious or novel [adverse] ruling have several potential avenues of review apart from collateral order appeal." *Mohawk Indus.*, 558 U.S. at 110. Although post-judgment appeals are the norm, a litigant who is faced with an adverse church autonomy ruling can ask the district court to certify, and the court of appeals to accept, an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292 review requires "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The church-defendant in *Demkovich v. St. Andrew the Apostle Parish, Calumet City* pursued this approach and successfully availed itself of immediate review. 3 F.4th 968, 974 (7th Cir. 2021).

Litigants can also petition the courts of appeals for a writ of mandamus under 28 U.S.C. § 1651 when a disputed order "amount[s] to a judicial usurpation of power or a clear abuse of discretion" or otherwise works a manifest injustice. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390 (2004) (internal quotation marks and citations omitted); *Mohawk Indus.*, 558 U.S. at 111.

The Supreme Court has said that these case-specific mechanisms provide "'safety valve[s]' for promptly correcting serious errors" and "will continue to provide adequate protection to litigants" in the absence of collateral order

19

appeals. *Mohawk Indus.*, 558 U.S. at 111, 114 (alteration in original) (quoting *Digit. Equip. Corp.*, 511 U.S. at 883). And they do so without incidentally creating an entire category of immediately appealable orders. USCCB has not sought section 1292 review or a writ of mandamus in this case, so we need not address the viability of any such claims here.

Our decision to abide by the final decision rule, even when an admittedly important right is at stake, is utterly unexceptional. The Supreme Court and this court have "routinely require[d] litigants to wait until after final judgment to vindicate valuable rights." *Mohawk Indus.*, 558 U.S. at 108-09; *see, e.g.*, *Flanagan v. United States*, 465 U.S. 259, 262-63, 270 (1984) (Sixth Amendment right to effective assistance of counsel); *United States v. MacDonald*, 435 U.S. 850, 856-57 (1978) (Sixth Amendment right to speedy trial); *Mohawk Indus.*, 558 U.S. at 114 (attorney-client privilege); *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 348 (D.C. Cir. 2007) (political question doctrine). Like these other interests, the interest of a church in its religious autonomy is undoubtedly important, but deferring review until final judgment does not so imperil the interest as to justify the cost of allowing immediate appeal of an entire class of relevant orders.

## C. *Church Autonomy Functions as a Defense to Liability, Not an Immunity from Suit*

USCCB argues that the church autonomy doctrine "protects not only from the consequences of litigation's results but also from the burden of defending from suit." Opening Br. of Defendant-Appellant 20 (internal quotation marks and citation omitted). It argues that post-trial review of an order denying such protection is insufficient to vindicate the constitutional rights at stake. In other words, in an effort to avoid the applicable strictures of the final decision rule,

**19a**

20

USCCB attempts to characterize the church autonomy doctrine as a right not to be tried, *i.e.*, as an immunity from suit rather than a defense to liability. The church autonomy doctrine, however, does not confer immunity from trial such that immediate review is warranted.

No federal court has ever held that the church autonomy doctrine establishes a constitutional right to immunity from suit in cases concerning secular claims. Quite the contrary. Several circuits have explicitly declined to characterize church autonomy as an immunity from trial. *See Garrick*, 95 F.4th at 1116 (rejecting argument that the church autonomy doctrine confers "immunity from trial"); *Herx*, 772 F.3d at 1090 (rejecting argument that the First Amendment "provides an immunity *from trial*, as opposed to an ordinary defense to liability"); *Tucker*, 36 F.4th at 1025 (rejecting "novel argument that the 'ministerial exception' . . . immunizes religious employers altogether from the burdens of even having to litigate such claims"); *Klein*, 2024 WL 1092324, at *1 (church-autonomy doctrine "does not immunize religious groups or figures from suit"). As the Second Circuit has explained, "[w]hen a case can be resolved by applying well-established law to secular components of a dispute, such resolution by a secular court presents no infringement upon a religious association's independence." *Belya*, 45 F.4th at 630.

Put simply, if a plaintiff can plausibly assert a secular claim capable of resolution according to neutral principles of law, the First Amendment does not bar judicial examination of that claim. The church autonomy doctrine protects against judicial interference in ecclesiastical matters; it does not provide religious organizations with a blanket immunity from suit, discovery, or trial.

**20a**

21

Treating church autonomy as a defense rather than an immunity is also consistent with Supreme Court precedent. In *Hosanna-Tabor*, the Supreme Court made clear that the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." 565 U.S. at 195 n.4. Even though *Hosanna-Tabor* concerned the ministerial exception, the Supreme Court has since recognized the exception as a mere "component" of the church autonomy doctrine. *See Our Lady of Guadalupe*, 591 U.S. at 746. Thus, when the two decisions are considered together, it seems clear that the Court confirmed the church autonomy doctrine is not jurisdictional; it is an affirmative defense. And, like any other defense, a defense based on church autonomy can be adequately addressed after trial.

### D. *The Cases Cited by USCCB Do Not Change the Legal Landscape*

Despite the mountain of precedent against its position, USCCB argues that there is caselaw that supports its view in favor of collateral order appeals of church autonomy orders. We disagree. The cases cited by USCCB clearly do not change the result in this case.

First, USCCB cites *Whole Woman's Health v. Smith*, where the Fifth Circuit allowed an interlocutory appeal of an order enforcing a subpoena against a third-party religious organization. 896 F.3d 362 (5th Cir. 2018). A key distinction, however, exists between *Whole Woman's Health* and this case: There, the Fifth Circuit rested its decision on "the predicament of third parties" who "cannot benefit directly from [post-trial] relief." *Id.* at 367-68. As the Seventh Circuit explained in *Garrick*, when distinguishing *Whole Woman's Health*, "[a]n order conclusively determining that a *nonparty* religious organization must be subjected to extensive discovery . . . is

22

not comparable to the class of order at issue here." 95 F.4th at 1116 n.9 (emphasis added). At issue here – and in *Garrick* – is a class of orders concerning a party to the litigation capable of benefiting directly from a post-judgment appeal. Accordingly, *Whole Woman's Health* is inapposite to the issue at hand.

Second, USCCB cites *McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013). In *McCarthy*, a United States representative of the Holy See, the central governing body of the Roman Catholic Church, issued a declaration that Fuller was not a nun or religious sister. 714 F.3d at 973-74. Nevertheless, the district court planned to instruct the jury to determine whether Fuller was a nun in good standing with the Catholic Church. *Id.* at 976. In light of these facts, the Seventh Circuit held in *McCarthy* that the order "requir[ing] a jury to answer a religious question" was immediately appealable. *Id.*

However, as the Seventh Circuit later explained in *Garrick*, "[t]he circumstances [in *McCarthy*] were remarkably extreme—the judge had determined that the jury's judgment could preempt that of the Holy See on a decidedly doctrinal question, in clear violation of church autonomy." 95 F.4th at 1113-14. The Seventh Circuit also made it clear that "*McCarthy* did not create a new category subjecting denials of a church autonomy defense to immediate appeal." *Id.* at 1114.

Third, USCCB argues that "this Court has 'long allowed' interlocutory appeal of 'alleged injur[ies] [sic] to First Amendment rights during the pendency of a case.'" Opening Br. of Defendant-Appellant 20 (quoting *In re Stone*, 940 F.3d 1332, 1340-41 (D.C. Cir. 2019)). According to USCCB, infringing First Amendment rights for even minimal periods of time results in irreparable harm. As such, an appeal filed after a time-consuming trial is not an effective remedy. Our precedent, however, has never gone so far as to say that a mere

**22a**

23

alleged violation of the First Amendment is sufficient for collateral order appeal.

In each of the cases cited by USCCB, this court indicated that an interlocutory appeal would be permissible only because there was a dispute over an order restricting speech during the pendency of the case. *See Trump*, 88 F.4th at 1001; *In re Stone*, 940 F.3d at 1340; *In re Rafferty*, 864 F.2d 151, 154 (D.C. Cir. 1988); *see also Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 490-91 (5th Cir. 2013). In these cases involving orders restricting speech, waiting for post-judgment review would have effectively defeated the right to any review at all. By the time judgment was entered, the party complaining would have already lost its right to speak while the case was pending. We have no such scenario in this case.

USCCB also cites a similar case, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020), which concerned a district court's denial of a preliminary injunction. Even though the order did not involve a restriction on speech, it did involve a restriction on the ability of the faithful to attend religious services during the pendency of litigation – a right that could not be restored after trial. No such restriction on speech or religious practice is present in this case to justify interlocutory review. Furthermore, the courts of appeals have jurisdiction under 28 U.S.C. § 1292(a)(1) to address interlocutory appeals challenging the issuance of a preliminary injunction by a district court. The District Court in this case has not issued an injunction against USCCB.

Fourth, USCCB cites some cases in which we have noted that there is an "immediate harm arising from the process of inquiry into religious disputes." Br. of Defendant-Appellant 21 (citing *Cath. Univ. of Am.*, 83 F.3d at 466-67; *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1341-43 (D.C. Cir. 2002);

24

*Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 829-30 (D.C. Cir. 2020)). Importantly, none of these cases involved an application of the collateral order doctrine. Rather, all three cases involved an appeal after a final decision had been issued. None of the cited cases even suggests that "harm arising from the process of inquiry into religious disputes" warrants immediate review. Br. of Defendant-Appellant 21.

Finally, USCCB argues that its "specific First Amendment rights imperiled here are structural protections akin to the separation of powers, which have long received interlocutory review." Opening Br. of Defendant-Appellant 22. Even if we were to accept USCCB's claim that church autonomy is a structural protection, "[m]ost separation-of-power claims are clearly not in [the] category" of collaterally appealable orders. *United States v. Cisneros*, 169 F.3d 763, 769 (D.C. Cir. 1999).

In *Cisneros*, a former Secretary of Housing and Urban Development argued that "the very conduct of the trial" against him would "violate the separation of powers by causing the courts to invade the exclusive constitutional province of coordinate branches." *Id.* Like Cisneros, USCCB makes a separation-of-powers claim to avoid trial. Such reliance on the separation of powers, however, was not enough in *Cisneros* and it is not enough here. This court held in *Cisneros* that "[n]othing Cisneros argue[d] amount[ed] to a right not to be tried." *Id.* "Cisneros, like any criminal defendant, may raise separation of powers as a defense. But it scarcely follows that whenever a defendant relies on the separation-of-powers doctrine, the defendant's right must be treated as if it rested on an explicit guarantee that trial will not occur." *Id.* (cleaned up) (internal quotation marks and citation omitted). In other words, invoking separation of powers is not enough to transform a defense into an immunity. Rather, any "constitutional affront" to the separation of powers "flowing from an adjudication"

**24a**

25

would be "fully reviewable on appeal should the defendant be convicted." *Id.* Thus, even assuming a violation of the church autonomy doctrine is akin to a violation of the separation of powers, that violation can be reviewed upon post-judgment appeal.

To conclude, the federal courts of appeals – and the Supreme Court – routinely reject parties' efforts to invoke the collateral order doctrine for a wide variety of important rights. And each circuit that has considered extending the collateral order doctrine to cover the right to church autonomy has declined. We join our sister circuits in doing the same: Claims regarding the right to church autonomy are reviewable upon final judgment and, accordingly, not subject to collateral order appeal. And, as explained above, should extreme circumstances arise where immediate relief is required, litigants have alternative appellate options at their disposal.

### E.  *Final Considerations*

We have already made the point that a pleading-stage denial of the church autonomy defense is clearly reviewable upon final judgment. This holding is sufficient to decide this case. However, lest the point be missed, it is important to note that a pleading-stage denial also lacks the conclusiveness required for collateral order appeal. This case remains at the earliest stages of litigation with many more steps before the finish line. USCCB can continue to assert the church autonomy defense during discovery, in future dispositive motions, before trial, and during trial. The contested District Court order therefore is not "conclusive" because it is not a "final rejection" of USCCB's asserted church autonomy defense. Indeed, for an order to conclusively determine the issue, there must be "no further steps that can be taken in the District Court to avoid" infringing on USCCB's religious autonomy. *Mitchell*, 472 U.S.

26

at 527 (internal quotation marks omitted). Here, it is possible that at some later stage, USCCB's church autonomy defense may require limiting the scope of the suit or the extent of discovery, or even warrant dismissal of the suit in its entirety; these are "further steps" that remain available to the District Court to safeguard against First Amendment violations.

USCCB argues that collateral order review is warranted because the District Court "conclusively determined . . . whether USCCB may be compelled to defend on the merits." Opening Br. of Defendant-Appellant 24. The defendants in *Belya* made the same argument before the Second Circuit: "[T]heir claim is that the district court's orders are the final decision on whether discovery can proceed; thus, Defendants contend, the orders constitute a final rejection." 45 F.4th at 631 (internal quotation marks omitted). Our sister circuit rejected that argument in *Belya*, and we do so here as well.

USCCB cites *Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576 (D.C. Cir. 2020), in support of its position that it has a right to collateral order review to ensure that it will not be required to go through discovery. This decision is inapposite because it involves the application of foreign sovereign immunity. *Id.* at 581. Unlike the church autonomy doctrine, questions of sovereign immunity have long been held by the Supreme Court and this court to be immediately appealable. *See, e.g.*, *P.R. Aqueduct*, 506 U.S. at 147; *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990). As we have explained, however, pleading-stage denials of a church autonomy defense do not satisfy the requirements of the collateral order doctrine.

**26a**

27

### III. Conclusion

Because USCCB's appeal falls outside of the collateral order doctrine's narrow and selective class of claims subject to interlocutory review, we dismiss the appeal for lack of jurisdiction without reaching the merits of USCCB's church autonomy defense or USCCB's argument that O'Connell failed to state a claim.

*So ordered.*

**27a**

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel of record certifies as follows:

**A. Parties.** The following are parties and amici curiae in this Court:

   a. Plaintiff-Appellee: David O'Connell.

   b. Defendant-Appellant: United States Conference of Catholic Bishops.

   c. Amici Curiae:

      1. Michael W. McConnell

      2. Douglas Laycock

      3. Richard W. Garnett

      4. Eugene Volokh

      5. Thomas C. Berg

      6. Elizabeth Clark

      7. Christopher C. Lund

      8. Michael P. Moreland

      9. Robert J. Pushaw

      10. Lael Weinberger

      11. Derek T. Muller

      12. Jewish Coalition for Religious Liberty

      13. General Conference of Seventh-day Adventists

      14. Assembly of Canonical Orthodox Bishops of the United States of America

      15. The Church of Jesus Christ of Latter-day Saints

      16. National Association of Evangelicals

17. Lutheran Church—Missouri Synod

18. Muslim Public Affairs Council

19. Americans United for Separation of Church and State

**B. Rulings Under Review.** The panel's decision was issued on April 25, 2025, and is reported at 2025 WL 1198433. The underlying ruling under review is the 11/17/2023 Minute Order issued by Judge Cobb. A6. No formal citation exists. The district court's reasoning can be found in the Joint Appendix, at pages A145 through A155.

**C. Related Cases.** Appellant is unaware of any related cases pending in this Court or in any other court.

**D. Rule 26.1 Disclosure.** Counsel of record for Defendant United States Conference of Catholic Bishops (USCCB) certifies that USCCB is a 501(c)(3) non-profit corporation. USCCB has no parent, subsidiary, affiliate, or company which owns at least 10% of its stock.

*/s/ Daniel H. Blomberg*
Daniel H. Blomberg